**Exhibit C**

Section I ................................................................................................................................1

Section II ...............................................................................................................................5

Section III..............................................................................................................................7

Section IV ............................................................................................................................16

Section V .............................................................................................................................18

Section VI ............................................................................................................................22

Section VII ...........................................................................................................................34

Section VIII..........................................................................................................................42

Section IX ............................................................................................................................46

Section X..............................................................................................................................51

Section XI ............................................................................................................................57

Section XII ...........................................................................................................................73

Section XIII..........................................................................................................................77

## Section I

| Pooling and Service Agreement relating to ACE 2006-HE1 dated as of February 1, 2006 ("DB PSA"[1]) § 2.01 | "The Depositor, concurrently with the execution and delivery hereof, does hereby transfer, assign, set over and otherwise convey to the Trustee, on behalf of the Trust, without recourse, for the benefit of the Certificateholders, all the right, title and interest of the Depositor, including any security interest therein for the benefit of the Depositor, in and to the Mortgage Loans identified on the Mortgage Loan Schedule, the rights of the Depositor under the Mortgage Loan Purchase Agreement, the Assignment Agreements and the Interim Servicing Agreements (including, without limitation the right to enforce the obligations of the other parties thereto thereunder), the right to any Net Swap Payment and any Swap Termination Payment made by the Swap Provider and all other assets included or to be included in REMIC I. Such assignment includes all interest and principal received by the Depositor, the Servicers and the Interim Servicers on or with respect to the Mortgage Loans (other than payments of principal and interest due on such Mortgage Loans on or before the Cutoff Date). Copies of the Mortgage Loan Purchase Agreement, the Assignment Agreements and the Interim Servicing Agreements are attached hereto." |
|---|---|
| Master Servicing and Trust Agreement related to GSAA 2005-6 dated as of May 1, 2005 ("Goldman Sachs SA") § 2.01 | "The Depositor, concurrently with the execution and delivery hereof, hereby sells, transfers, assigns, sets over and otherwise conveys to the Trustee for the benefit of the Certificateholders, without recourse, all the right, title and interest of the Depositor in and to the Trust Fund." |

---

[1] Quotations to the DB PSA, Custodial Agreement, and Mortgage Loan Purchase Agreement herein are to the PSA and Custodial Agreement executed in connection with the ACE 2006-HE1 securitization. ACE 2005-AG1, ACE 2005-HE5, ACE 2005-WF1, ACE 2006-ASAP2, ACE 2006-ASAP3, ACE 2006-ASAP5, ACE 2007-HE4, ACE 2007-WM2, and DBALT 2006-AR4 were issued pursuant to PSAs with substantially similar language and any differences are immaterial to the issues addressed in the Complaint.

| Pooling and Service Agreement relating to JPALT 2006-A7 dated as of November 1, 2006 ("J.P. Morgan PSA"[2]) § 2.01 | "Concurrently with the execution and delivery of this Agreement, the Depositor does hereby transfer, assign, set over, deposit with and otherwise convey to the Trustee, without recourse, subject to Sections 2.02 and 2.05, in trust, all the right, title and interest of the Depositor in and to the Trust Fund. Such conveyance includes, without limitation: (i) the Mortgage Loans, including the right to all payments of principal and interest received on or with respect to the Mortgage Loans on and after the Cutoff Date (other than Scheduled Payments due on or before such date), and all such payments due after such date but received prior to such date and intended by the related Mortgagors to be applied after such date; (ii) all of the Depositor's right, title and interest in and to all amounts from time to time credited to and the proceeds of the Distribution Account, any Custodial Accounts or any Escrow Account established with respect to the Mortgage Loans; (iii) all of the rights of the Depositor as assignee of the Seller with respect to the Seller's rights under the Purchase and Servicing Agreement, the Servicing Agreements and the Purchase Agreements pursuant to the Acknowledgements; (iv) all of the Depositor's right, title or interest in REO Property and the proceeds thereof; (v) all of the  Depositor's rights under any Insurance Policies related to the Mortgage Loans; and (vi) if applicable, the Depositor's security interest in any collateral pledged to secure the Mortgage Loans, including the Mortgaged Properties, including, but not limited to, the pledge, control and guaranty agreements and the Limited Purpose Surety Bond to have and to hold, in trust; and the Trustee declares that, subject to the review provided for in Section 2.02, it has received and shall hold the Trust Fund, as trustee, in trust, for the benefit and use of the Holders of the Certificates and the Swap Provider and for the purposes and subject to the terms and conditions set forth in this Agreement, and, concurrently with such receipt, has caused to be executed, authenticated and delivered to or upon the order of the Depositor, in exchange for the Trust Fund, Certificates in the authorized denominations evidencing the entire ownership of the Trust Fund." |
|---|---|
| Transfer and Servicing Agreement related to FBRSI 2005-2 dated as of September 1, 2005 ("MHC SA"[3]) §§ 2.1 – 2.3 | "On the Closing Date, in exchange for (i) the net proceeds of the Offered Notes, (ii) the Class N Notes and (iii) the Certificate, the Seller does hereby sell, transfer, assign, or set over, deposit with and otherwise convey without recourse (except as provided herein), and the Depositor does hereby purchase, all right, title and interest of the Seller in and to (i) the Mortgage Loans listed on the Mortgage Loan Schedules, having an aggregate Cut-off Date Balance as set forth in |

---

[2] Quotations to the J.P. Morgan PSA herein are to the PSA executed with the JPALT 2006-A7 securitization. JPMMT 2006-A5 was issued pursuant to a PSA with substantially similar language and any differences are immaterial to the issues addressed in the Complaint.

[3] Quotations to the MHC Indenture and/or Transfer and Servicing Agreement herein are to the Indenture and Transfer and Servicing Agreement executed in connection with the FBRSI 2005-2 securitization. FBRSI 2005-4 was

such Mortgage Loan Schedules and (ii) the Purchase Agreements and the Mortgage Loan Purchase Agreement, to the extent they relate to the Mortgage Loans, and the related Bring-Down Letter and the related Assignment, Assumption and Recognition Agreements. The Seller specifically reserves any right, title and interest in, to or under the Purchase Agreements to the extent it relates to any mortgage loans subject to the Purchase Agreements other than the Mortgage Loans. Notwithstanding the foregoing, it is understood that the Originators are not released from liability to the Seller for any breaches of any representations, warranties or covenants made by the Originators in the Purchase Agreements prior to the Closing Date regardless of when such breaches are discovered or made known."
MHC Servicing Agreement § 2.1

"On the Closing Date, in exchange for the Notes and the Certificate, the Depositor does hereby sell, transfer, assign, set over, deposit with and otherwise convey to the Issuer, without recourse (except as otherwise provided herein), all right, title and interest of the Depositor in and to (i) the Mortgage Loans purchased by the Depositor from the Seller and (ii) the Purchase Agreements and the Mortgage Loan Purchase Agreement, to the extent they relate to the Mortgage Loans, and the related Bring-Down Letter and the related Assignment, Assumption and Recognition Agreement….Upon the issuance of the Notes and the Certificate, the ownership of each Mortgage Note, the related Mortgage and the related Mortgage File shall vest immediately in the Issuer, and the ownership of all records and documents with respect to the related Mortgage Loan prepared by or which come into the possession of the Seller shall vest immediately in the Issuer and shall be retained and maintained by the Seller, in trust, at the will of the Issuer and only in such custodial capacity."
MHC Servicing Agreement § 2.2

"The Seller shall cause an Assignment of Mortgage with respect to each Mortgage Loan (other than a MOM Loan) to be completed in the form and substance acceptable for recording in the relevant jurisdiction, such assignment being either (A) in blank, without recourse, or (B) or endorsed to "HSBC Bank USA, National Association, as Indenture Trustee of the FBR Securitization Trust 2005-2, Callable Mortgage-Backed Notes, Series 2005-2, without recourse," on or prior to the Closing Date."
MHC Servicing Agreement § 2.3

---

issued pursuant to an Indenture and Transfer and Servicing Agreement with substantially similar language and any differences are immaterial to the issues addressed in the Complaint.

| Pooling and Service Agreement relating to NHELI 2005-FM1 dated as of August 1, 2005 ("Nomura PSA"[4]) § 2.01 | "The Depositor, concurrently with the execution and delivery hereof, hereby sells, transfers, assigns, sets over and otherwise conveys to the Trustee for the use and benefit of the Certificateholders, without recourse, all the right, title and interest of the Depositor in and to the Trust Fund. Concurrently with the execution and delivery of this Agreement, the Depositor does hereby assign to the Trustee all of its rights and interest under the Mortgage Loan Purchase Agreement, to the extent of the Mortgage Loans sold under the Mortgage Loan Purchase Agreement. The Trustee hereby accepts such assignment, and shall be entitled to exercise all rights of the Depositor under the Mortgage Loan Purchase Agreement as if, for such purpose, it were the Depositor. The foregoing sale, transfer, assignment, setover, deposit and conveyance does not and is not intended to result in creation or assumption by the Trustee of any obligation of the Depositor, the Sponsor or any other Person in connection with the Mortgage Loans or any other agreement or instrument relating thereto except as specifically set forth herein." |
|---|---|

---

[4] Quotations to the Nomura PSA and Mortgage Loan Purchasing Agreement herein are to the PSA executed in connection with the NHELI 2005-FMI securitization. NAA 2006-AR3, NHELI 2005-HE1, and NHELI 2006-WF1 were issued pursuant to PSAs with substantially similar language and any differences are immaterial to the issues addressed in the Complaint.

## SECTION II

| | |
|---|---|
| DB PSA § 2.02 | "The Trustee acknowledges receipt, subject to the provisions of Section 2.01 hereof and Section 2 of the related Custodial Agreement, of the Mortgage Loan Documents and all other assets included in the definition of "REMIC I" under clauses (i), (iii), (iv) and (v) (to the extent of amounts deposited into the Distribution Account) and declares that it holds (or the applicable Custodian on its behalf holds) and will hold such documents and the other documents delivered to it constituting a Mortgage Loan Document, and that it holds (or the applicable Custodian on its behalf holds) or will hold all such assets and such other assets included in the definition of "REMIC I" in trust for the exclusive use and benefit of all present and future Certificateholders and the Insurer." |
| Goldman Sachs SA § 2.03 | "The Trustee acknowledges the transfer and assignment to it of the Trust Fund and, concurrently with such transfer and assignment, the Securities Administrator has executed and delivered to or upon the order of the Depositor, the Certificates in authorized denominations evidencing directly or indirectly the entire ownership of the Trust Fund. The Trustee agrees to hold the Trust Fund and exercise the rights referred to above for the benefit of all present and future Holders of the Certificates." |
| J.P. Morgan PSA § 2.02 | "The Trustee, by execution and delivery hereof, acknowledges receipt by it or by the applicable Custodian on its behalf of the Trustee Mortgage Files pertaining to the Mortgage Loans listed on the Mortgage Loan Schedule." |
| MHC SA § 2.5 | "The Indenture Trustee declares that, subject to the review provided for in this Section, it has received and shall hold the Trust Fund, as Indenture Trustee, in trust, for the benefit and use of the Noteholders and the Certificateholder and for the purposes and subject to the terms and conditions set forth in this Agreement, and, concurrently with such receipt, the Issuer has issued the Notes and the Certificate and delivered the Notes and the Certificate to the Depositor or its designee, in exchange for the Trust Fund." |
| Nomura PSA § 2.02(a) | "Based on the initial trust receipt received by it from the Custodian pursuant to the Custodial Agreement, the Trustee acknowledges receipt, subject to the provisions of Section 2.01 hereof and Section 2 of the Custodial Agreement, of the Mortgage Loan Documents and all other assets included in the definition of "REMIC I" under clauses (i), (ii) (iii), (v) and (vi) (to the extent of amounts deposited into the Distribution Account) and declares that it holds (or the Custodian on its behalf holds) and will hold such documents and the other documents delivered to it constituting a Mortgage Loan Document, and that it holds (or the Custodian on its behalf holds) or will hold all such assets and such other assets included in the definition of "REMIC I" in trust |

| | for the exclusive use and benefit of all present and future Certificateholders." |
| --- | --- |

## SECTION III

| | |
|---|---|
| DB PSA § 2.01 | "In connection with such transfer and assignment, the Depositor does hereby deliver to, and deposit with the applicable Custodian pursuant to the related Custodial Agreement the documents with respect to each Mortgage Loan as described under Section 2 of the related Custodial Agreement (the "Mortgage Loan Documents"). In connection with such delivery and as further described in the Custodial Agreements, the Custodians will be required to review such Mortgage Loan Documents and deliver to the Trustee, the Depositor, each Servicer, the Sponsor and the Insurer certifications (in the forms attached to the Custodial Agreement) with respect to such review with exceptions noted thereon. In addition, under the Custodial Agreements the Depositor will be required to cure certain defects with respect to the Mortgage Loan Documents for the related Mortgage Loans after the delivery thereof by the Depositor to the Custodians as more particularly set forth therein." DB PSA § 2.01 |
| DB PSA Exhibit F, Mortgage Loan Purchase Agreement dated as of February 28, 2006 ("DB MLPA") § 4(b) | "Seller will, on or prior to the Closing Date, deliver or cause to be delivered to the Purchaser or any assignee, transferee or designee of the Purchaser each of the following documents for each Mortgage Loan: <br><br> (i) the original Mortgage Note, including any riders thereto, endorsed in blank, with all prior and intervening endorsements showing a complete chain of endorsement from the originator to the Person so endorsing to the Trustee; <br><br> (ii) the original Mortgage or a certified copy thereof, including any riders thereto, with evidence of recording thereon, and the original recorded power of attorney, if the Mortgage was executed pursuant to a power of attorney, with evidence of recording thereon, and in the case of each MOM Loan, the original Mortgage, noting the presence of the MIN of the Loan and either language indicating that the Mortgage Loan is a MOM Loan or if the Mortgage Loan was not a MOM Loan at origination, the original Mortgage and the assignment thereof to MERS®, with evidence of recording indicated thereon; <br><br> (iii) an original Assignment of Mortgage executed in blank; <br><br> (iv) the original recorded Assignment or Assignments of the Mortgage, or a certified copy or copies thereof, showing a complete chain of assignment from the originator to the last Person assigning the Mortgage; <br><br> (v) the original or copies of each assumption, modification, written assurance or substitution agreement, if any; |

| | |
|---|---|
| | (vi) the original lender's title insurance policy, together with all endorsements or riders that were issued with or subsequent to the issuance of such policy, insuring the priority of the Mortgage as a first lien or second lien on the Mortgaged Property represented therein as a fee interest vested in the Mortgagor; (vii) the original of any guarantee executed in connection with the Mortgage Note, if any; and (viii) the original of any security agreement, chattel mortgage or equivalent document executed in connection with the Mortgage, if any." DB MLPA § 4(b) |
| Goldman Sachs SA § 2.01 | "In connection with the transfer and assignment of each Mortgage Loan, the Depositor has delivered or caused to be delivered to each Custodian on behalf of the Trustee for the benefit of the Certificateholders the following documents or instruments with respect to each applicable Mortgage Loan so assigned: <br><br> (i) the original Mortgage Note, endorsed without recourse in blank by the last endorsee, including all intervening endorsements showing a complete chain of endorsement from the originator to the last endorsee; <br><br> (ii) The original Assignment of Mortgage in blank, unless the Mortgage Loan is a MERS Mortgage Loan; <br><br> (iii) personal endorsement and/or guaranty agreements executed in connection with all non individual Mortgage Loans (corporations, partnerships, trusts, estates, etc. (if any); <br><br> (iv) the related original Mortgage and evidence of its recording or, in certain limited circumstances, a certified copy of the mortgage with evidence of recording; <br><br> (v) originals of any intervening Mortgage assignment or certified copies in either case evidencing recording; provided that the assignment may be in the form of a blanket assignment or assignments, a copy of which with evidence of recording shall be acceptable; <br><br> (vi) originals of all assumption, modification, agreements or certified copies thereof, in either case with evidence of recording if required to maintain the lien of the mortgage or if otherwise required, or, if recordation is not required, an original or copy of the agreement; <br><br> (vii) except with respect to the Countrywide Mortgage Loans, an original or copy of a title insurance policy or evidence of title; <br><br> (viii) to the extent applicable, an original power of attorney; |

| | |
|---|---|
| | (ix) for each GreenPoint Mortgage Loan with respect to which the Mortgagor's name as it appears on the note does not match the borrower's name on the mortgage loan schedule, one of the following: the original of the assumption agreement, or a certified copy thereof, in either case with evidence of recording thereon if required to maintain the lien of the mortgage or if otherwise required, or, if recordation is not so required, an original or copy of such assumption agreement; and<br><br>(x) except with respect to Countrywide Mortgage Loans, a security agreement, chattel mortgage or equivalent document executed in connection with the Mortgage, if any." |
| J.P. Morgan PSA § 2.01 | "On the Closing Date, each Custodian shall deliver to the Trustee, the Securities Administrator and the Depositor, a certification ('Custodian Certification') substantially in the form attached hereto as Exhibit L certifying that, pursuant to each related Custodial Agreement, the applicable Originator delivered and released to such Custodian, subject to and in accordance with the relevant section of each related Purchase and Servicing Agreement, Purchase Agreement or Custodial Agreement, the following documents pertaining to each of the Mortgage Loans identified in the Mortgage Loan Schedule (provided, however, that neither Custodian shall be required nor does it intend to reexamine the contents of the Trustee Mortgage File for any of the Mortgage Loans in connection with entering into this Agreement or providing the Custodian Certification required pursuant to this Section 2.01):<br><br>(i) with respect to each Mortgage Loan, the original Mortgage Note endorsed without recourse in proper form to the order of the Trustee, or in blank (in each case, with all necessary intervening endorsements, as applicable);<br><br>(ii) with respect to each Mortgage Loan (other than a Cooperative Loan) that is not a MERS Mortgage Loan, the original Mortgage with evidence of recording thereon or a recorded copy and in the case of the each MERS Mortgage Loan, the original Mortgage, noting the presence of the MIN of the Mortgage Loans and either language indicating that the Mortgage Loan is a MOM Loan if the Mortgage Loan is a MOM Loan or if the Mortgage Loan was not a MOM Loan at origination, the original Mortgage and the assignment thereof to MERS, with evidence of recording indicated thereon; or if the original Mortgage assignment has not yet been returned from the recording office, a copy of such Mortgage certified by the applicable Originator to be a true copy of the original of the Mortgage which has been sent for recording in the appropriate jurisdiction in which the Mortgaged Property is located; |

| | |
|---|---|
| | (iii) with respect to each Mortgage Loan (other than a Cooperative Loan) that is not a MERS Mortgage Loan, the Assignment of Mortgage in form and substance acceptable for recording in the relevant jurisdiction, such assignment being either (A) in blank, without recourse, or (B) endorsed to 'HSBC Bank USA, National Association, as Trustee of J.P. Morgan Alternative Loan Trust 2006A7, Mortgage Pass-Through Certificates, without recourse'; |
| | (iv) with respect to each Mortgage Loan (other than a Cooperative Loan) that is not a MERS Mortgage Loan, the originals of all intervening assignments of the Mortgage, if any, with evidence of recording thereon or a recorded copy, or if the original intervening assignment has not yet been returned from the recording office, a copy of such assignment certified by the applicable Originator to be a true copy of the original of the assignment which has been sent for recording in the appropriate jurisdiction in which the Mortgaged Property is located; |
| | (v) with respect to each Mortgage Loan (other than a Cooperative Loan), the originals of all assumption, modification, consolidation or extension agreements, if any, with evidence of recording thereon; or if the original assumption, modification, consolidation or extension agreements has not yet been returned from the recording office, a copy of such documents certified by the applicable Originator to be a true copy of the original of the Mortgage which has been sent for recording in the appropriate jurisdiction in which the Mortgaged Property is located; |
| | (vi) if applicable, with respect to each Mortgage Loan (other than a Cooperative Loan), the original policy of title insurance (or a true copy thereof) with respect to any such Mortgage Loan, or, if such policy has not yet been delivered by the insurer, the title commitment or title binder to issue same; |
| | (vii) if applicable, with respect to each Mortgage Loan (other than a Cooperative Loan), a copy of the power of attorney and guaranty agreement with respect to such Mortgage Loan; |
| | (viii) if applicable, the original or certified copy of the certificates evidencing ownership of the Cooperative Shares issued by the Cooperative Corporation and related assignment of such certificates or an assignment of such Cooperative Shares, in blank, executed by the Mortgagor with such signature guaranteed . . . ." |
| MHC SA Exhibit B | "With respect to each Mortgage Loan, the Mortgage File shall include each of the following items delivered to the Custodian, portions of which may be held by the Servicer in the Servicing File: (a) |

(i) The original Mortgage Note endorsed in blank or 'Pay to the order of HSBC Bank USA, National Association, as indenture trustee (the '**Indenture Trustee**') under the Transfer and Servicing Agreement, dated as of September 1, 2005, by and among FBR Securitization, Inc., as Depositor, the Indenture Trustee, Wells Fargo Bank, National Association, as Securities Administrator and Master Servicer, FBR Securitization Trust 2005-2, as Issuer, JPMorgan Chase Bank, National Association, as Servicer, The Murrayhill Company, as Credit Risk Manager and MHC I, Inc., as Seller relating to FBR Securitization Trust 2005-2 Mortgage Backed Securities, without recourse' and signed in the name of the Seller by an Authorized Officer (*provided*, in the event that the Mortgage Loan was acquired by the Seller in a merger, the signature must be in the following form: '[Seller], successor by merger to [name of predecessor]'; and in the event that the Mortgage Loan was acquired or originated by the Seller while doing business under another name, the signature must be in the following form: '[Seller], formerly known as [previous name]'). The Mortgage Note must contain all necessary intervening endorsements showing a complete chain of endorsement from the Originator (each such endorsement being sufficient to transfer all right, title and interest of the party so endorsing, as the holder of the Mortgage Note or assignee thereof, in and to that Mortgage Note); or A certified copy of the Mortgage Note (endorsed as provided above) together with a lost note affidavit in the form of Exhibit C, providing indemnification to the holder thereof for any losses incurred due to the fact that the original Mortgage Note is missing.

(ii) The original of any guarantee executed in connection with the Mortgage Note (if any).

(iii) The original Mortgage, with evidence of recording thereon, except as follows: If in connection with any Mortgage Loan, the Seller cannot deliver or cause to be delivered the original Mortgage with evidence of recording thereon on or prior to the Closing Date because of a delay caused by the public recording office where such Mortgage has been delivered for recordation or because such Mortgage has been lost or because such public recording office retains the original recorded Mortgage, the Seller shall deliver or cause to be delivered to the Custodian, a photocopy of such Mortgage, together with (a) in the case of a delay caused by the public recording office, an Officer's Certificate of the Seller stating that such Mortgage has been dispatched to the appropriate public recording office for recordation and that the original recorded Mortgage or a copy of such Mortgage certified by such public recording office to be a true and complete copy of the original recorded Mortgage will be promptly delivered to the Custodian upon receipt thereof by the Seller; or (b) in the case of a Mortgage

where a public recording office retains the original recorded Mortgage or in the case where a Mortgage is lost after recordation in a public recording office, a copy of such Mortgage certified by such public recording office or by the title insurance company that issued the title policy to be a true and complete copy of the original recorded Mortgage.

(iv) The originals or certified true copies of any document sent for recordation of all assumption, modification, consolidation or extension agreements, with evidence of recording thereon, or, if the original of any such agreement with evidence of recording thereon has not been returned by the public recording office where such agreement has been delivered for recordation or such agreement has been lost or such public recording office retains the original recorded agreement, a photocopy of such agreement, certified by the Seller or its agent to be a true and correct copy of the agreement delivered to the appropriate public recording office for recordation. The original recorded agreement or, in the case of a agreement where a public recording office retains the original recorded agreement or in the case where an agreement is lost after recordation in a public recording office, a copy of such agreement certified by such public recording office to be a true and complete copy of the original recorded agreement, will be promptly delivered to the Custodian upon receipt thereof by the Seller.

(v) The original Assignment of Mortgage, in blank, for each Mortgage Loan, in form and substance acceptable for recording (except for the insertion of the name of the assignee and recording information). If the Mortgage Loan was acquired by the Seller in a merger, the Assignment of Mortgage must be made by '[Seller], successor by merger to [name of predecessor].' If the Mortgage Loan was acquired or originated by the Seller while doing business under another name, the Assignment of Mortgage must be made by '[Seller], formerly know as [previous name].' Subject to the foregoing and where permitted under the applicable laws of the jurisdiction wherein the Mortgaged property is located, such Assignments of Mortgage may be made by blanket assignments for Mortgage Loans secured by the Mortgaged Properties located in the same county. If the related Mortgage has been recorded in the name of MERS or its designee, no Assignment of Mortgage will be required to be prepared or delivered and instead, the Seller shall take all actions as are necessary to cause the [Custodian] to be shown as the owner of the related Mortgage Loan on the records of MERS for purposes of the system of recording transfers of beneficial ownership of mortgages maintained by MERS.

(vi) For any Mortgage Loan not recorded in the name of MERS, originals or certified true copies of documents sent for recordation of

all Intervening Assignments of the Mortgage with evidence of recording thereon, or if any such Intervening Assignment has not been returned from the applicable recording office or has been lost or if such public recording office retains the original recorded assignments of mortgage, the Seller shall deliver or cause to be delivered to the Custodian, a photocopy of such Intervening Assignment, together with (i) in the case of a delay caused by the public recording office, an Officer's Certificate of the Seller stating that such Intervening Assignment of Mortgage has been dispatched to the appropriate public recording office for recordation and that such original recorded Intervening Assignment of Mortgage or a copy of such Intervening Assignment of Mortgage certified by the appropriate public recording office or by the title insurance company that issued the title policy to be a true and complete copy of the original recorded Intervening Assignment of Mortgage will be promptly delivered to the Custodian upon receipt thereof by the Seller; or (ii) in the case of an Intervening Assignment where a public recording office retains the original recorded Intervening Assignment of Mortgage or in the case where an Intervening Assignment of Mortgage is lost after recordation in a public recording office, a copy of such Intervening Assignment of Mortgage certified by such public recording office to be a true and complete copy of the original recorded Intervening Assignment of Mortgage. . . .

(viii) The original mortgagee policy of title insurance in the form required by the Agreement or, if the original lender's title insurance policy has not been issued, the preliminary report or irrevocable binder or commitment to issue the same.

(ix) Any security agreement, chattel mortgage or equivalent executed in connection with the Mortgage.

(x) For each Mortgage Loan which is secured by a residential long-term lease, if any, a copy of the lease with evidence of recording indicated thereon, or, if the lease is in the process of being recorded, a photocopy of the lease, certified by an officer of the respective prior owner of such Mortgage Loan or by the applicable title insurance company, closing/settlement/escrow agent or company or closing attorney to be a true and correct copy of the lease transmitted for recordation.

(b) With respect to each Mortgage Loan, the Mortgage File shall include each of the following items to the extent required in the Underwriting Guidelines:

13

(i) The original hazard insurance policy and, if required by law, flood insurance policy.

(ii) Fully executed residential loan application.

(iii) Fully executed Mortgage Loan closing statement (*i.e,* a Form HUD-1) and any other truth-in-lending or real estate settlement procedure forms required by law.

(iv) Verification of employment and income (if required pursuant to the Underwriting Guidelines).

(v) Verification of acceptable evidence of source and amount of down payment.

(vi) Credit report on the Mortgagor.

(vii) Residential appraisal report.

(viii) Photograph of the Mortgaged Property.

(ix) Survey of the Mortgaged Property, if required by the title company or applicable law.

(x) Copy of each instrument necessary to complete identification of any exception set forth in the exception schedule in the title policy (*i.e.*, map or plat, restrictions, easements, sewer agreements, home association declarations, etc.).

(xi) All fully executed required disclosure statements required by state and federal law.

(xii) If applicable, termite report, structural engineer's report, water potability and septic certification.

(xiii) Sales contract, if applicable.

(xiv) Evidence of payment of taxes and insurance premiums, insurance claim files, correspondence, current and historical computerized data files, and all other processing, underwriting and closing papers and records which are customarily contained in a mortgage file and which are required to document the Mortgage Loan or to service the Mortgage Loan.

(xv) Amortization schedule, if available.

| | |
|---|---|
| | (xvi) Payment history for any Mortgage Loan that has been closed for more than 90 days.<br><br>(xvii) Fully executed power of attorney, if applicable.<br><br>In the event of a delay by the public recording office in returning any recorded document, the Seller shall deliver to the Custodian, within 180 days of the Closing Date, an Officer's Certificate which shall (i) identify the recorded document, (ii) state that the recorded document has not been delivered to the Custodian due solely to a delay caused by the public recording office, (iii) state the amount of time generally required by the applicable recording office to record and return a document submitted for recordation, and (iv) specify the date the applicable recorded document will be delivered to the Custodian. The Seller shall be required to deliver to the Custodian the applicable recorded document by the date specified in (iv) above. An extension of the date specified in (iv) above may be requested form the Custodian, which consent shall not be unreasonably withheld." |
| Nomura PSA § 2.01 | "In connection with such sale, the Depositor does hereby deliver to, and deposit with the Custodian pursuant to the Custodial Agreement the documents with respect to each Mortgage Loan as described under Section 2 of the Custodial Agreement (the 'Mortgage Loan Documents')."<br>Nomura PSA § 2.01 |
| Custodial Agreement relating to NHELI 2005-FM1dated as of August 1, 2005 ("Nomura Custodial Agreement") | The Nomura Custodial Agreement is not a publicly filed document. Upon information and belief, the form Final Certification annexed to the Nomura Custodial Agreement is in substantially the same form as those Final Certifications set forth herein and any differences are immaterial to the issues addressed in the Complaint. |

## SECTION IV

| | |
|---|---|
| DB PSA § 2.03(b) | "The applicable Custodian on behalf of the Trustee shall acknowledge receipt of such Qualified Substitute Mortgage Loan or Loans and, within ten (10) Business Days thereafter, review such documents and deliver to the Depositor, the Trustee and the related Servicer, with respect to such Qualified Substitute Mortgage Loan or Loans, an initial certification pursuant to the related Custodial Agreement, with any applicable exceptions noted thereon. Within one year of the date of substitution, the applicable Custodian on behalf of the Trustee shall deliver to the Depositor, the Trustee and the related Servicer a final certification pursuant to the related Custodial Agreement with respect to such Qualified Substitute Mortgage Loan or Loans, with any applicable exceptions noted thereon." |
| Goldman Sachs SA § 2.02 | "On the Closing Date, each Custodian shall ascertain that all documents required to be delivered to it are in its possession and shall deliver to the Depositor an Initial Certification, in the form annexed hereto as Exhibit F, and shall deliver to the Depositor a Document Certification and Exception Report, in the form annexed hereto as Exhibit G, within 90 days after the Closing Date to the effect that, as to each applicable Mortgage Loan listed in the Mortgage Loan Schedule (other than any Mortgage Loan paid in full or any Mortgage Loan specifically identified in such certification as an exception and not covered by such certification): (i) all documents required to be delivered to it are in its possession; (ii) such documents have been reviewed by it and appear regular on their face and relate to such Mortgage Loan; (iii) based on its examination and only as to the foregoing documents, as to Deutsche Bank, the information set forth in items 2, 8, 33, and 34 of the Mortgage Loan Schedule respecting such Mortgage Loan is correct; (iv) based on its examination and only as to the foregoing documents, as to JPMorgan, the information set forth in items 2, 8, 33, and 34 of the Mortgage Loan Schedule respecting such Mortgage Loan is correct; and (v) each Mortgage Note has been endorsed as provided in Section 2.01 of this Agreement. Neither Custodian shall be responsible to verify the validity, sufficiency or genuineness of any document in any Custodial File." |
| J.P. Morgan PSA § 2.02(b) | "With respect to the Mortgage Loans, in the event there exist exceptions noted on the related Custodian Certification (substantially in the form of Exhibit L), not later than 270 days after the Closing Date, the applicable Custodian shall deliver to the Trustee, the Securities Administrator and the Depositor a further certification with any applicable exceptions noted thereon." |

| MHC SA § 2.05(d) | "If in the course of the review described in paragraph (c) above, the Custodian discovers any document or documents constituting a part of a Mortgage File is missing, does not appear regular on its face (*i.e.*, is mutilated, damaged, defaced, torn or otherwise physically altered) or appears to be unrelated to the Mortgage Loans identified in the Mortgage Loan Schedules, as applicable (each, a '**Material Defect**'), the Custodian shall identify the Mortgage Loan to which such Material Defect relates in the Final Certification. Within 90 days of its receipt of such notice, the Seller shall be required to cure such Material Defect (and, in such event, the Seller shall provide the Indenture Trustee and the Custodian with an Officer's Certificate confirming that such cure has been effected). The Seller may, in lieu of repurchasing a Mortgage Loan pursuant to this Section (d), substitute for such Mortgage Loan a Qualified Substitute Mortgage Loan subject to the provisions of Section 3.7. The failure of the Indenture Trustee to deliver, or cause the Custodian to deliver, the Final Certification within 90 days after the Closing Date shall not affect or relieve the Seller of its obligation to repurchase any Mortgage Loan pursuant to this Section (d), Section 3.7, or any other Section of this Agreement requiring the repurchase of Mortgage Loans from the Trust Fund." |
|---|---|
| Nomura PSA § 2.02(c) | "No later than 180 days after the Closing Date, the Custodian on the Trustee's behalf will review, for the benefit of the Certificateholders, the Mortgage Files and will execute and deliver or cause to be executed and delivered to the Seller and the Trustee, a final trust receipt substantially in the form annexed to the Custodial Agreement. In conducting such review, the Custodian on the Trustee's behalf and in accordance with the terms of the Custodial Agreement will ascertain whether each document required to be recorded has been returned from the recording office with evidence of recording thereon and the Custodian on the Trustee's behalf has received either an original or a copy thereof, as required in the Custodial Agreement. If the Custodian finds that any document with respect to a Mortgage Loan has not been received, or is unrelated to the Mortgage Loans identified in Exhibit B or appears to be defective on its face, the Custodian shall note such defect in the exception report attached the final trust receipt issued pursuant to the Custodial Agreement…" |

## SECTION V

| Custodial Agreements relating to ACE 2006-HE1 dated as of February 1, 2006 ("DB Custodial Agreement") | The DB Custodial Agreements are not publicly filed documents. Upon information and belief, the form Final Certifications annexed to the DB Custodial Agreements are in substantially the same form as those Final Certifications set forth herein and any differences are immaterial to the issues addressed in the Complaint. |
| --- | --- |
| Goldman Sachs SA Exhibit G | "Ladies and Gentlemen: |
| | In accordance with Section 2.02 of the above-captioned Master Servicing and Trust Agreement (the 'Trust Agreement'), the undersigned, as Custodian, hereby certifies that as to each Mortgage Loan listed in the Mortgage Loan Schedule for which the undersigned is specified as the Custodian (other than any Mortgage Loan paid in full or listed on the attached Document Exception Report) it has received: |
| | (a) the original Mortgage Note, endorsed without recourse in blank by the last endorsee, including all intervening endorsements showing a complete chain of endorsement from the originator to the last endorsee; |
| | (b) The original Assignment of Mortgage in blank, unless the Mortgage Loan is a MERS Mortgage Loan; |
| | (c) personal endorsement and/or guaranty agreements executed in connection with all non individual Mortgage Loans (corporations, partnerships, trusts, estates, etc. (if any); |
| | (d) the related original Mortgage and evidence of its recording or, in certain limited circumstances, a certified copy of the mortgage with evidence of recording with the standard Fannie Mae/FHLMC Condominium Rider or PUD Rider be attached if the mortgaged property is a condominium or is located in a PUD; |
| | (e) originals of any intervening Mortgage assignment or certified copies in either case evidencing recording; provided that the assignment may be in the form of a blanket assignment or assignments, a copy of which with evidence of recording shall be acceptable; |
| | (f) originals of all assumption, modification, agreements or certified copies thereof, in either case with evidence of recording if required to maintain the lien of the mortgage or if otherwise required, or, if recordation is not required, an original or copy of the |

agreement;

(g) an original or copy of a title insurance policy, a certificate of title, or attorney's opinion of title and abstract of title;

(h) to the extent applicable, (1) an original power of attorney, or a certified copy thereof, in either case with evidence of recordation thereon if necessary to maintain the lien of the Mortgage or if the document to which such power of attorney relates is required to be recorded, or, if recordation is not so required, an original or copy of such power of attorney, and (2) an original or copy of any surety agreement or guaranty agreement;

(i) for each Mortgage Loan with respect to which the Mortgagor's name as it appears on the note does not match the borrower's name on the mortgage loan schedule, one of the following: the original of the assumption agreement, or a certified copy thereof, in either case with evidence of recording thereon if required to maintain the lien of the mortgage or if otherwise required, or, if recordation is not so required, an original or copy of such assumption agreement;

(j) a security agreement, chattel mortgage or equivalent document executed in connection with the mortgage, if any.

Based on its review and examination and only as to the foregoing documents, (a) such documents appear regular on their face and related to such Mortgage Loan, and (b) the information set forth in items 2, 8, 33 and 34 of the Mortgage Loan Schedule accurately reflects information set forth in the Custodial File.

The Custodian has made no independent examination of any documents contained in each Mortgage File beyond the review of the Custodial File specifically required in the Trust Agreement. The Custodian makes no representations as to: (i) the validity, legality, sufficiency, enforceability or genuineness of any of the documents contained in each Mortgage File of any of the Mortgage Loans identified on the Mortgage Loan Schedule, or (ii) the collectability, insurability, effectiveness or suitability of any such Mortgage Loan or the perfection or priority of any Mortgage. Notwithstanding anything herein to the contrary, the Custodian has made no determination and makes no representations as to whether (i) any endorsement is sufficient to transfer all right, title and interest of the party so endorsing, as noteholder or assignee thereof, in and to that Mortgage Note or (ii) any assignment is in recordable form or sufficient to effect the assignment of and transfer to the assignee thereof, under the Mortgage to which the assignment relates.

| | |
|---|---|
| | Capitalized words and phrases used herein shall have the respective meanings assigned to them in the Trust Agreement.<br><br>[DEUTSCHE BANK NATIONAL TRUST COMPANY], [J.P. MORGAN TRUST COMPANY NATIONAL ASSOCIATION] not in its individual capacity, but solely as Custodian" |
| J.P. Morgan PSA Exhibit L | "Ladies and Gentlemen:<br><br>Reference is hereby made to the Pooling and Servicing Agreement, dated as of November 1, 2006 (the 'Pooling and Servicing Agreement'), among J.P. Morgan Acceptance Corporation I, as depositor, U.S. Bank National Association, as master servicer and as securities administrator, and HSBC Bank USA, National Association, as trustee. Capitalized terms used but not defined herein shall have the meanings provided in the Pooling and Servicing Agreement.<br><br>In accordance with the provisions of Section 2.01 of the Pooling and Servicing Agreement, the undersigned, as a Custodian, hereby certifies that, as to each Mortgage Loan listed on the Mortgage Loan Schedule, it has reviewed the Trustee Mortgage File and has determined that except as set forth in the attached exception report (a) all documents required to be delivered to it pursuant to Section 2.01 (a) (i) through (ix) of the Pooling and Servicing Agreement are in its possession; provided, that the Custodian has no obligation to verify the receipt of any documents the existence of which was not made known to the Custodian by the Trustee Mortgage File, and provided, further, that the Custodian has no obligation to determine whether recordation of any such modification is necessary (except as set forth in Section 2.01 of the Pooling and Servicing Agreement); (b) such documents have been reviewed by it and appear regular on their face and to relate to such Mortgage Loans; *provided, however*, that the Custodian makes no representation and has no responsibilities as to the authenticity of such documents, their compliance with applicable law, or the collectability of any of the Mortgage Loans relating thereto; (c) based upon its examination, and only as to the foregoing documents, the information set forth on the Mortgage Loan Schedule accurately reflects, within permitted tolerances, the information reviewed by the Custodian with respect to each Mortgage Loan; and (d) each Mortgage Note has been endorsed and each assignment has been assigned as required under Section 2.01 of the Pooling & Servicing Agreement.<br><br>[THE BANK OF NEW YORK TRUST COMPANY, N.A,] as successor in interest to [JPMORGAN CHASE BANK, NATIONAL ASSOCIATION], as Custodian" |

| | |
|---|---|
| MHC SA § 2.05(c) | "Within 90 days after the Closing Date, the Custodian will execute and deliver to the Depositor, the Servicer, the Credit Risk Manager and the Indenture Trustee a Final Certification with any applicable exceptions noted therein. The Custodian shall (i) determine whether such documents are executed and endorsed, but shall be under no duty or obligation to inspect, review or examine any such documents, instruments, certificates or other papers to determine that the same are valid, binding, legally effective, properly endorsed, genuine, enforceable or appropriate for the represented purpose or that they have actually been recorded or are in recordable form or that they are other than what they purport to be on their face and (ii) with respect to each MERS Designated Mortgage Loan, certify that the MERS number on the Mortgage Loan Schedules matches the MERS number on the Mortgage for the related Mortgage File. The Custodian shall not have any responsibility for verifying the genuineness or the legal effectiveness of or authority for any signatures of or on behalf of any party or endorser." |
| Nomura Custodial Agreement | The Nomura Custodial Agreement is not a publicly filed document. Upon information and belief, the form Final Certification annexed to the Nomura Custodial Agreement is in substantially the same form as those Final Certifications set forth herein and any differences are immaterial to the issues addressed in the Complaint. |

**<u>SECTION VI</u>**

| | |
|---|---|
| DB PSA §§ 2.01; 2.03; 9.05 | "In connection with such transfer and assignment, the Depositor does hereby deliver to, and deposit with the applicable Custodian pursuant to the related Custodial Agreement the documents with respect to each Mortgage Loan as described under Section 2 of the related Custodial Agreement (the "Mortgage Loan Documents"). In connection with such delivery and as further described in the Custodial Agreements, the Custodians will be required to review such Mortgage Loan Documents and deliver to the Trustee, the Depositor, each Servicer, the Sponsor and the Insurer certifications (in the forms attached to the Custodial Agreement) with respect to such review with exceptions noted thereon. In addition, under the Custodial Agreements the Depositor will be required to cure certain defects with respect to the Mortgage Loan Documents for the related Mortgage Loans after the delivery thereof by the Depositor to the Custodians as more particularly set forth therein. Notwithstanding anything to the contrary contained herein, the parties hereto acknowledge that the functions of the Trustee with respect to the custody, acceptance, inspection and release of the Mortgage Files, including, but not limited to certain insurance policies and documents contemplated by Section 4.11 of this Agreement, and preparation and delivery of the certifications shall be performed by the Custodians pursuant to the terms and conditions of the Custodial Agreements." DB PSA § 2.01<br><br>"(a) Upon discovery or receipt of notice of any materially defective document in, or that a document is missing from, a Mortgage File or of a breach by the Sponsor of any representation, warranty or covenant under the Mortgage Loan Purchase Agreement in respect of any Mortgage Loan that materially and adversely affects the value of such Mortgage Loan or the interest therein of the Certificateholders and the Insurer, the Trustee shall promptly notify the Sponsor and the related Servicer of such defect, missing document or breach and request that the Sponsor deliver such missing document, cure such defect or breach within sixty (60) days from the date the Sponsor was notified of such missing document, defect or breach, and if the Sponsor does not deliver such missing document or cure such defect or breach in all material respects during such period, the Trustee shall enforce the obligations of the Sponsor under the Mortgage Loan Purchase Agreement to repurchase such Mortgage Loan from REMIC I at the Purchase Price within ninety (90) days after the date on which the Sponsor was notified of such missing document, defect or breach, if and to the extent that the Sponsor is obligated to do so under the Mortgage Loan Purchase Agreement. The Purchase Price for the repurchased Mortgage Loan shall be remitted to the related Servicer or the related Interim Servicer for deposit in the related Collection Account or the related |

Custodial Account, as applicable, the related and the Trustee, upon receipt of written certification from such Servicer or Interim Servicer of such deposit, shall release or cause the applicable Custodian (upon receipt of a request for release in the form attached to the respective Custodial Agreement) to release to the Sponsor the related Mortgage File and the Trustee shall execute and deliver such instruments of transfer or assignment, in each case without recourse, representation or warranty, as the Sponsor shall furnish to it and as shall be necessary to vest in the Sponsor any Mortgage Loan released pursuant hereto, and the Trustee shall not have any further responsibility with regard to such Mortgage File. In lieu of repurchasing any such Mortgage Loan as provided above, if so provided in the Mortgage Loan Purchase Agreement, the Sponsor may cause such Mortgage Loan to be removed from REMIC I (in which case it shall become a Deleted Mortgage Loan) and substitute one or more Qualified Substitute Mortgage Loans in the manner and subject to the limitations set forth in Section 2.03(b) of this Agreement. It is understood and agreed that the obligation of the Sponsor to cure or to repurchase (or to substitute for) any Mortgage Loan as to which a document is missing, a material defect in a constituent document exists or as to which such a breach has occurred and is continuing shall constitute the sole remedy respecting such omission, defect or breach available to the Trustee, the Certificateholders and the Insurer. Notwithstanding anything to the contrary contained herein, any breach of a representation or warranty contained in clauses (xxxiv), (xxxviii), (xxxix), (xl), (xli), (xlvi), (xlvii) and/or (lvi) of Section 6 of the Mortgage Loan Purchase Agreement shall be automatically deemed to affect materially and adversely the interests of the Certificateholders.  In addition, promptly upon the earlier of discovery by a Servicer or receipt of notice by a Servicer of the breach of the representation or covenant of the Sponsor set forth in Section 5(xii) of the Mortgage Loan Purchase Agreement which materially and adversely affects the interests of the Holders of the Class P Certificates in any Prepayment Charge, such Servicer shall promptly notify the Sponsor and the Trustee of such breach. The Trustee shall enforce the obligations of the Sponsor under the Mortgage Loan Purchase Agreement to remedy such breach to the extent and in the manner set forth in the Mortgage Loan Purchase Agreement.  (b) Any substitution of Qualified Substitute Mortgage Loans for Deleted Mortgage Loans made pursuant to Section 2.03(a) of this Agreement must be effected prior to the date which is two years after the Startup Day for REMIC I."
DB PSA § 2.03

"In addition, the Trustee, the Securities Administrator, the Custodians and any director, officer, employee or agent of the Trustee, the Securities Administrator and the Custodians shall be indemnified by

| | |
|---|---|
| | the Trust and held harmless against any loss, liability or expense (including reasonable attorney's fees and expenses) incurred by the Trustee, the Custodians or the Securities Administrator in connection with any claim or legal action or any pending or threatened claim or legal action arising out of or in connection with the acceptance or administration of its respective obligations and duties under this Agreement. . ." <br> DB PSA § 9.05 |
| Goldman Sachs SA §§ 2.02; 8.06 | "Each Custodian shall notify the Trustee of any Mortgage Loans that do not conform to such requirements of Sections 2.01 and 2.02 hereof. The Trustee shall enforce the obligation of the Responsible Parties to cure or repurchase Mortgage Loans that do not conform to such requirements as determined in the Custodian's review as required herein, or based upon notification from JPMorgan, by notifying the applicable Responsible Party to correct or cure such default. The Trustee shall also enforce the obligation of the Responsible Parties under the Sale Agreements, and the Servicing Agreements and of the Purchaser under the GSMC Assignment Agreements to cure or repurchase Mortgage Loans for which there is a defect or a breach of a representation or warranty thereunder of which a Responsible Officer of the Trustee has actual knowledge, by notifying the applicable party to correct or cure such default. If any Servicer, any Responsible Party or the Purchaser, as the case may be, fails or is unable to correct or cure the defect or breach within the period set forth in the applicable agreement, the Trustee shall notify the Depositor of such failure to correct or cure. Unless otherwise directed by the Depositor within five (5) Business Days after notifying the Depositor of such failure by the applicable party to correct or cure, the Trustee shall notify such party to repurchase the Mortgage Loan. If, within ten (10) Business Days of receipt of such notice by such party, such party fails to repurchase such Mortgage Loan, the Trustee shall notify the Depositor of such failure. The Trustee shall pursue all legal remedies available to the Trustee against the Servicers, the Responsible Parties and the Purchaser, as applicable, under this Agreement, if the Trustee has received written notice from the Depositor directing the Trustee to pursue such remedies." <br> Goldman Sachs Servicing Agreement § 2.02 <br><br> "As compensation for its activities under this Agreement, the Trustee shall be paid an on-going monthly or annual fee, as applicable, by the Securities Administrator pursuant to a separate agreement. The Trustee shall have no lien on the Trust Fund for the payment of such fees. The Trustee shall be entitled to be reimbursed, from funds on deposit in the Distribution Account, amounts sufficient to indemnify and hold harmless the Trustee and any director, officer, employee, or agent of the Trustee against any loss, liability, or expense (including reasonable |

| | |
|---|---|
| | attorneys' fees) incurred in connection with any claim or legal action relating to (a) this Agreement, (b) the Certificates, or (c) the performance of any of the Trustee's duties under this Agreement, other than any loss, liability, or expense (i) resulting from any breach of any Servicer's obligations in connection with a Servicing Agreement for which that Servicer has performed its obligation to indemnify the Trustee pursuant to Servicing Agreement, (ii) resulting from any breach of the Responsible Party's obligations in connection with any Sale Agreement for which it has performed its obligation to indemnify the Trustee pursuant to the Sale Agreement, (iii) resulting from any breach of the Master Servicer's obligations hereunder for which the Master Servicer has performed its obligation to indemnify the Trustee pursuant to this Agreement, or (iv) incurred because of willful misfeasance, bad faith, or negligence in the performance of any of the Trustee's duties under this Agreement." <br> Goldman Sachs Servicing Agreement § 8.06 |
| J.P. Morgan PSA §§ 2.05(a); 2.05(b); 6.11 | "Upon discovery by the Depositor, the Seller or the related Originator or receipt of written notice of any materially defective document in, or, following the date of delivery to the Trustee of either of the Custodians' certifications as required under the related Custodial Agreements, that a document is missing from, a Trustee Mortgage File, or discovery by the Trustee, the Securities Administrator, the Depositor, the Seller or the related Originator of the breach by such Originator or Seller of any representation or warranty under the related Purchase and Servicing Agreement or Purchase Agreement, as applicable, as modified by the Acknowledgement, in the case of the Originator, or under this Agreement, in the case of the Seller, in respect of any Mortgage Loan which materially adversely affects the value of that Mortgage Loan or the interest therein of the Certificateholders (a 'Defective Mortgage Loan') (each of the Depositor, the Seller and the related Originator hereby agreeing to give written notice thereof to the Trustee, the Securities Administrator and the other of such parties), the Securities Administrator, or its designee, shall promptly notify the Depositor, the Trustee and the Seller or the related Originator, as applicable, in writing of such defective or missing document or breach and request that the Seller or related Originator deliver such missing document or cure or cause the cure of such defect or breach within a period of time specified in the related Purchase and Servicing Agreement or Purchase Agreement, as applicable, and if the Trustee receives written notice that the Seller or related Originator, as applicable, has not delivered such missing document or cured such defect or breach in all material respects during such period, the Trustee, on behalf of the Trust, shall enforce the obligations of the related Originator under the related Purchase and Servicing Agreement or Purchase Agreement, as applicable, as modified by the Acknowledgement, or, to the extent that the related Originator fails to |

cure such defect or breach, the Seller under this Agreement, and shall cause the related Originator or the Seller, as the case may be, to repurchase that Mortgage Loan from the Trust Fund at the Purchase Price on or prior to the Determination Date following the expiration of such specified period (subject to Section 2.05(b) below); *provided, however*, that, in connection with any such breach that could not reasonably have been cured within such specified period (unless permitted a greater period of time to cure under the related Purchase and Servicing Agreement or Purchase Agreement, as applicable), subject to Section 2.05(c) below, if the related Originator or the Seller, as applicable, shall have commenced to cure such breach within such specified period, the related Originator or the Seller shall be permitted to proceed thereafter diligently and expeditiously to cure the same within such additional time as is reasonably determined by the Trustee to cure such breach. To the extent that any costs and damages are incurred by the Trust Fund as a result of any violation of any applicable federal, state, or local predatory or abusive lending law arising from or in connection with the origination of any Mortgage Loan repurchased by the related Originator or the Seller, such costs and damages shall be included in the Purchase Price of such repurchased Mortgage Loan and shall be borne by the Seller."
J.P. Morgan PSA § 2.05(a)

"Any substitution of Replacement Mortgage Loans for Deleted Mortgage Loans made pursuant to Section 2.05(a) above must be effected prior to the last Business Day that is within two years after the Closing Date."
J.P. Morgan PSA § 2.05(b)

"The Trustee, the Master Servicer and the Securities Administrator and their respective directors, officers, employees and agents shall be entitled to indemnification from the Depositor and the Trust Fund (*provided* that the Trust Fund's indemnification under this Section 6.11 is limited by Section 4.01(d) for any loss, liability or expense (including, without limitation, reasonable attorneys' fees and disbursements) and, in the case of the Trustee, in connection with the Custodial Agreements, including the reasonable compensation and the expenses and disbursements of its agents or counsel), incurred without negligence or willful misconduct on their part, arising out of, or in connection with, the acceptance or administration of the trusts created hereunder or in connection with the performance of their duties hereunder including the costs and expenses of defending themselves against any claim in connection with the exercise or performance of any of their powers or duties hereunder . . ."
J.P. Morgan PSA § 6.11

| MHC SA §§ 2.5(d); 3.7(b)-(c) | "If in the course of the review described in paragraph (c) above, the Custodian discovers any document or documents constituting a part of a Mortgage File is missing, does not appear regular on its face (*i.e.*, is mutilated, damaged, defaced, torn or otherwise physically altered) or appears to be unrelated to the Mortgage Loans identified in the Mortgage Loan Schedules, as applicable (each, a '**Material Defect**'), the Custodian shall identify the Mortgage Loan to which such Material Defect relates in the Final Certification. Within 90 days of its receipt of such notice, the Seller shall be required to cure such Material Defect (and, in such event, the Seller shall provide the Indenture Trustee and the Custodian with an Officer's Certificate confirming that such cure has been effected). The Seller may, in lieu of repurchasing a Mortgage Loan pursuant to this Section (d), substitute for such Mortgage Loan a Qualified Substitute Mortgage Loan subject to the provisions of Section 3.7. The failure of the Indenture Trustee to deliver, or cause the Custodian to deliver, the Final Certification within 90 days after the Closing Date shall not affect or relieve the Seller of its obligation to repurchase any Mortgage Loan pursuant to this Section (d), Section 3.7, or any other Section of this Agreement requiring the repurchase of Mortgage Loans from the Trust Fund." MHC Servicing Agreement § 2.5(d)<br><br>"Upon discovery or receipt of written notice by the Depositor, the Master Servicer, the Securities Administrator, the Indenture Trustee or the Owner Trustee that any of the Originators has breached any representation or warranty set forth in the Bring-Down Letter and the Assignment, Assumption and Recognition Agreements (regardless of whether the Seller has made a substantially similar representation or warranty as set forth on Schedules B-1 through B-5), in respect of a Mortgage Loan that materially and adversely affects the value of such Mortgage Loan or the interest therein of the Noteholders or the Certificateholder, the Depositor, the Master Servicer, the Securities Administrator, the Indenture Trustee, or the Owner Trustee, as the case may be, promptly shall notify such Originator and the Indenture Trustee in writing of such breach, and the Indenture Trustee shall enforce such Originator's obligations under the Bring-Down Letter and the applicable Assignment, Assumption and Recognition Agreement to repurchase or substitute the related Mortgage Loan.<br><br>(c) Upon discovery or receipt of written notice by the Depositor, the Master Servicer, the Securities Administrator, the Indenture Trustee or the Owner Trustee that the Seller has breached any representation or warranty set forth on the applicable Schedule B-1 through B-5, in respect of a Mortgage Loan that materially and adversely affects the value of such Mortgage Loan or the interest therein of the Noteholders or the Certificateholder, the Depositor, the Master Servicer, the |

| | |
|---|---|
| | Securities Administrator, the Indenture Trustee or the Owner Trustee, as the case may be, promptly shall notify the Indenture Trustee in writing of such breach, and the Indenture Trustee shall enforce the Seller's obligations under this Agreement and cause the Seller to repurchase the related Mortgage Loan from the Trust Fund at the Repurchase Price on or prior to the Determination Date following the expiration of the 90-day period following the earlier of the date on which the breach was discovered or notice of the breach was received by the Indenture Trustee; *provided*, *however*, that, subject to Sections 3.7(d) and (e) below, in connection with any such breach that cannot reasonably be cured within such 90-day period, if the Seller shall have commenced to cure such breach within such 90-day period, the Seller shall be permitted to proceed thereafter diligently and expeditiously to cure the breach within an additional 90-day period. Notwithstanding the foregoing, in the event that the breach relates to a representation or warranty made by both one of the Originators under the terms of a Bring-Down Letter and the Assignment, Assumption and Recognition Agreements and the Seller as set forth on the applicable Schedule B-1 through B-5, the Indenture Trustee shall first enforce such Originator's obligations under the Bring-Down Letter and the applicable Assignment, Assumption and Recognition Agreement regarding repurchase or substitution before seeking satisfaction from the Seller pursuant to its obligations hereunder; *provided*, *however*, if such Originator indicates in writing to the Indenture Trustee that it does not intend to fulfill its obligations, the Indenture Trustee may immediately pursue its remedies against the Seller. In connection with the repurchase of any Mortgage Loan by one of the Originators, the Seller will remit to the Securities Administrator for deposit into the Payment Account the excess, if any, of the Repurchase Price for such Mortgage Loan over the amount received from such Originator." MHC Servicing Agreement § 3.7(b)-(c) |
| Indenture related to FBRSI 2005-2 dated as of November 1, 2005 ("MHC Indenture") § 6.7 | "The Indenture Trustee shall be entitled, as compensation for its services, to the Indenture Trustee Fee, as provided in the Transfer and Servicing Agreement. The Indenture Trustee's compensation shall not be limited by any law on compensation of a trustee of an express trust. The Indenture Trustee and any co-trustee shall be reimbursed on behalf of the Issuer from funds in the Payment Account, as provided in the Transfer and Servicing Agreement, for all reasonable ordinary out-of-pocket expenses incurred or made by it, including costs of collection, in addition to the compensation for its services (as provided in the Transfer and Servicing Agreement). Reimbursable expenses under this Section shall include the reasonable compensation and expenses, disbursements and advances of the Indenture Trustee's agents, counsel, accountants and experts. The Issuer shall indemnify the Indenture Trustee, any co-trustee and their respective employees, directors and |

| | |
|---|---|
| | agents, as provided in the Transfer and Servicing Agreement, against any and all claim, loss, liability or expense (including attorneys' fees) incurred by it in connection with the administration of this trust and the performance of its duties hereunder or under any Operative Agreement."<br>MHC Indenture § 6.7 |
| Nomura PSA §§ 2.02(b); 2.02(c); 2.02(e); 2.03(c); 9.05 | "In conducting the review of the Mortgage Files in accordance with the Custodial Agreement, the Custodian on the Trustee's behalf will ascertain whether all required documents have been executed and received and whether those documents relate to the Mortgage Loans identified in Exhibit B to this Agreement, as supplemented. If the Custodian finds any document constituting part of the Mortgage File not to have been executed or received, or to be unrelated to the Mortgage Loans identified in Exhibit B, the Sponsor shall correct or cure any such defect or, if prior to the end of the second anniversary of the Closing Date, the Sponsor may substitute for the related Mortgage Loan a Replacement Mortgage Loan, which substitution shall be accomplished in the manner and subject to the conditions set forth in Section 2.03 or shall deliver to the Trustee an Opinion of Counsel to the effect that such defect does not materially or adversely affect the interests of the Certificateholders in such Mortgage Loan within sixty (60) days from the date of notice from the Custodian of the defect and if the Sponsor fails to correct or cure the defect or deliver such opinion within such period, the Sponsor will, subject to Section 2.03, within ninety (90) days from the notification of the Custodian purchase such Mortgage Loan at the Purchase Price; provided, however, that if such defect relates solely to the inability of the Sponsor to deliver the Mortgage, assignment thereof to the Custodian, or intervening assignments thereof with evidence of recording thereon because such documents have been submitted for recording and have not been returned by the applicable jurisdiction, the Sponsor shall not be required to purchase such Mortgage Loan if the Sponsor delivers such documents promptly upon receipt, but in no event later than 360 days after the Closing Date."<br>Nomura PSA § 2.02(b)<br><br>"No later than 180 days after the Closing Date, the Custodian on the Trustee's behalf will review, for the benefit of the Certificateholders, the Mortgage Files and will execute and deliver or cause to be executed and delivered to the Sponsor and the Trustee, a final trust receipt substantially in the form annexed to the Custodial Agreement. In conducting such review, the Custodian on the Trustee's behalf and in accordance with the terms of the Custodial Agreement will ascertain whether each document required to be recorded has been returned from the recording office with evidence of recording thereon and the Custodian on the Trustee's behalf has received either an original or a |

copy thereof, as required in the Custodial Agreement. If the Custodian finds that any document with respect to a Mortgage Loan has not been received, or is unrelated to the Mortgage Loans identified in Exhibit B or appears to be defective on its face, the Custodian shall note such defect in the exception report attached the final trust receipt issued pursuant to the Custodial Agreement and the Sponsor shall correct or cure any such defect or, if prior to the end of the second anniversary of the Closing Date, the Sponsor may substitute for the related Mortgage Loan a Replacement Mortgage Loan, which substitution shall be accomplished in the manner and subject to the conditions set forth in Section 2.03 or shall deliver to the Trustee an Opinion of Counsel to the effect that such defect does not materially or adversely affect the interests of Certificateholders in such Mortgage Loan within 60 days from the date of notice from the Trustee of the defect and if the Sponsor is unable within such period to correct or cure such defect, or to substitute the related Mortgage Loan with a Replacement Mortgage Loan or to deliver such opinion, the Sponsor shall, subject to Section 2.03, within 90 days from the notification of the Trustee, purchase such Mortgage Loan at the Purchase Price; provided, however, that if such defect relates solely to the inability of the Sponsor to deliver the Mortgage, assignment thereof to the Trustee or intervening assignments thereof with evidence of recording thereon, because such documents have not been returned by the applicable jurisdiction, the Sponsor shall not be required to purchase such Mortgage Loan, if the Sponsor delivers such documents promptly upon receipt, but in no event later than 360 days after the Closing Date."
Nomura PSA § 2.02(c)

"The Sponsor shall deliver to the Custodian the Mortgage Note and other documents constituting the Mortgage File with respect to any Replacement Mortgage Loan, which the Custodian will review as provided in the Custodial Agreement, provided, that the Closing Date referred to therein shall instead be the date of delivery of the Mortgage File with respect to each Replacement Mortgage Loan."
Nomura PSA § 2.02(e)

"Upon discovery by any of the parties hereto of a breach of a representation or warranty set forth in Section 2.03(b) (viii), (ix) or (x) hereof, or in Section 8 of the Mortgage Loan Purchase Agreement, that materially and adversely affects the interests of the Certificateholders in any Mortgage Loan, the party discovering such breach shall give prompt written notice thereof to the other parties. The Sponsor hereby covenants with respect to the representations and warranties set forth in Section 2.03(b)(viii), (ix) and (x) and Section 8 of the Mortgage Loan Purchase Agreement, that within ninety (90) days of the discovery of a breach of any representation or warranty set forth therein that

materially and adversely affects the interests of the Certificateholders in any Mortgage Loan, it shall cure such breach in all material respects and, if such breach is not so cured, (i) prior to the second anniversary of the Closing Date, remove such Mortgage Loan (a 'Deleted Mortgage Loan') from the Trust Fund and substitute in its place a Replacement Mortgage Loan, in the manner and subject to the conditions set forth in this Section; or (ii) repurchase the affected Mortgage Loan or Mortgage Loans from the Trustee at the Purchase Price in the manner set forth below; provided that any such substitution pursuant to (i) above or repurchase pursuant to (ii) above shall not be effected prior to the delivery to the Trustee of an Opinion of Counsel if required by Section 2.05 and any such substitution pursuant to (i) above shall not be effected prior to the additional delivery to the related Custodian of a request for release in accordance with the Custodial Agreement. The Sponsor shall promptly reimburse the Trustee for any expenses reasonably incurred by the Trustee in respect of enforcing the remedies for such breach. To enable the Servicer to amend the Mortgage Loan Schedule, the Sponsor shall, unless it cures such breach in a timely fashion pursuant to this Section 2.03, promptly notify the Trustee whether it intends either to repurchase, or to substitute for, the Mortgage Loan affected by such breach. With respect to the representations and warranties in Section 8 of the Mortgage Loan Purchase Agreement that are made to the best of the Sponsor's knowledge, if it is discovered by any of the Depositor, the Sponsor or the Trustee that the substance of such representation and warranty is inaccurate and such inaccuracy materially and adversely affects the value of the related Mortgage Loan, notwithstanding the Sponsor's lack of knowledge with respect to the substance of such representation or warranty, the Sponsor shall nevertheless be required to cure, substitute for or repurchase the affected Mortgage Loan in accordance with the foregoing. Notwithstanding the foregoing, any breach of a representation or warranty contained in clauses (xxvii), (xxxiii), (xxxviii), (xl), (xlvi), (xlvii), (xlviii), (xlix), (l), (lii), (lxii), (lx), (lxi) and/or (lxiii) of Section 8 of the Mortgage Loan Purchase Agreement shall be automatically deemed to materially and adversely affect the interests of the Certificateholders.

With respect to any Replacement Mortgage Loan or Loans, the Sponsor shall deliver to the Custodian for the benefit of the Certificateholders such documents and agreements as are required by Section 2 of the Custodial Agreement. No substitution will be made in any calendar month after the Determination Date for such month. Scheduled Payments due with respect to Replacement Mortgage Loans in the Due Period related to the Distribution Date on which such proceeds are to be distributed shall not be part of the Trust Fund and will be retained by the Sponsor. For the month of substitution,

31

distributions to Certificateholders will include the Scheduled Payment due on any Deleted Mortgage Loan for the related Due Period and thereafter the Sponsor shall be entitled to retain all amounts received in respect of such Deleted Mortgage Loan. The Servicer shall amend the Mortgage Loan Schedule for the benefit of the Certificateholders to reflect the removal of such Deleted Mortgage Loan and the substitution of the Replacement Mortgage Loan or Loans and shall deliver the amended Mortgage Loan Schedule to the Trustee, the Master Servicer and the Securities Administrator. Upon such substitution, the Replacement Mortgage Loan or Loans shall be subject to the terms of this Agreement in all respects, and the Sponsor shall be deemed to have made with respect to such Replacement Mortgage Loan or Loans, as of the date of substitution, the representations and warranties set forth in Section 8 of the Mortgage Loan Purchase Agreement with respect to such Mortgage Loan. Upon any such substitution and the deposit into the Custodial Account of the amount required to be deposited therein in connection with such substitution as described in the following paragraph and receipt by the Custodian of a request for release for such Mortgage Loan in accordance with the Custodial Agreement, the Custodian on behalf of the Trustee shall release to the Sponsor the Mortgage File relating to such Deleted Mortgage Loan and held for the benefit of the Certificateholders and the Trustee shall execute and deliver at the Sponsor's direction such instruments of transfer or assignment as have been prepared by the Sponsor, in each case without recourse, as shall be necessary to vest in the Sponsor, or its respective designee, title to the Trustee's interest in any Deleted Mortgage Loan substituted for pursuant to this Section 2.03. Neither the Trustee nor the Custodian shall have any further responsibility with regard to such Mortgage File."
Nomura PSA § 2.03(c)

"The fees of the Trustee and the Securities Administrator hereunder shall be paid in accordance with a side letter agreement with the Master Servicer and at the sole expense of the Master Servicer. In addition, the Trustee, the Securities Administrator, the Custodian and any director, officer, employee or agent of the Trustee, the Securities Administrator and the Custodian shall be indemnified by the Trust Fund and held harmless against any loss, liability or expense (including reasonable attorney's fees and expenses) incurred by the Trustee, the Custodian or the Securities Administrator including any pending or threatened claim or legal action arising out of or in connection with the acceptance or administration of its respective obligations and duties under this Agreement and any and all other agreements related hereto, other than any loss, liability or expense (i) for which the Trustee is indemnified by the Master Servicer or the Servicer, (ii) that constitutes a specific liability of the Trustee or the Securities Administrator pursuant to this

|  | Agreement or (iii) any loss, liability or expense incurred by reason of willful misfeasance, bad faith or negligence in the performance of duties hereunder by the Trustee or the Securities Administrator or by reason of reckless disregard of obligations and duties hereunder." Nomura PSA § 9.05 |
| --- | --- |

## SECTION VII

| | |
|---|---|
| DB PSA § 9.01 | "The Trustee, prior to the occurrence of a Master Servicer Event of Default and after the curing or waiver of all Master Servicer Events of Default which may have occurred, and the Securities Administrator each undertake to perform such duties and only such duties as are specifically set forth in this Agreement as duties of the Trustee and the Securities Administrator, respectively. During the continuance of a Master Servicer Event of Default, the Trustee shall exercise such of the rights and powers vested in it by this Agreement, and use the same degree of care and skill in its exercise as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs. Any permissive right of the Trustee enumerated in this Agreement shall not be construed as a duty. |
| | Each of the Trustee and the Securities Administrator, upon receipt of all resolutions, certificates, statements, opinions, reports, documents, orders or other instruments furnished to it, which are specifically required to be furnished pursuant to any provision of this Agreement, shall examine them to determine whether they conform to the requirements of this Agreement. If any such instrument is found not to conform to the requirements of this Agreement in a material manner, the Trustee or the Securities Administrator, as the case may be, shall take such action as it deems appropriate to have the instrument corrected, and if the instrument is not corrected to its satisfaction, the Securities Administrator will provide notice to the Trustee thereof and the Trustee will provide notice to the Certificateholders. |
| | The Trustee shall promptly remit to the related Servicer any complaint, claim, demand, notice or other document (collectively, the "Notices") delivered to the Trustee as a consequence of the assignment of any Mortgage Loan hereunder and relating to the servicing of the Mortgage Loans; provided than any such notice (i) is delivered to the Trustee at its Corporate Trust Office, (ii) contains information sufficient to permit the Trustee to make a determination that the real property to which such document relates is a Mortgaged Property. The Trustee shall have no duty hereunder with respect to any Notice it may receive or which may be alleged to have been delivered to or served upon it unless such Notice is delivered to it or served upon it at its Corporate Trust Office and such Notice contains the information required pursuant to clause (ii) of the preceding sentence. |
| | No provision of this Agreement shall be construed to relieve the Trustee or the Securities Administrator from liability for its own negligent action, its own negligent failure to act or its own misconduct; provided, however, that: |

| | |
|---|---|
| | (i) Prior to the occurrence of a Master Servicer Event of Default, and after the curing or waiver of all such Master Servicer Events of Default which may have occurred with respect to the Trustee and at all times with respect to the Securities Administrator, the duties and obligations of the Trustee shall be determined solely by the express provisions of this Agreement, neither the Trustee nor the Securities Administrator shall be liable except for the performance of such duties and obligations as are specifically set forth in this Agreement, no implied covenants or obligations shall be read into this Agreement against the Trustee or the Securities Administrator and, in the absence of bad faith on the part of the Trustee or the Securities Administrator, respectively, the Trustee or the Securities Administrator, respectively, may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon any certificates or opinions furnished to the Trustee or the Securities Administrator, respectively, that conform to the requirements of this Agreement; <br><br> (ii) Neither the Trustee nor the Securities Administrator shall be liable for an error of judgment made in good faith by a Responsible Officer or Responsible Officers of the Trustee or an officer or officers of the Securities Administrator, respectively, unless it shall be proved that the Trustee or the Securities Administrator, respectively, was negligent in ascertaining the pertinent facts; and <br><br> (iii) Neither the Trustee nor the Securities Administrator shall be liable with respect to any action taken, suffered or omitted to be taken by it in good faith in accordance with the direction of the Holders of Certificates entitled to at least 25% of the Voting Rights relating to the time, method and place of conducting any proceeding for any remedy available to the Trustee or the Securities Administrator or exercising any trust or power conferred upon the Trustee or the Securities Administrator under this Agreement." |
| Goldman Sachs SA § 8.01 | "The Trustee, before the occurrence of a Master Servicer Event of Default and after the curing of all Master Servicer Events of Default that may have occurred, shall undertake to perform such duties and only such duties as are specifically set forth in this Agreement. In case a Master Servicer Event of Default has occurred and remains uncured, the Trustee shall exercise such of the rights and powers vested in it by this Agreement, and use the same degree of care and skill in their exercise as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs. <br><br> The Trustee and the Custodians, upon receipt of all resolutions, certificates, statements, opinions, reports, documents, orders or other instruments furnished to the Trustee or the Custodians, as applicable, that are specifically required to be furnished pursuant to any provision |

| | |
|---|---|
| | of this Agreement shall examine them to determine whether on their face they are in the form required by this Agreement, or with respect to the documents in the respective Custodial Files whether they satisfy the review criteria set forth in Section 2.02. Neither the Trustee nor the Custodians shall be responsible for the accuracy or content of any resolution, certificate, statement, opinion, report, document, order, or other instrument.<br><br>No provision of this Agreement shall be construed to relieve the Trustee or the Custodians from liability for its own negligent action, its own negligent failure to act or its own bad faith or willful misfeasance; provided, however, that:<br><br>(a) unless a Master Servicer Event of Default of which a Responsible Officer of the Trustee obtains actual knowledge has occurred and is continuing, the duties and obligations of the Trustee shall be determined solely by the express provisions of this Agreement, the Trustee shall not be liable except for the performance of the duties and obligations specifically set forth in this Agreement, no implied covenants or obligations shall be read into this Agreement against the Trustee, and the Trustee may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon any certificates or opinions furnished to the Trustee and conforming to the requirements of this Agreement which it believed in good faith to be genuine and to have been duly executed by the proper authorities respecting any matters arising hereunder;<br><br>(b) the Trustee shall not be liable for an error of judgment made in good faith by a Responsible Officer or Responsible Officers of the Trustee, unless it is finally proven that the Trustee was negligent in ascertaining the pertinent facts; and<br><br>(c) the Trustee shall not be liable with respect to any action taken, suffered, or omitted to be taken by it in good faith in accordance with the direction of the Holders of Certificates evidencing not less than 25% of the Voting Rights of Certificates relating to the time, method, and place of conducting any proceeding for any remedy available to the Trustee, or exercising any trust or power conferred upon the Trustee under this Agreement." |
| J.P. Morgan PSA § 6.01 | "The Trustee, except during the continuance of an Event of Default, and the Securities Administrator undertakes to perform such duties and only such duties as are specifically set forth in this Agreement. Any permissive right of the Trustee or the Securities Administrator provided for in this Agreement shall not be construed as a duty of the Trustee or the Securities Administrator. If an Event of Default has occurred and has not otherwise been cured or waived, the Trustee shall exercise such |

of the rights and powers vested in it by this Agreement and use the same degree of care and skill in their exercise as a prudent Person would exercise or use under the circumstances in the conduct of such Person's own affairs, unless the Trustee is acting as master servicer of the Mortgage Loans, in which case it shall use the same degree of care and skill as a master servicer of the Mortgage Loans hereunder.

(b) Each of the Trustee and the Securities Administrator, upon receipt of all resolutions, certificates, statements, opinions, reports, documents, orders or other instruments furnished to the Trustee or the Securities Administrator which are specifically required to be furnished pursuant to any provision of this Agreement, shall examine them, subject to the limitations set forth in Section 6.01(l), to determine whether they are in the form required by this Agreement to the extent specified herein; *provided, however*, that neither the Trustee nor the Securities Administrator shall be responsible for the accuracy or content of any such resolution, certificate, statement, opinion, report, document, order or other instrument furnished by the Master Servicer or any Servicer or any other Person to the Trustee or the Securities Administrator pursuant to this Agreement, and shall not be required to recalculate or verify any numerical information furnished to the Trustee or the Securities Administrator pursuant to this Agreement. Subject to the immediately preceding sentence, if any such resolution, certificate, statement, opinion, report, document, order or other instrument is found not to conform to the form required by this Agreement in a material manner the Securities Administrator shall notify the Person providing such instrument of such nonconformance and request that such instrument be corrected, and if the instrument is not corrected to the Securities Administrator 's satisfaction, the Securities Administrator will provide notice thereof to the Certificateholders and will, at the expense of the Trust Fund, which expense shall be reasonable given the scope and nature of the required action, take such further action as directed by the Certificateholders.

(c) Neither the Trustee nor the Securities Administrator shall have any liability arising out of or in connection with this Agreement, except for its negligence or willful misconduct. Notwithstanding anything in this Agreement to the contrary, neither the Trustee nor the Securities Administrator shall be liable for special, indirect or consequential losses or damages of any kind whatsoever (including, but not limited to, lost profits). No provision of this Agreement shall be construed to relieve the Trustee or the Securities Administrator from liability for its own negligent action, its own negligent failure to act or its own willful misconduct; *provided, however*, that:

| | |
|---|---|
| | (i) The Trustee shall not be personally liable with respect to any action taken, suffered or omitted to be taken by it in good faith in accordance with the direction of Holders of Certificates as provided in Section 6.18 hereof; |
| | (ii) For all purposes under this Agreement, the Trustee shall not be deemed to have notice of any Event of Default unless a Responsible Officer of the Trustee has actual knowledge thereof or unless written notice of any event which is in fact such a default is received by the Trustee at the Corporate Trust Office of the Trustee, and such notice references the Holders of the Certificates and this Agreement; |
| | (iii) For all purposes under this Agreement, the Securities Administrator shall not be deemed to have notice of any Event of Default (other than resulting from a failure by the Master Servicer (i) to remit funds (or to make Advances) or (ii) to furnish information to the Securities Administrator when required to do so) unless a Responsible Officer of the Securities Administrator has actual knowledge thereof or unless written notice of any event which is in fact such a default is received by the Securities Administrator at the address provided in Section 12.07, and such notice references the Holders of the Certificates and this Agreement; |
| | (iv) No provision of this Agreement shall require the Trustee or the Securities Administrator to expend or risk its own funds or otherwise incur any financial liability in the performance of any of its duties hereunder, or in the exercise of any of its rights or powers, if it shall have reasonable grounds for believing that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured to it; and none of the provisions contained in this Agreement shall in any event require the Trustee or the Securities Administrator to perform, or be responsible for the manner of performance of, any of the obligations of the Master Servicer under this Agreement or the Servicers under the Purchase and Servicing Agreements; |
| | (v) Neither the Trustee nor the Securities Administrator shall be responsible for any act or omission of the Master Servicer, the Depositor, the Seller, any Servicer or any Custodian." |
| MHC Indenture §§ 6.1(a); 6.1(c) | "If an Indenture Event of Default has occurred and is continuing, the Indenture Trustee shall exercise the rights and powers vested in it by this Indenture and use the same degree of care and skill in its exercise as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs." MHC Indenture § 6.1(a) |

| | |
|---|---|
| | "The Indenture Trustee may not be relieved from liability for its own negligent action, its own negligent failure to act, its own willful misconduct or its own bad faith, except that: |
| | (i) this paragraph does not limit the effect of paragraph (a) of this Section; |
| | (ii) the Indenture Trustee shall not be liable for any error of judgment made in good faith by a Responsible Officer, unless it is proved that the Indenture Trustee was negligent in ascertaining the pertinent facts; |
| | (iii) the Indenture Trustee shall not be liable with respect to any action it takes or omits to take in good faith in accordance with this Indenture or upon a direction received by it from the requisite Noteholders pursuant to Article V; and |
| | (iv) the Indenture Trustee shall not be required to take notice or be deemed to have notice or knowledge of (A) any failure by the Issuer to comply with its obligations hereunder or in the Operative Agreements or (B) any Indenture Default or Indenture Event of Default, unless a Responsible Officer of the Indenture Trustee assigned to and working in its corporate trust department obtains actual knowledge of such Indenture Default or Indenture Event of Default or shall have received written notice thereof. In the absence of such actual knowledge or notice, the Indenture Trustee may conclusively assume that there is no Indenture Default or Indenture Event of Default." MHC Indenture § 6.1(c) |
| Nomura PSA §§ 9.01(a); 9.01(d) | "The Trustee, prior to the occurrence of a Master Servicer Default, and after the curing or waiver of all Master Servicer Defaults, which may have occurred, and the Securities Administrator each undertake to perform such duties and only such duties as are specifically set forth in this Agreement as duties of the Trustee and the Securities Administrator, respectively. If a Master Servicer Default has occurred and has not been cured or waived, the Trustee shall exercise such of the rights and powers vested in it by this Agreement, and use the same degree of care and skill in their exercise, as a prudent person would exercise or use under the circumstances in the conduct of such Person's own affairs. Any permissive right of the Trustee enumerated in this Agreement shall not be construed as a duty." Nomura PSA § 9.01(a) |
| | "No provision of this Agreement shall be construed to relieve the Trustee or the Securities Administrator from liability for its own negligent action, its own negligent failure to act or its own misconduct; provided, however, that: |

39

(i) Prior to the occurrence of a Master Servicer Default and after the curing or waiver of all such Master Servicer Defaults which may have occurred with respect to the Trustee and at all times with respect to the Securities Administrator, the duties and obligations of the Trustee and the Securities Administrator shall be determined solely by the express provisions of this Agreement, neither the Trustee nor the Securities Administrator shall be liable except for the performance of its duties and obligations as are specifically set forth in this Agreement, no implied covenants or obligations shall be read into this Agreement against the Trustee or the Securities Administrator and, in the absence of bad faith on the part of the Trustee or the Securities Administrator, respectively, the Trustee or the Securities Administrator, respectively, may conclusively rely and shall be fully protected in acting or refraining from acting, as to the truth of the statements and the correctness of the opinions expressed therein, upon any certificates or opinions furnished to the Trustee or the Securities Administrator, respectively, that conform to the requirements of this Agreement;

(ii) Neither the Trustee nor the Securities Administrator shall be liable in its individual capacity for an error of judgment made in good faith by a Responsible Officer or Responsible Officers of the Trustee or an officer or officers of the Securities Administrator, respectively, unless it shall be proved that the Trustee or Securities Administrator, respectively, was negligent in ascertaining the pertinent facts;

(iii) Neither the Trustee nor the Securities Administrator shall be liable with respect to any action taken, suffered or omitted to be taken by it in good faith and believed by it to be authorized or within the rights or powers conferred upon it by this Agreement or in accordance with the directions of the Holders of Certificates evidencing not less than 25% of the aggregate Voting Rights of the Certificates, if such action or nonaction relates to the time, method and place of conducting any proceeding for any remedy available to the Trustee or the Securities Administrator or exercising any trust or other power conferred upon the Trustee or the Securities Administrator under this Agreement;

(iv) The Trustee shall not be required to take notice or be deemed to have notice or knowledge of any default or Master Servicer Default unless a Responsible Officer of the Trustee shall have actual knowledge thereof. In the absence of such notice, the Trustee may conclusively assume there is no such default or Master Servicer Default;

(v) The Trustee shall not in any way be liable by reason of any insufficiency in any Account held by or in the name of Trustee unless it is determined by a court of competent jurisdiction that the Trustee's

| | |
|---|---|
| | gross negligence or willful misconduct was the primary cause of such insufficiency (except to the extent that the Trustee is obligor and has defaulted thereon);

(vi) Anything in this Agreement to the contrary notwithstanding, in no event shall the Trustee or the Securities Administrator be liable for special, indirect, punitive or consequential loss or damage of any kind whatsoever (including but not limited to lost profits), even if the Trustee or the Securities Administrator has been advised of the likelihood of such loss or damage and regardless of the form of action and whether or not any such damages were foreseeable or contemplated; and

(vii) None of the Sponsor, the Depositor or the Trustee shall be responsible for the acts or omissions of the other, it being understood that this Agreement shall not be construed to render them partners, joint venturers or agents of one another."
Nomura PSA § 9.01(d) |

**SECTION VIII**

| | |
|---|---|
| DB PSA §§ 4.01, 1.01 | "The Master Servicer shall, from and after the Closing Date supervise, monitor and oversee the obligations of the Servicers under this Agreement and the Interim Servicers under the Interim Servicing Agreements to service and administer the related Mortgage Loans in accordance with the terms of this Agreement and the Interim Servicing Agreements, and shall have full power and authority to do any and all things which it may deem necessary or desirable in connection with such master servicing and administration. In performing its obligations hereunder, the Master Servicer shall act in a manner consistent with Accepted Master Servicing Practices. Furthermore, the Master Servicer shall oversee and consult with the Servicers and the Interim Servicers as necessary from time-to-time to carry out the Master Servicer's obligations hereunder, shall receive, review and evaluate all reports, information and other data provided to the Master Servicer by the Servicers and the Interim Servicers and shall cause the Servicers and Interim Servicers to perform and observe the covenants, obligations and conditions to be performed or observed by the related Servicer under this Agreement and the Interim Servicing Agreements. The Master Servicer shall independently and separately monitor each Servicer's and each Interim Servicer's servicing activities with respect to each related Mortgage Loan, reconcile the results of such monitoring with such information provided in the previous sentence on a monthly basis and coordinate corrective adjustments to each Servicer's, each Interim Servicer's and Master Servicer's records, and based on such reconciled and corrected information, prepare the statements specified in Section 5.03 and any other information and statements required to be provided by the Master Servicer hereunder. The Master Servicer shall reconcile the results of its Mortgage Loan monitoring with the actual remittances of each Servicer and each Interim Servicer to the Distribution Account pursuant to the terms hereof based on information provided to the Master Servicer by each Servicer and each Interim Servicer. Notwithstanding anything to the contrary herein, the Master Servicer shall have no obligation to supervise, monitor or oversee the performance of the Interim Servicers under the Interim Servicing Agreements on or after the Servicing Transfer Date." DB PSA § 4.01<br><br>"Accepted Master Servicing Practices": With respect to any Mortgage Loan, as applicable, either (x) those customary mortgage master servicing practices of prudent mortgage servicing institutions that master service mortgage loans of the same type and quality as such Mortgage Loan in the jurisdiction where the related Mortgaged Property is located, to the extent applicable to the Master Servicer or |

| | |
|---|---|
| | (y) as provided in Section 3.01 hereof, but in no event below the standard set forth in clause (x)."<br>DB PSA § 1.01 |
| Goldman Sachs SA § 9.01 | "The Master Servicer, on behalf of the Trustee, the Securities Administrator, the Depositor and the Certificateholders, shall monitor the performance of the Servicers under the related Servicing Agreements, and (except as set forth below) shall use its reasonable good faith efforts to cause the Servicers to duly and punctually perform their duties and obligations thereunder as applicable." |
| J.P. Morgan PSA § 9.01 | "The Master Servicer, on behalf of the Trustee, the Depositor and the Certificateholders shall monitor the performance of the Servicers under the Purchase and Servicing Agreements and the Servicing Agreements, and shall use its reasonable good faith efforts to enforce the obligations of the Servicers to duly and punctually to perform all of their respective duties and obligations thereunder."<br>J.P. Morgan PSA § 9.01 |
| Amended and Restated Flow Servicing Agreement related to JPALT 2006-A7 dated as of July 1, 2006 ("J.P. Morgan SA") §§ 1.01; 4.01 | "Accepted Servicing Practices: With respect to any Mortgage Loan, those mortgage servicing practices (including collection procedures) of prudent mortgage banking institutions which service mortgage loans of the same type as such Mortgage Loan in the jurisdiction where the related Mortgaged Property is located, and which are in accordance with Fannie Mae servicing practices and procedures, for MBS pool mortgages, as defined in the Fannie Mae Guide including future updates. . .<br><br>Applicable Requirements: Shall mean and include with respect to the Mortgage Loans: (i) all contractual obligations of Servicer, and the Originator and any Prior Servicers including, without limitation, those contractual obligations contained in this Agreement, in any agreement with any insurer or in the Mortgage Loan Documents, (ii) all applicable federal, state and local legal and regulatory requirements (including statutes, rules, regulations and ordinances) binding upon Servicer, the Originator and any Prior Servicer; (iii) all other applicable requirements and guidelines of each governmental agency, board, commission, instrumentality and other governmental body or office having jurisdiction, including without limitation those of any insurer; (iv) all other applicable judicial and administrative judgments, orders, stipulations, awards, writs and injunctions; and (v) Accepted Servicing Practices."<br>J.P. Morgan Servicing Agreement § 1.01<br><br>"The Servicer, as independent contract servicer, shall service and administer the Mortgage Loans in accordance with this Agreement and with Applicable Requirements, and shall have full power and authority, acting alone, to do or cause to be done any and all things in connection |

| | with such servicing and administration which the Servicer may deem necessary or desirable and consistent with the terms of this Agreement and with Applicable Requirements and exercise the same care that it customarily employs for its own account. Except as set forth in this Agreement, the Servicer shall service the Mortgage Loans in strict compliance with the servicing provisions of the Fannie Mae Guide, which include, but are not limited to, provisions regarding the liquidation of Mortgage Loans, the collection of Mortgage Loan payments, the payment of taxes, insurance and other charges, the maintenance of hazard insurance with a Qualified Insurer, the maintenance of mortgage impairment in surance, the maintenance of fidelity bond and errors and omissions insurance, inspections, the restoration of Mortgaged Property, the maintenance of Primary Mortgage Insurance Policies, insurance claims, the title, management and disposition of REO Property, permitted withdrawals with respect to REO Property, liquidation reports, and reports of foreclosures and abandonments of Mortgaged Property, the transfer of Mortgaged Property, the release of Mortgage Loan Documents, annual statements, and examination of records and facilities." <br><br> J.P. Morgan Servicing Agreement § 4.01 |
|---|---|
| MHC SA § 6.1(a); Article I | "For and on behalf of the Issuer, the Indenture Trustee, the Noteholders and the Certificateholder, the Master Servicer shall master service the Mortgage Loans in accordance with the Accepted Master Servicing Practices and the provisions of this Agreement." <br> MHC Servicing Agreement § 6.1(a) <br><br> "With respect to any Mortgage Loan, those customary mortgage loan master servicing practices of prudent mortgage servicing institutions that master service mortgage loans of the same type and quality as such Mortgage Loan in the jurisdiction where the related Mortgaged Property is located, to the extent applicable to the Master Servicer, and in accordance with the applicable state, local and federal laws, rules and regulations." <br> MHC Servicing Agreement Article I |
| Nomura PSA §§ 4.01; 1.01 | "The Master Servicer shall supervise, monitor and oversee the obligation of the Servicer to service and administer the Mortgage Loans in accordance with the terms of this Agreement and shall have full power and authority to do any and all things which it may deem necessary or desirable in connection with such master servicing and administration. In performing its obligations hereunder, the Master Servicer shall act in a manner consistent with Accepted Master Servicing Practices. Furthermore, the Master Servicer shall oversee and consult with the Servicer as necessary from time to time to carry out the Master Servicer's obligations hereunder, shall receive, review and evaluate all reports, information and other data provided to the Master Servicer by the Servicer and shall cause the Servicer to perform and |

| | observe the covenants, obligations and conditions to be performed or observed by the Servicer under this Agreement. The Master Servicer shall independently and separately monitor the Servicer's servicing activities with respect to each Mortgage Loan, reconcile the results of such monitoring with such information provided in the previous sentence on a monthly basis and coordinate corrective adjustments to the Servicer's and Master Servicer's records, and based on such reconciled and corrected information, provide such information relating to the Mortgage Loans to the Securities Administrator as shall be necessary to enable it to prepare the statements specified in Section 5.06 and any other information and statements required to be provided by the Securities Administrator hereunder. The Master Servicer shall reconcile the results of its Mortgage Loan monitoring with the actual remittances of the Servicer to the Distribution Account." Nomura PSA § 4.01 "Accepted Master Servicing Practices: With respect to any Mortgage Loan, as applicable, either (x) those customary mortgage master servicing practices of prudent mortgage servicing institutions that master service mortgage loans of the same type and quality as such Mortgage Loan in the jurisdiction where the related Mortgaged Property is located, to the extent applicable to the Master Servicer (except in its capacity as successor to the Servicer), or (y) as provided in Section 3.01 hereof, but in no event below the standard set forth in clause (x)." Nomura PSA § 1.01 |
|---|---|

**SECTION IX**

| DB PSA § 8.01(b) | ""Master Servicer Event of Default," wherever used herein, means any one of the following events: (i) any failure on the part of the Master Servicer duly to observe or perform in any material respect any other of the covenants or agreements on the part of the Master Servicer contained in this Agreement, or the breach by the Master Servicer of any representation and warranty contained in Section 2.04, which continues unremedied for a period of 30 days after the date on which written notice of such failure, or as otherwise set forth in this Agreement requiring the same to be remedied, shall have been given to the Master Servicer by the Depositor or the Trustee or to the Master Servicer, the Depositor and the Trustee by the Holders of Certificates entitled to at least 25% of the Voting Rights;<br><br>If a Master Servicer Event of Default shall occur, then, and in each and every such case, so long as such Master Servicer Event of Default shall not have been remedied, the Depositor or the Trustee may, and at the written direction of the Holders of Certificates entitled to at least 51% of Voting Rights, the Trustee shall, by notice in writing to the Master Servicer (and to the Depositor if given by the Trustee or to the Trustee if given by the Depositor) with a copy to each Rating Agency, terminate all of the rights and obligations of the Master Servicer in its capacity as Master Servicer under this Agreement, to the extent permitted by law, and in and to the Mortgage Loans and the proceeds thereof." |
|---|---|
| Goldman Sachs SA §§ 7.01; 9.04(g) | "If an Event of Default described in any Servicing Agreement shall occur with respect to the related Servicer then, and in each and every such case, so long as such Event of Default shall not have been remedied, the Master Servicer may, or at the direction of Certificateholders entitled to a majority of the Voting Rights the Master Servicer shall, by notice in writing to the applicable Servicer (with a copy to each Rating Agency), terminate all of the rights and obligations of such Servicer under the applicable Servicing Agreement and in and to the Mortgage Loans and the proceeds thereof. The Holders of Certificates evidencing at least 66% of the Voting Rights of Certificates affected by a Event of Default may waive such Event of Default; provided, however, that (a) an Event of Default with respect to any Servicer's obligation to make Monthly Advances may be waived only by all of the holders of the Certificates affected by such Event of Default and (b) no such waiver is permitted that would materially adversely affect any non-consenting Certificateholder. On and after the receipt by such Servicer of such written notice of termination, all authority and power of such Servicer hereunder, whether with respect to the Mortgage Loans or otherwise, shall pass to and be vested in the Master Servicer. The Master Servicer is hereby authorized and |

| | |
|---|---|
| | empowered to execute and deliver, on behalf of such Servicer, as attorney-in-fact or otherwise, any and all documents and other instruments, and to do or accomplish all other acts or things necessary or appropriate to effect the purposes of such notice of termination, whether to complete the transfer and endorsement or assignment of the Mortgage Loans and related documents, or otherwise." Goldman Sachs PSA § 7.01 <br><br> "In each and every such case, so long as a Master Servicer Event of Default shall not have been remedied, in addition to whatever rights the Trustee may have at law or equity to damages, including injunctive relief and specific performance, the Trustee, by notice in writing to the Master Servicer, may, and upon the request of the Holders of Certificates representing at least 51% of the Voting Rights shall, terminate with cause all the rights and obligations of the Master Servicer under this Agreement." Goldman Sachs PSA § 9.04(g) |
| J.P. Morgan PSA § 6.14 | "The occurrence of any one or more of the following events shall constitute an 'Event of Default': (i) Any failure by the Master Servicer to furnish the Securities Administrator the Mortgage Loan data sufficient to prepare the reports described in Section 4.04 which continues unremedied for a period of one Business Day after the date upon which written notice of such failure shall have been given to such Master Servicer by the Trustee or the Securities Administrator or to such Master Servicer, the Securities Administrator and the Trustee by the Holders of not less than 25% of the Class Principal Amount of each Class of Certificates affected thereby; or (ii) Any failure on the part of the Master Servicer duly to observe or perform in any material respect any other of the covenants or agreements (other than those referred to in (viii) and (ix) below) on the part of the Master Servicer contained in this Agreement which continues unremedied for a period of 30 days after the date on which written notice of such failure, requiring the same to be remedied, shall have been given to the Master Servicer by the Trustee or the Securities Administrator, or to the Master Servicer, the Securities Administrator and the Trustee by the Holders of more than 50% of the Aggregate Voting Interests of the Certificates… <br><br> If an Event of Default described in clauses (i) through (ix) of this Section shall occur, then, in each and every case, subject to applicable law, so long as any such Event of Default shall not have been remedied within any period of time prescribed by this Section, the Trustee, by notice in writing to the Master Servicer may, and shall, if so directed by Certificateholders evidencing more than 50% of the Class Principal Amount of each Class of Certificates, terminate all of the rights and obligations of the Master Servicer hereunder and in and to the Mortgage Loans and the proceeds thereof." |

| | |
|---|---|
| MHC SA §§ 5.11; 6.11 | "Each of the following shall constitute a Servicer Event of Default on the part of the Servicer… (b) failure by the Servicer duly to observe or perform in any material respect any other of the covenants or agreements on the part of the Servicer set forth in this Agreement (other than the covenants described in clause (j) below), including, but not limited to, breach by the Servicer of any one or more of the representations, warranties and covenants of the Servicer as set forth in Section 3.5, which continues unremedied for a period of 30 days after the date on which written notice of such failure, requiring the same to be remedied, shall have been given to the Servicer by the Master Servicer or the Indenture Trustee… In each and every such case, so long as a Servicer Event of Default shall not have been remedied, in addition to whatever rights the Master Servicer or the Indenture Trustee may have at law or equity to damages, including injunctive relief and specific performance, the Master Servicer, by notice in writing to the Servicer, may terminate all the rights and obligations of the Servicer under this Agreement and in and to the Mortgage Loans and the proceeds thereof. Upon receipt by the Servicer of such written notice, all authority and power of the Servicer under this Agreement, whether with respect to the Mortgage Loans or otherwise, shall pass to and be vested in the successor appointed pursuant to Section 6.9." MHC Servicing Agreement § 5.11

"The occurrence of any one or more of the following events shall constitute a '**Master Servicer Event of Default**': (i) any failure by the Master Servicer (other than in its capacity as successor servicer) to remit to the Securities Administrator for payment to the Noteholders any funds required to be remitted by the Master Servicer under the terms of this Agreement; or (ii) any failure on the part of the Master Servicer (other than in its capacity as successor servicer) duly to observe or perform in any material respect any other of the covenants or agreements on the part of the Master Servicer contained in this Agreement that materially and adversely affects the interest of the Noteholders, which continues unremedied for a period of 30 days after the earlier of (i) the date on which written notice of such failure, requiring the same to be remedied, shall have been given to the Master Servicer by the Depositor or the Indenture Trustee, or to the Master Servicer, the Depositor and the Indenture Trustee by the Noteholders representing 66-2/3% of the total Voting Interests and (ii) actual knowledge of such failure by a Servicing Officer of the Master Servicer; or…if a representation or warranty set forth in Section 3.6 shall prove to be incorrect as of the time made in any respect that materially and adversely affects the interests of the Noteholders and the Certificateholder, and the circumstance or condition in respect of which such representation or warranty was incorrect shall not have been eliminated or cured within 30 days after the earlier of (a) the date |

|  | on which written notice of such incorrect representation or warranty shall have been given to the Master Servicer by the Depositor or the Indenture Trustee, or to the Master Servicer, the Depositor and the Indenture Trustee by the Noteholders representing 66-2/3% of the total Voting Interests and (b) actual knowledge of such failure by a servicing officer of the Master Servicer…If the Indenture Trustee has knowledge of any Master Servicer Event of Default described in subclauses (i) through (ix) of this Section 6.11, then, in each and every case, subject to applicable law, so long as any such Master Servicer Event of Default shall not have been remedied within any period of time prescribed by this Section 6.11, if any, the Indenture Trustee, by notice in writing to the Master Servicer shall terminate all of the rights and obligations of the Master Servicer hereunder and in and to the Mortgage Loans and the proceeds thereof. If a Master Servicer Event of Default described in clause (ix) of this Section 6.11 shall occur, then, in each and every case, subject to applicable law, so long as such Master Servicer Event of Default shall not have been remedied within the time period prescribed by clause (ix) of this Section 6.11, the Indenture Trustee, by notice in writing to the Master Servicer, may, and shall, if so directed by the Noteholders representing 66 2/3% of the Voting Interests promptly terminate all of the rights and obligations of the Master Servicer hereunder and in and to the Mortgage Loans and the proceeds thereof." <br><br> MHC Servicing Agreement § 6.11 |
|---|---|
| Nomura PSA § 8.01 | "In case one or more of the following events of default by the Servicer (each, a 'Servicer Default') shall occur and be continuing, that is to say… (ii) failure on the part of the Servicer to duly observe or perform in any material respect any other of the covenants or agreements on the part of the Servicer set forth in this Agreement (other than those described in clauses (viii) and (ix) below), the breach of which has a material adverse effect and which continue unremedied for a period of thirty (30) days after the date on which written notice of such failure, requiring the same to be remedied, shall have been given to the Servicer by the Master Servicer or to the Servicer and the Master Servicer by the holders of Certificates evidencing not less than 25% of the Voting Rights evidenced by the Certificates… then, and in each and every such case, so long as a Servicer Default shall not have been remedied, the Master Servicer, by notice in writing to the defaulting Servicer and the Trustee, shall with respect to a payment default by the Servicer pursuant to Section 8.01(i) of this Agreement and, upon the occurrence and continuance of any other Servicer Default, may, and, at the written direction of Certificateholders evidencing not less than 25% of the Voting Rights shall, in addition to whatever rights the Trustee on behalf of the Certificateholders may have under Section 7.03 and at law or equity to damages, including injunctive relief and specific performance, terminate all the rights and obligations of the defaulting |

|  | Servicer under this Agreement and in and to the related Mortgage Loans and the proceeds thereof without compensating the defaulting Servicer for the same with respect to a default by the Servicer, except as specifically provided below. On or after the receipt by the defaulting Servicer of such written notice, all authority and power of the Servicer under this Agreement whether with respect to the related Mortgage Loans or otherwise, shall pass to and be vested in the Master Servicer. Upon written request from the Master Servicer, the defaulting Servicer shall prepare, execute and deliver, any and all documents and other instruments, place in the Trustee's (or its Custodian's) possession all Mortgage Files relating to the related Mortgage Loans, and do or accomplish all other acts or things necessary or appropriate to complete the transfer and endorsement or assignment of the related Mortgage Loans and related documents, at the Servicer's sole expense. The defaulting Servicer shall cooperate with the Master Servicer in effecting the termination of the Servicer's responsibilities and rights hereunder including, without limitation, the transfer to such successor for administration by it of all cash amounts which shall at the time be credited by the defaulting Servicer to the Custodial Account or Escrow Account or thereafter received with respect to the related Mortgage Loans or any related REO Property (provided, however, that the defaulting Servicer shall continue to be entitled to receive all amounts accrued or owing to it. . . ." |
|--|--|

**SECTION X**

| | |
|---|---|
| DB PSA §§ 8.02; 9.08 | "On and after the time a Servicer receives a notice of termination, the Master Servicer or, if Wells Fargo receives the notice of termination, the Trustee, shall be the successor in all respects to such Servicer in its capacity as a Servicer under this Agreement and the transactions set forth or provided for herein or therein, and all the responsibilities, duties and liabilities relating thereto and arising thereafter shall be assumed by the Master Servicer or the Trustee…" DB PSA § 8.02 "Any successor trustee or successor securities administrator appointed as provided in Section 9.07 of this Agreement shall execute, acknowledge and deliver to the Depositor and its predecessor trustee or predecessor securities administrator an instrument accepting such appointment hereunder, and thereupon the resignation or removal of the predecessor trustee or predecessor securities administrator shall become effective and such successor trustee or successor securities administrator without any further act, deed or conveyance, shall become fully vested with all the rights, powers, duties and obligations of its predecessor hereunder, with the like effect as if originally named as trustee or securities administrator herein. The predecessor trustee or predecessor securities administrator shall deliver to the successor trustee or successor securities administrator all Mortgage Loan Documents and related documents and statements to the extent held by it hereunder, as well as all monies, held by it hereunder, and the Depositor and the predecessor trustee or predecessor securities administrator shall execute and deliver such instruments and do such other things as may reasonably be required for more fully and certainly vesting and confirming in the successor trustee or successor securities administrator all such rights, powers, duties and obligations…" DB PSA § 9.08 |
| Goldman Sachs SA §§ 7.02; 9.06 | "Master Servicer to Act; Appointment of Successor. Within 120 days after the Master Servicer gives, and the applicable Servicer receives a notice of termination pursuant to Section 7.01, the Master Servicer shall, subject to and to the extent provided in Section 7.03, and subject to the rights of the Master Servicer to appoint a successor Servicer pursuant to this Section 7.02, be the successor to the Servicer in its capacity as servicer under the applicable Servicing Agreement and the transactions set forth or provided for herein and in such Servicing Agreement and shall be subject to all the responsibilities, duties and liabilities relating thereto placed on the Servicer by the terms and provisions of such Servicing Agreement and applicable law including the obligation to make Monthly Advances or Servicing Advances pursuant to such Servicing Agreement (it being understood and agreed that if any Servicer fails to make an Advance, the Master Servicer shall |

do so unless a determination has been made that such Advance would constitute a Nonrecoverable Monthly Advance or a Nonrecoverable Servicing Advance). As compensation therefor, the Master Servicer shall be entitled to all funds relating to the Mortgage Loans that the Servicer would have been entitled to charge to the Collection Account if the Servicer had continued to act under the Servicing Agreement including, if the Servicer was receiving the Servicing Fee at the Servicing Fee Rate set forth in the Servicing Agreement (as set forth in the Mortgage Loan Schedule with respect to the related Mortgage Loans,) such Servicing Fee and the income on investments or gain related to the Collection Account.

Notwithstanding the foregoing, the Master Servicer may, if it shall be unwilling to so act, or shall, if it is prohibited by applicable law from making Monthly Advances and Servicing Advances pursuant to the applicable Servicing Agreement, or if it is otherwise unable to so act, or, at the written request of Certificateholders entitled to a majority of the Voting Rights, appoint, or petition a court of competent jurisdiction to appoint, any established mortgage loan servicing institution the appointment of which does not adversely affect the then current rating of the Certificates by each Rating Agency, as the successor to such Servicer under the applicable Servicing Agreement in the assumption of all or any part of the responsibilities, duties or liabilities of such Servicer. No such appointment of a successor to a Servicer hereunder shall be effective until the Depositor shall have consented thereto. Any successor to such Servicer shall be an institution which is a Fannie Mae and Freddie Mac approved seller/servicer in good standing, which has a net worth of at least $25,000,000, which is willing to service the Mortgage Loans and which executes and delivers to the Depositor and the Master Servicer an agreement accepting such delegation and assignment, containing an assumption by such Person of the rights, powers, duties, responsibilities, obligations and liabilities of such terminated Servicer, (other than liabilities of such terminated Servicer incurred prior to termination of such Servicer under Section 7.01), with like effect as if originally named as a party to this Agreement; provided, that each Rating Agency acknowledges that its rating of the Certificates in effect immediately prior to such assignment and delegation will not be qualified or reduced, as a result of such assignment and delegation. Pending appointment of a successor to a Servicer hereunder, the Master Servicer, unless the Master Servicer is prohibited by law from so acting, shall, subject to Section 3.05, act in such capacity as hereinabove provided. In connection with such appointment and assumption, the Master Servicer may make such arrangements for the compensation of such successor out of payments on Mortgage Loans as it, the Depositor and such successor shall agree; provided, however, that no such compensation shall be in excess of the

52

Servicing Fee Rate and amounts paid to the Servicer from investments. The Master Servicer and such successor shall take such action, consistent with this Agreement, as shall be necessary to effectuate any such succession. Neither the Master Servicer nor any other successor to a Servicer shall be deemed to be in default hereunder by reason of any failure to make, or any delay in making, any distribution hereunder or any portion thereof or any failure to perform, or any delay in performing, any duties or responsibilities hereunder, in either case caused by the failure of the predecessor Servicer to deliver or provide, or any delay in delivering or providing, any cash, information, documents or records to it.

Any successor Servicer shall give notice to the Mortgagors of such change of Servicer, in accordance with applicable federal and state law, and shall, during the term of its service as servicer, maintain in force the policy or policies that each Servicer is required to maintain pursuant to the applicable Servicing Agreement. Notwithstanding the foregoing, the Master Servicer may not terminate a Servicer without cause."
Goldman Sachs PSA § 7.02

"Upon termination of the Master Servicer's responsibilities and duties under this Agreement, the Trustee shall appoint or may petition any court of competent jurisdiction for the appointment of a successor, which shall succeed to all rights and assume all of the responsibilities, duties and liabilities of the Master Servicer under this Agreement prior to the termination of the Master Servicer. Any successor shall be a Fannie Mae and Freddie Mac approved servicer in good standing and acceptable to the Depositor and the Rating Agencies. In connection with such appointment and assumption, the Trustee may make such arrangements for the compensation of such successor out of payments on Mortgage Loans as it and such successor shall agree; provided, however, that in no event shall the master servicer fee paid to such successor master servicer exceed that paid to the Master Servicer hereunder. In the event that the Master Servicer's duties, responsibilities and liabilities under this Agreement are terminated, the Master Servicer shall continue to discharge its duties and responsibilities hereunder until the effective date of such termination with the same degree of diligence and prudence which it is obligated to exercise under this Agreement and shall take no action whatsoever that might impair or prejudice the rights of its successor. . . .

If no successor Master Servicer has accepted its appointment within 90 days of the time the Trustee receives the resignation of the Master Servicer, the Trustee shall be the successor Master Servicer in all respects under this Agreement and shall have all the rights and powers

| | |
|---|---|
| | and be subject to all the responsibilities, duties and liabilities relating thereto, including the obligation to make Monthly Advances; provided, however, that any failure to perform any duties or responsibilities caused by the Master Servicer's failure to provide information required by this Agreement shall not be considered a default by the Trustee hereunder. In the Trustee's capacity as such successor, the Trustee shall have the same limitations on liability herein granted to the Master Servicer. As compensation therefor, the Trustee shall be entitled to receive the compensation, reimbursement and indemnities otherwise payable to the Master Servicer, including the fees and other amounts payable pursuant to Section 9.07 hereof." Goldman Sachs PSA § 9.06 |
| J.P. Morgan PSA § 6.14(b) | "On and after the time the Master Servicer receives a notice of termination from the Trustee pursuant to Section 6.14(a) or the Trustee receives the resignation of the Master Servicer evidenced by an Opinion of Counsel pursuant to Section 9.06, the Trustee, unless another master servicer shall have been appointed, shall be the successor in all respects to the Master Servicer in its capacity as such under this Agreement and the transactions set forth or provided for herein and shall have all the rights and powers and be subject to all the responsibilities, duties and liabilities relating thereto and arising thereafter placed on the Master Servicer hereunder, including the obligation to make Advances with respect to the Mortgage Loans; *provided, however*, that any failure to perform such duties or responsibilities caused by the Master Servicer's failure to provide information required by this Agreement shall not be considered a default by the Trustee hereunder. In addition, the Trustee shall have no responsibility for any act or omission of the Master Servicer prior to the receipt by the Master Servicer of any notice of termination. The Trustee shall have no liability relating to the representations and warranties of the Master Servicer set forth in Section 9.03. In the Trustee's capacity as such successor, the Trustee shall have the same limitations on liability herein granted to the Master Servicer. As compensation therefor, the Trustee shall be entitled to receive all compensation payable to the Master Servicer pursuant to Section 9.04 of this Agreement." |
| MHC SA § 6.11(b) | "On and after the time the Master Servicer receives a notice of termination from the Indenture Trustee pursuant to Section 6.11(a) or the Indenture Trustee receives the resignation of the Master Servicer evidenced by an Opinion of Counsel pursuant to Section 5.8, the Indenture Trustee shall be the successor in all respects to the Master Servicer in its capacity as such under this Agreement and the transactions set forth or provided for herein and shall have all the rights and powers and be subject to all the responsibilities, duties and liabilities relating thereto and arising thereafter placed on the Master Servicer hereunder, including the obligation to make Advances; |

| | |
|---|---|
| | *provided*, *however*, that any failure to perform such duties or responsibilities caused by the Master Servicer's failure to provide information required by this Agreement shall not be considered a default by the Indenture Trustee hereunder." |
| Nomura PSA §§ 8.01(b); 8.02; 9.08 | "On or after the receipt by the Master Servicer of such written notice, all authority and power of the Master Servicer under this Agreement, whether with respect to the Certificates (other than as a Holder of any Certificate) or the Mortgage Loans or otherwise including, without limitation, the compensation payable to the Master Servicer under this Agreement, shall pass to and be vested in the Trustee pursuant to and under this Section, and, without limitation, the Trustee is hereby authorized and empowered, as attorney in fact or otherwise, to execute and deliver, on behalf of and at the expense of the Master Servicer, any and all documents and other instruments and to do or accomplish all other acts or things necessary or appropriate to effect the purposes of such notice of termination, whether to complete the transfer and endorsement or assignment of the Mortgage Loans and related documents, or otherwise." Nomura PSA § 8.01(b) <br><br> "On and after the time the Servicer receives a notice of termination pursuant to Section 8.01, the Master Servicer shall become the successor to the Servicer with respect to the transactions set forth or provided for herein and after a transition period (not to exceed ninety (90) days), shall be subject to all the responsibilities, duties and liabilities relating thereto placed on the Servicer by the terms and provisions hereof, and applicable law including the obligation to make Advances pursuant to Article V hereof, except as otherwise provided herein provided, however, that the Master Servicer's obligation to make Advances in its capacity as Successor Servicer shall not be subject to such 90 day transition period and the Master Servicer will make any Advance required to be made by the terminated Servicer on the Distribution Date on which the terminated Servicer was required to make such Advance. . . . Pending appointment of a successor to the terminated Servicer hereunder, the Master Servicer, unless the Master Servicer is prohibited by law from so acting, shall act in such capacity as hereinabove provided. In connection with such appointment and assumption, the Master Servicer may make such arrangements for the compensation of such successor out of payments on the Mortgage Loans or otherwise as it and such successor shall agree; provided that no such compensation shall be in excess of that permitted the terminated Servicer hereunder. The Master Servicer and such successor shall take such action, consistent with this Agreement, as shall be necessary to effectuate any such succession." Nomura PSA § 8.02 |

| | |
|---|---|
| | "Any successor trustee or successor securities administrator appointed as provided in Section 9.07 hereof shall execute, acknowledge and deliver to the Depositor and to its predecessor trustee or predecessor securities administrator instrument accepting such appointment hereunder and thereupon the resignation or removal of the predecessor trustee or predecessor securities administrator shall become effective and such successor trustee or successor securities administrator, without any further act, deed or conveyance, shall become fully vested with all the rights, powers, duties and obligations of its predecessor hereunder, with the like effect as if originally named as trustee or Securities Administrator herein. The predecessor trustee or predecessor securities administrator shall deliver to the successor trustee or successor securities administrator all Mortgage Loan Documents and related documents and statements to the extent held by it hereunder, as well as all monies, held by it hereunder, and the Depositor and the predecessor trustee or predecessor securities administrator shall execute and deliver such instruments and do such other things as may reasonably be required for more fully and certainly vesting and confirming in the successor trustee or successor securities administrator all such rights, powers, duties and obligations." Nomura PSA § 9.08 |

**SECTION XI**

| | |
|---|---|
| DB MLPA § 6 | "The Seller hereby represents and warrants to the Purchaser that as to each Mortgage Loan as of the Closing Date . . .<br><br>(iii) Except as set forth on the Closing Schedule, all payments required to be made prior to the Cutoff Date with respect to each Mortgage Loan have been made;<br><br>(v) There are no delinquent taxes, assessment liens or insurance premiums affecting the related Mortgaged Property;<br><br>(vii) The Mortgaged Property is insured against loss by fire and hazards of extended coverage (excluding earthquake insurance) in an amount which is at least equal to the lesser of (i) the amount necessary to compensate for any damage or loss to the improvements which are a part of such property on a replacement cost basis or (ii) the outstanding principal balance of the Mortgage Loan. If the Mortgaged Property is in an area identified on a flood hazard map or flood insurance rate map issued by the Federal Emergency Management Agency as having special flood hazards (and such flood insurance has been made available), a flood insurance policy meeting the requirements of the current guidelines of the Federal Insurance Administration is in effect. All such insurance policies contain a standard mortgagee clause naming the originator of the Mortgage Loan, its successors and assigns as mortgagee and the Seller has not engaged in any act or omission which would impair the coverage of any such insurance policies. Except as may be limited by applicable law, the Mortgage obligates the Mortgagor thereunder to maintain all such insurance at the Mortgagor's cost and expense, and on the Mortgagor's failure to do so, authorizes the holder of the Mortgage to maintain such insurance at Mortgagor's cost and expense and to seek reimbursement therefor from the Mortgagor;<br><br>(viii) Each Mortgage Loan and the related Prepayment Charge, if any, complied in all material respects with any and all requirements of any federal, state or local law including, without limitation, usury, truth in lending, antipredatory lending, real estate settlement procedures, consumer credit protection, equal credit opportunity, fair housing or disclosure laws applicable to the origination and servicing of the Mortgage Loans and the consummation of the transactions contemplated hereby will not involve the violation of any such laws;<br><br>(ix) The Mortgage has not been satisfied, cancelled, subordinated (other than with respect to second lien Mortgage Loans, the subordination to the first lien) or rescinded, in whole or in part, and the |

Mortgaged Property has not been released from the lien of the Mortgage, in whole or in part, nor has any instrument been executed that would effect any such satisfaction, cancellation, subordination, rescission or release;

(x) The Mortgage was recorded or was submitted for recording in accordance with all applicable laws and is a valid, existing and enforceable first or second lien on the Mortgaged Property including all improvements on the Mortgaged Property;

(xi) The Mortgage Note and the related Mortgage are genuine and each is the legal, valid and binding obligation of the maker thereof, insured under the related title policy, and enforceable in accordance with its terms, except to the extent that the enforceability thereof may be limited by a bankruptcy, insolvency or reorganization;

(xii) The Seller is the sole legal, beneficial and equitable owner of the Mortgage Note and the Mortgage and has the full right to convey, transfer and sell the Mortgage Loan to the Purchaser free and clear of any encumbrance, equity, lien (other than with respect to second lien Mortgage Loans, the subordination to the related first lien), pledge, charge, claim or security interest and immediately upon the sale, assignment and endorsement of the Mortgage Loans from the Seller to the Purchaser, the Purchaser shall have good and indefeasible title to and be the sole legal owner of the Mortgage Loans subject only to any encumbrance, equity, lien, pledge, charge, claim or security interest arising out of the Purchaser's actions;

(xiii) Each Mortgage Loan is covered by a valid and binding American Land Title Association lender's title insurance policy issued by a title insurer qualified to do business in the jurisdiction where the Mortgaged Property is located. No claims have been filed under such lender's title insurance policy, and the Seller has not done, by act or omission, anything that would impair the coverage of the lender's title insurance policy;

(xiv) There is no material default, breach, violation event or event of acceleration existing under the Mortgage or the Mortgage Note and no event which, with the passage of time or with notice and the expiration of any grace or cure period, would constitute a material default, breach, violation or event of acceleration, and the Seller has not, nor has its predecessors, waived any material default, breach, violation or event of acceleration;

(xv) There are no mechanics' or similar liens or claims which have been filed for work, labor or material provided to the related

58

Mortgaged Property prior to the origination of the Mortgage Loan which are or may be liens prior to, or equal or coordinate with, the lien of the related Mortgage, except as may be disclosed in the related title policy;

(xvi) Except with respect to approximately 26.45% of the Group IA Mortgage Loans, approximately 20.89% of the Group IB Mortgage Loans and approximately 43.10% of the Group II Mortgage Loans by aggregate principal balance as of the Cutoff Date, which are interest only loans, each Mortgage Note is payable on the first day of each month in equal monthly installments or principal and interest (subject to adjustment in the case of the adjustable rate Mortgage Loans), with interest calculated on a 30/360 basis and payable in arrears, sufficient to amortize the Mortgage Loan fully by the stated maturity date over an original term from commencement of amortization to not more than 30 years and no Mortgage Loan permits negative amortization;

(xvii) The servicing practices used in connection with the servicing of the Mortgage Loans have been in all respects reasonable and customary in the mortgage servicing industry of like mortgage loan servicers, servicing similar subprime mortgage loans originated in the same jurisdiction as the Mortgaged Property;

(xviii) At the time of origination of the Mortgage Loan there was no proceeding pending for the total or partial condemnation of the Mortgaged Property and, as of the date such Mortgage Loan was purchased by the Purchaser, to the best of the Purchaser's knowledge there is no proceeding pending for the total or partial condemnation of the Mortgaged Property;

(xxii) The Mortgage Loan is not subject to any valid right of rescission, setoff, counterclaim or defense, including without limitation the defense of usury, nor will the operation of any of the terms of the Mortgage Note or the Mortgage, or the exercise of any right thereunder, render either the Mortgage Note or the Mortgage unenforceable, in whole or in part, or subject to any such right of rescission, setoff, counterclaim or defense, including without limitation the defense of usury, and no such right of rescission, setoff, counterclaim or defense has been asserted with respect thereto;

(xxiii) The Mortgage Loans were underwritten in accordance with the originator's underwriting guidelines in effect at the time the Mortgage Loans were originated (the "Applicable Underwriting Guidelines"), except with respect to certain of those Mortgage Loans which had compensating factors permitting a deviation from the Applicable Underwriting Guidelines;

(xxiv) The Mortgaged Property is free of material damage and waste, excepting therefrom any Mortgage Loan subject to an escrow withhold as shown on the Closing Schedule;

(xxvi) All parties to the Mortgage Note had the legal capacity to execute the Mortgage Note and the Mortgage, and the Mortgage Note and the Mortgage have been duly executed by such parties;

(xxvii) To the best of the Seller's knowledge, at the time of origination of the Mortgage Loan, no appraised improvement located on or being part of the Mortgaged Property was in violation of any applicable zoning law or regulation and all inspections, licenses and certificates required in connection with the origination of any Mortgage Loan with respect to the occupancy of the Mortgaged Property, have been made or obtained from the appropriate authorities;

(xxxiv) Each Mortgage Loan is an obligation which is principally secured by an interest in real property within the meaning of Treasury Regulation section 1.860G2(a);

(xxxv) Each Mortgage Loan (a) is directly secured by a first or second lien on, and consists of a single parcel of, real property with a detached one to four family residence erected thereon, a townhouse or an individual condominium unit in a condominium project, or an individual unit in a planned unit development ("PUD"). Any unit in a PUD or condominium project conforms to the requirements of the Applicable Underwriting Guidelines regarding such dwellings. No residence or dwelling is a mobile home or a manufactured dwelling unless it is a manufactured dwelling, which is permanently affixed to a foundation and treated as "real estate" under applicable law. No Mortgaged Property is used for commercial purposes. Mortgaged Properties which contain a home office shall not be considered as being used for commercial purposes as long as the Mortgaged Property has not been altered for commercial purposes and is not storing any chemicals or raw materials other than those commonly used for homeowner repair, maintenance and/or household purposes;

(xl) No Mortgage Loan is subject to the Home Ownership and Equity Protection Act of 1994 or any comparable law and no Mortgage Loan is classified and/or defined as "high cost", "covered" (excluding home loans defined as "covered home loans" in the New Jersey Home Ownership Security Act of 2002 that were originated between November 26, 2003 and July 7, 2004) "high risk home" or "predatory" loan under any other federal, state or local law (or a similarly classified loan using different terminology under a law imposing heightened

regulatory scrutiny or additional legal liability for residential mortgage loans having high interest rates, points and/or fees);

(xli) There is no Mortgage Loan that was originated or modified on or after October 1, 2002 and before March 7, 2003, which is secured by property located in the State of Georgia. There is no such Mortgage Loan underlying the Certificate that was originated on or after March 7, 2003, which is a "high cost home loan" as defined under the Georgia Fair Lending Act;

(xliii) No Mortgage Loan is a "High Cost Home Loan" as defined in the Indiana Home Loan Practices Act, effective January 1, 2005 (Ind. Code Ann. Sections 2491 through 2499);

(xliv) There is no Mortgage Loan that (a) is secured by property located in the State of Kentucky; (b) was originated on or after June 24, 2003, and (c) which is a "high cost home loan" as defined under Kentucky State Statute KRS 360.100, effective as of June 24, 2003;

(xlv) There is no Mortgage Loan that (a) is secured by property located in the State of Arkansas, (b) has a note date on or after July 16, 2003, and (c) which is a "high cost home loan" as defined under the Arkansas Home Loan Protection Act, effective as of July 16, 2003;

(xlviii) No Mortgage Loan is a "High Cost Home Loan" as defined in the New Jersey Home Ownership Act effective November 27, 2003 (N.J.S.A. 46:10B22 et seq.);

(xlix) No Mortgage Loan is a "High Cost Home Loan" as defined in the New Mexico Home Loan Protection Act effective January 1, 2004 (N.M. Stat. Ann. §§ 5821A1 et seq.); (l) No Mortgage Loan is a "High Risk Home Loan" as defined in the Illinois High Risk Home Loan Act effective January 1, 2004 (815 Ill. Comp. Stat. 137/1 et seq.);

(li) No Mortgage Loan originated in the City of Los Angeles is subject to the City of Los Angeles California Ordinance 175008 as a home loan;

(lii) No Mortgage Loan is a "High Cost Home Loan" as defined under the Maine House Bill 383 L.D. 494, effective as of September 13, 2003;

(liii) No Mortgage Loan is a "High Cost" loan as defined under the New York Banking Law Section 6L, effective as of April 1, 2003;

(liv) No Mortgage Loan is a "home loan" in the state of Nevada;

| | |
|---|---|
| | (lv) No Mortgage Loan is a "Section 10 mortgage loan" as defined in Oklahoma House Bill 1574;<br><br>(lvii) No Mortgage Loan is a High Cost Loan or Covered Loan, as applicable (as such terms are defined in the then current Standard & Poor's LEVELS® Glossary which is now Version 5.6(d) Revised, Appendix E (attached hereto as Exhibit 2)) and no Mortgage Loan originated on or after October 1, 2002 through March 6, 2003 is governed by the Georgia Fair Lending Act;<br><br>(lxxi) No selection procedures were used by the Seller that identified the Mortgage Loans as being less desirable or valuable than other comparable mortgage loans in the Seller's portfolio;<br><br>(lxxiii) No Mortgage Loan is secured in whole or in part by the interest of the Mortgagor as a lessee under a ground lease of the related Mortgaged Property." |
| Amended and Restated Flow Seller's Warranties and Servicing Agreement related to GSAA 2005-6 dated as of August 1, 2003, as amended thereto dated as of July 1, 2004 ("Goldman Sachs Amended and Restated Flow Seller's Warranties and Servicing Agreement")<br><br>Master Mortgage Loan Purchase Agreement related to GSAA 2005-6 dated as of April 1, 2004, as amended by Amendment No. 1, dated as of July, 2004, and as amended by Amendment No. 2, dated as of January | The Goldman Sachs Amended and Restated Flow Seller's Warranties and Servicing Agreement and Goldman Sachs MLPA are not publicly filed documents. Upon information and belief, the Seller's representations and warranties contained therein are in substantially the same form as those representations and warranties set forth herein and any differences are immaterial to the issues addressed in the Complaint. |

| 1, 2005 ("Goldman Sachs MLPA") | |
|---|---|
| Mortgage Loan Sale Agreement related to JPALT 2006-A7 dated as of October 1, 2006 ("J.P. Morgan MLSA") §7.01[5] | "The Seller, with respect to Mortgage Loans sold by it, hereby represents and warrants to the Purchaser, its successors and assigns and the Successor Servicer, that, as to each Mortgage Loan, as of the related Closing Date:<br><br>(a) Mortgage Loans as Described. The information set forth in the Mortgage Loan Schedule and the tape delivered by the Seller to the Purchaser is true, correct and complete in all material respects.<br><br>(b) No Outstanding Charges. There are no defaults by the Seller, the Servicer or any prior originator or servicer in complying with the terms of the Mortgage, and (a) all taxes, special assessments, ground rents, governmental assessments, insurance premiums, leasehold payments, water, sewer and municipal charges which previously became due and owing have been paid prior to any 'economic loss' dates or discount dates (or if payments were made after any "economic loss" date or discount date, then Seller has paid any penalty or reimbursed any discount out of Seller's corporate funds) and (2) all flood and hazard insurance premiums and mortgage insurance premiums which are due, have been paid without loss or penalty to the Mortgagor. As of the Closing Date, no event which, with the passage of time or with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event of acceleration under a Mortgage Loan has occurred, including but not limited to a violation of applicable law, local ordinances or city codes resulting from a deterioration or defect existing in any Mortgaged Property, and neither Seller nor its predecessors have waived any default, breach, violation or event of acceleration. Seller has received no notice of, and has no knowledge of, any event, including but not limited to the bankruptcy filing or death of a Borrower, which may or could give rise to a Borrower default under the Note or Mortgage. . . .<br><br>(c) Original Terms Unmodified. The terms of the Mortgage Note and the Mortgage have not been impaired, waived, altered or modified in any respect, except by written instruments which (a) have been recorded in the applicable public recording office if required by law or if necessary to maintain the lien priority of the Mortgage, and (b) which have been delivered to the Purchaser; the substance of any such waiver, alteration or modification has been approved by the insurer" |

---

[5] The representations and warranties set forth in the Mortgage Loan Sale Agreements and Flow Mortgage Loan Purchase, Warranties, and Servicing Agreements with the various other originators are not publicly filed documents. Upon information and belief, the seller's representations and warranties contained therein are in substantially the same form as those representations and warranties set forth herein and any differences are immaterial to the issues addressed in the Complaint.

under the Primary Mortgage Insurance Policy or LPMI Policy, if any, and by the title insurer, to the extent required by the related policy, and is reflected on the Mortgage Loan Schedule. . . .

(d) No Defenses. The Mortgage Note and the Mortgage are not subject to any right of rescission, set-off, counterclaim or defense, including, without limitation, the defense of usury, nor will the operation of any of the terms of the Mortgage Note and the Mortgage, or the exercise of any right thereunder, render either the Mortgage Note or the Mortgage unenforceable, in whole or in part, or subject to any right of rescission, set-off, counterclaim or defense, including, without limitation, the defense of usury, and no such right of rescission, set-off, counterclaim or defense has been asserted with respect thereto; and the Mortgagor was not a debtor in any state or federal bankruptcy or insolvency proceeding at the time the Mortgage Loan was originated. The Mortgaged Property has not been subject to any bankruptcy proceeding or foreclosure proceeding and the Mortgagor has not filed for protection under, or has been a debtor under, applicable bankruptcy laws.

 (e) Hazard Insurance. All buildings or other customarily insured improvements upon the Mortgaged Property are insured by a Qualified Insurer generally acceptable to Fannie Mae and to prudent mortgage lending institutions against loss by fire, hazards of extended coverage and such other hazards as are provided for in the Fannie Mae Guides as well as all additional requirements set forth herein, pursuant to an insurance policy conforming to the requirements of Customary Servicing Procedures and providing coverage in an amount equal to the lesser of (i) the full insurable value of the Mortgaged Property or (ii) the outstanding principal balance owing on the Mortgage Loan. . . .

(f) Compliance with Applicable Laws. Any and all requirements of any applicable federal, state or local law including, without limitation, usury, truth in lending, real estate settlement procedures, consumer credit protection, predatory and abusive lending laws, equal credit opportunity, fair housing and disclosure laws or unfair and deceptive practices laws applicable to the origination and servicing of the Mortgage Loan including, without limitation, any provisions relating to prepayment penalties, have been complied with, the consummation of the transactions contemplated hereby will not involve the violation of any such laws or regulations. Each Mortgage Loan at the time it was made complied in all material respects with applicable local, state, and federal laws, including, but not limited to, all applicable predatory and abusive lending laws.

(g) No Satisfaction of Mortgage. The Mortgage has not been satisfied, canceled, subordinated or rescinded, in whole or in part, and the Mortgaged Property has not been released from the lien of the Mortgage in whole or in part, nor has any instrument been executed that would effect any such satisfaction, cancellation, subordination, rescission or release. Neither the Seller nor the Servicer has waived the performance by the Mortgagor of any action, if the Mortgagor's failure to perform such action would cause the Mortgage Loan to be in default, and neither the Seller nor the Servicer has waived any default.

(h) Valid First or Second Lien. Except with respect to each Co-op Loan, the Mortgage is a valid, existing, perfected and enforceable first or second lien on the Mortgaged Property, including all improvements on the Mortgaged Property, free and clear of all adverse claims, liens and encumbrances having priority over the lien of the Mortgage, subject only to (i) the lien of current real property taxes and assessments not yet due and payable, (ii) covenants, conditions and restrictions, rights of way, easements and other matters of the public record as of the date of recording being acceptable to mortgage lending institutions generally and either (A) specifically referred to in the lender's title insurance policy delivered to the originator of the Mortgage Loan or (B) which do not adversely affect the Appraised Value of the Mortgaged Property, (iii) other matters to which like properties are commonly subject which do not individually or in the aggregate materially interfere with the benefits of the security intended to be provided by the Mortgage or the use, enjoyment, value or marketability of the related Mortgaged Property or (iv) with respect to each Second Lien Mortgage Loan a prior mortgage lien on the Mortgaged Property. . . .

(i) Validity of Mortgage Documents. With respect to each Mortgage Loan, Seller or its designee has in its possession all Servicing Files, or any miscellaneous items (except for those Servicing Files disclosed to Purchaser by Seller as outstanding). . . .

(k) Title Insurance. Except with respect to each Co-op Loan and each Second Lien Mortgage Loan, the Mortgage Loan is covered by an ALTA or CLTA lender's title insurance policy, acceptable to Fannie Mae or Freddie Mac, issued by a title insurer acceptable to Fannie Mae or Freddie Mac and qualified to do business in the jurisdiction where the Mortgaged Property is located . . . .

(l) No Default. There is no default, breach, violation or event of acceleration existing under the Mortgage or the Mortgage Note and no event which, with the passage of time or with notice and the expiration

of any grace or cure period, would constitute a default, breach, violation or event permitting acceleration . . . .

(q) Customary Provisions. The Mortgage and related Mortgage Note contain customary and enforceable provisions such as to render the rights and remedies of the holder thereof adequate for the realization against the Mortgaged Property of the benefits of the security provided thereby, including (i) in the case of a Mortgage designated as a deed of trust by trustee's sale, and (ii) otherwise by judicial foreclosure. There is no homestead or other exemption or right available to the Mortgagor or any other person which would interfere with the right to sell the Mortgaged Property at a trustee's sale or the right to foreclose the Mortgage. The Mortgage Note and Mortgage are on forms acceptable to Fannie Mae or Freddie Mac.

(r) No Additional Collateral. The Mortgage Note is not and has not been secured by any collateral except the lien of the corresponding Mortgage on the Mortgaged Property.

(s) Appraisal. The Mortgage File contains an appraisal of the related Mortgaged Property, in a form acceptable to Fannie Mae or Freddie Mac and such appraisal complies with the requirements of FIRREA, and was made and signed, prior to the approval of the Mortgage Loan application, by a Qualified Appraiser. . . .

(v) Disclosure and Rescission Materials. The Mortgagor has received all disclosure materials required by applicable law with respect to the making of mortgage loans of the same type as the Mortgage Loan and rescission materials required by applicable law if the Mortgage Loan is a Refinanced Mortgage Loan and has acknowledged receipt of such materials to the extent required by applicable law and such documents will remain in the Mortgage File.

(w) LTV, PMI Policy. In the event the Mortgage Loan had an LTV greater than 80.0% at origination the Mortgage Loan has a valid and transferable PMI Policy, except that where such a policy was impermissible at origination under applicable law, such Mortgage Loan was originated in compliance with applicable law. Unless the PMI Policy for a Mortgage Loan was cancelled at the request of the Borrower or automatically terminated, in either case in accordance with applicable law, all premiums have been paid and all provisions of such PMI Policy have been and are being complied with. With respect to a purchase money Mortgage Loan, both the original appraised value and the purchase price are accurately depicted as such on Seller's (or, as applicable, Seller's servicer's) servicing system and are being transmitted, either electronically or via tape-to-tape, to Purchaser's

servicing system. Where a Mortgage Loan was closed as a streamlined refinance and a new appraisal was not required, the prior appraised value that was relied on in making the credit decision for the Mortgage Loan is accurately depicted on Seller's (or, as applicable, Seller's servicer's) servicing system and is being transmitted, either electronically or via tape-to-tape, to Purchaser's servicing system. As of the date of origination, no Mortgage Loan had an LTV greater than 100%.

(x) Occupancy of the Mortgaged Property. As of the related date of origination, and to the best of Seller's knowledge as of the related Closing Date, the Mortgaged Property is lawfully occupied under applicable law. All inspections, licenses and certificates required to be made or issued with respect to all occupied portions of the Mortgaged Property and, with respect to the use and occupancy of the same, including but not limited to certificates of occupancy, have been made or obtained from the appropriate authorities and no improvement located on or part of the Mortgaged Property is in violation of any zoning law or regulation. The Mortgaged Property meets the requirement of either owner occupied or non-owner occupied property.

(y) Transfer of Mortgage Loans. The Assignment of Mortgage is in recordable form and is acceptable for recording under the laws of the jurisdiction in which the Mortgaged Property is located (except with respect to each MERS Designated Mortgage Loan). Each original Mortgage was recorded and, except for those Mortgage Loans subject to the MERS identification system, all subsequent assignments of the original Mortgage (other than the assignment to the Purchaser) have been recorded in the appropriate jurisdictions wherein such recordation is necessary to perfect the lien thereof as against creditors of the Seller, or is in the process of being recorded. On or prior to the related Closing Date, Seller has provided the Custodian and the Purchaser with a MERS Report listing the Purchaser as the Investor with respect to each MERS Designated Mortgage Loan.  With respect to each MERS Designated Mortgage Loan, the Seller has designated the Purchaser as the Investor and no Person is listed as Interim Funder on the MERS® System;

(z) Delinquency. All payments required to be made prior to the Closing Date for such Mortgage Loan under the terms of the Mortgage Note have been made, the Mortgage Loan has not been dishonored, and no Mortgage Loan has been more than thirty (30) days delinquent since the related origination date.

(aa) Mortgage File. With respect to each Mortgage Loan, the Seller is in possession of a complete Mortgage File except for the documents

which have been delivered to the Purchaser or the Custodian or which have been submitted for recording and not yet returned.

(bb) Ownership. Immediately prior to the payment of the Purchase Price, the Seller was the sole owner and holder of the Mortgage Loans and the indebtedness evidenced by the Mortgage Note. The Mortgage Loans, including the Mortgage Note and the Mortgage, were not assigned or pledged by the Seller and the Seller had good and marketable title thereto, and the Seller had full right to transfer and sell the Mortgage Loans to the Purchaser free and clear of any encumbrance, participation interest, lien, equity, pledge, claim or security interest and had full right and authority subject to no interest or participation in, or agreement with any other party to sell or otherwise transfer the Mortgage Loans. Following the sale of the Mortgage Loan, the Purchaser will own such Mortgage Loan free and clear of any encumbrance, equity, participation interest, lien, pledge, charge, claim or security interest. The Seller intends to relinquish all rights to monitor, possess and control the Mortgage Loan except in connection with the servicing of the Mortgage Loan by the Servicer as set forth in this Agreement. After the related Closing Date, neither the Seller nor the Servicer will have any right to modify or alter the terms of the sale of the Mortgage Loan and neither the Seller nor the Servicer will have any obligation or right to repurchase the Mortgage Loan, except as provided in this Agreement or as otherwise agreed to by the Seller, the Servicer and the Purchaser.

. . .

(dd) Underwriting Guidelines. The Mortgage Loan was underwritten in accordance with the Underwriting Guidelines in effect at the time of origination. The Mortgage Note and Mortgage are on forms acceptable to Freddie Mac or Fannie Mae and no representations have been made to a Mortgagor that are inconsistent with the mortgage instruments used;

. . .

(gg) Qualified Mortgage. Each Mortgage Loan is a "qualified mortgage" within Section 860G(a)(3) of the Code.

(hh) No Fraud. No fraud, error, omission, misrepresentation, negligence or similar occurrence with respect to the Mortgage Loan has taken place on the part of the Seller, the Servicer or any originator or servicer or the Mortgagor or on the part of any other party involved in the origination of the Mortgage Loan, including without limitation the Mortgagor, any appraiser, any builder or developer, or any other

party involved in the origination of the Mortgage Loan or, in the application of any insurance in relation to such Mortgage Loan. The documents, instruments and agreements submitted for loan underwriting were not falsified and contain no untrue statement of material fact or omit to state a material fact required to be stated therein or necessary to make the information and statements therein not misleading. The Seller has reviewed all of the documents constituting the Servicing File and has made such inquiries as it deems necessary to make and confirm the accuracy of the representations set forth herein.

(ii) Origination Practices. The origination practices used by the Seller and the collection and servicing practices used by the Servicer with respect to each Mortgage Loan have been in all respects legal and customary in the mortgage origination and servicing industry and the collection and servicing practices used by the Servicer have been consistent with Customary Servicing Procedures. There has been no improper act or omission or alleged improper act or omission or error by the Seller or any employee, agent or representative acting on Seller's behalf, with respect to the origination or servicing of the Mortgage Loan

. . .

(nn) Insurance. All required insurance policies, of whatever type, remain in full force and effect. Seller has not engaged in, and has no knowledge of the Mortgagor's having engaged in, any act or omission which would impair the coverage validity or binding effect of any such policies. No action, inaction, or event has occurred and no state of facts exists or has existed that has resulted or will result in the exclusion from, denial of, or defense to coverage under any applicable special hazard insurance policy, PMI Policy, LPMI Policy or bankruptcy bond, irrespective of the cause of such failure of coverage. In connection with the placement of any such insurance, no commission, fee, or other compensation has been or will be received by the Seller or the Servicer or any designee of the Seller or the Servicer or any corporation in which the Seller, the Servicer or any officer, director, or employee of the Seller or the Servicer had a financial interest at the time of placement of such insurance.

. . .

(yy) Prepayment Penalties. With respect to any Mortgage Loan that contains a provision permitting imposition of a penalty upon a prepayment prior to maturity: (i) the Mortgage Loan provides some benefit to the Mortgagor (e.g., a rate or fee reduction) in exchange for accepting such Prepayment Penalty, (ii) the Mortgage Loan's

| | |
|---|---|
| | originator had a written policy of offering the Mortgagor or requiring third-party brokers to offer the Mortgagor, the option of obtaining a mortgage loan that did not require payment of such a penalty and (iii) the Prepayment Penalty was adequately disclosed to the Mortgagor in the mortgage loan documents pursuant to applicable state, local and federal law, and (v) notwithstanding any state or federal law to the contrary, the Servicer shall not impose such prepayment premium in any instance when the mortgage debt is accelerated as the result of the borrower's default in making the loan payments. With respect to Mortgage Loans originated prior to October 1, 2002, no such Prepayment Penalty may provide for a term in excess of five (5) years following origination. With respect to Mortgage Loans originated on or after October 1, 2002, no such Prepayment Penalty may provide for a term in excess of three (3) years following origination unless the Mortgage Loan was modified to reduce the Prepayment Penalty period to no more than three years and the Mortgagor was notified in writing of such reduction in prepayment period. . . ." |
| MHC SA § 3.7; Schedule B-1[6] | "As of the Closing Date, the Originators will make certain representations and warranties relating to the Mortgage Loans pursuant to the terms of the Bring-Down Letter and the Assignment, Assumption and Recognition Agreements. The Seller hereby makes those representations and warranties as to the Mortgage Loans originated by each Originator as set forth in the applicable Schedules B-1 through B-5 as of the Closing Date and, with respect to any Qualified Substitute Mortgage Loan originated by the applicable Originator, as of the date of substitution of such Qualified Substitute Mortgage Loan." MHC Servicing Agreement § 3.7

"The following representations relating to the Mortgage Loans made pursuant to Section 7.02 of the Encore Credit Corp. Master Mortgage Loan Purchase and Interim Servicing Agreement: (3), (4), (5), (7), (9), (16), (17), (18), (19), (20), (21), (25), (26), (28), (35), (36), (37), (43), (44), (45), (57), (66), (70), (87), and (90);

(b) No Mortgage Loan is covered by the Home Ownership and Equity Protection Act of 1994 ('**HOEPA**');

(c) There is no Mortgage Loan that was originated on or after October 1, 2002 through and including March 6, 2003, which is secured by property located in the State of Georgia. There is no Mortgage Loan that was originated on or after March 7, 2003, which is a 'high cost home loan' as defined under the Georgia Fair Lending Act; |

---

[6] The representations and warranties set forth in Schedules B-2 through B-5 are substantially the same as those set forth in Schedule B-1 referenced herein.

(d) No Mortgage Loan is a 'high cost home,' 'covered' (excluding home loans defined as 'covered home loans' in the New Jersey Home Ownership Security Act of 2002 that were originated between November 26, 2003 and July 7, 2004), 'high risk home' or 'predatory' loan under any applicable state, federal or local law (or a similarly classified loan using different terminology under a law imposing heightened regulatory scrutiny or additional legal liability for residential mortgage loans having high interest rates, points and/or fees);

(e) With respect to each Mortgage Loan, no borrower obtained a prepaid single-premium credit-life, disability, accident or health insurance policy in connection with the origination of the mortgage loan;

(f) No Group 1 Mortgage Loan originated on or after October 1, 2002 will impose a prepayment premium for a term in excess of three years. Any Mortgage Loans originated prior to such date will not impose prepayment penalties in excess of five years;

(g) The Servicer for each Mortgage Loan has fully furnished, in accordance with the Fair Credit Reporting Act and its implementing regulations, accurate and complete information (i.e., favorable and unfavorable) on its borrower credit files to Equifax, Experian, and Trans Union Credit Information Company (three of the credit repositories), on a monthly basis;

(h) The Servicer for each Mortgage Loan will fully furnish, in accordance with the Fair Credit Reporting Act and its implementing regulations, accurate and complete information (i.e., favorable and unfavorable) on its borrower credit files to Equifax, Experian, and Trans Union Credit Information Company (three of the credit repositories), on a monthly basis;

(i) With respect to any Mortgage Loan originated on or after August 1, 2004, neither the related mortgage loan nor the related mortgage note requires the borrower to submit to arbitration to resolve any dispute arising out of or relating in any way to the mortgage loan transaction;

(j) The original principal balance of each Group 1 Mortgage Loan is within Freddie Mac's dollar amount limits for conforming one- to four-family mortgage loans;

(k) Each Mortgage Loan at the time it was made complied in all material respects with applicable local, state, and federal laws, including, but not limited to, all applicable usury, truth in lending, real

estate settlement procedures, consumer credit protections, predatory and abusive lending, equal credit opportunity and disclosure laws;

(l) No Mortgage Loan is a High Cost Loan or Covered Loan, as applicable (as such terms are defined in the then-current version of Standard & Poor's LEVELS Glossary, which as of the date hereof is Version 5.6 Revised, Appendix E) and no Mortgage Loan originated on or after October 1, 2002 through and including March 6, 2003 is governed by the Georgia Fair Lending Act.

(m) No Mortgage Loan was 60 days or more contractually delinquent as of the Cut-off Date. The Seller has not waived any default, breach, violation or event of acceleration, and the Seller has not taken any action to waive any default, breach, violation or event of acceleration, with respect to any Mortgage Loan;

(n) As of the date of origination, each Mortgaged Property was lawfully occupied under applicable law and to the Seller's knowledge, each Mortgaged Property is lawfully occupied as of the date hereof; all inspections, licenses and certificates required to be made or issued with respect to all occupied portions of each Mortgaged Property and, with respect to the use and occupancy of the same, including but not limited to certificates of occupancy and fire underwriting certificates, have been made or obtained from the appropriate authorities, except where the failure would not have a material adverse effect upon the Mortgage Loan; and

(o) Each Mortgage is a valid, existing and enforceable first or second lien (as indicated on the Mortgage Loan Schedule) on the Mortgaged Property (including all buildings on the Mortgaged Property and all installations and mechanical, electrical, plumbing, heating and air conditioning systems located in or annexed to such buildings, and all additions, alterations and replacements made at any time with respect to the foregoing). The lien of the Mortgage is subject only to (a) the lien of current real property taxes and assessments not yet due and payable, (b) covenants, conditions and restrictions, rights of way, easements and other matters of the public record as of the date of recording acceptable to mortgage lending institutions generally and specifically referred to in the lender's title insurance policy delivered to the Servicer and (c) other matters to which like properties are commonly subject which do not, individually or in the aggregate, materially interfere with the benefits of the security intended to be provided by the Mortgage or the use, enjoyment, value or marketability of the related Mortgaged Property. Any security agreement, chattel mortgage or equivalent document related to, and delivered in connection with, the Mortgage Loan establishes and creates a valid,

| | subsisting and enforceable first lien and first priority security interest on the property described therein and the Seller has full right to sell and assign the same to the Depositor. All capitalized terms used but not otherwise defined herein shall have the meanings assigned to such terms in the Encore Credit Corp. Master Mortgage Loan Purchase and Interim Servicing Agreement, unless otherwise defined."<br>MHC Scheduling Agreement Schedule B-1 |
|---|---|
| Mortgage Loan Purchase Agreement relating to NHELI 2005-FM1 dated as of August 30, 2005 ("Nomura MLPA") | The Nomura MLPAs are not publicly filed documents. Upon information and belief, the Seller's representations and warranties contained therein are in substantially the same form as those representations and warranties set forth herein and any differences are immaterial to the issues addressed in the Complaint. |

## SECTION XII

| | |
|---|---|
| DB PSA § 3.17(a) | "Each Servicer shall deliver (and shall cause any Additional Servicer engaged by it to deliver) to the Master Servicer and the Depositor and the Insurer on or before March 15 of each year, commencing in March 2007, an Officer's Certificate stating, as to the signer thereof, that (A) a review of such party's activities during the preceding calendar year or portion thereof and of such Servicer's performance under this Agreement, or such other applicable agreement in the case of an Additional Servicer, has been made under such officer's supervision and (B) to the best of such officer's knowledge, based on such review, such party has fulfilled all its obligations under this Agreement, or such other applicable agreement in the case of an Additional Servicer, in all material respects throughout such year or portion thereof, or, if there has been a failure to fulfill any such obligation in any material respect, specifying each such failure known to such officer and the nature and status thereof. Promptly after receipt of each such Officer's Certificate from a Servicer or any Additional Servicer engaged by a Servicer, the Depositor shall review such Officer's Certificate and, if applicable, consult with each such party, as applicable, as to the nature of any failures by such party, in the fulfillment of any of such Servicer's obligations hereunder or, in the case of an Additional Servicer, under such other applicable agreement." |
| Goldman Sachs PSA § 6.04 | "Servicing Compliance Review. Promptly upon receipt from each Servicer of its annual statement of compliance and accountant's report described in the applicable Step 2 Assignment Agreement the Master Servicer shall furnish a copy thereof to the Depositor. Promptly after the Depositor's receipt thereof, the Depositor shall review the same and, if applicable, consult with such Servicer as to the nature of any defaults by such Servicer in the fulfillment of any of its Servicer's obligations under the applicable Servicing Agreement." |
| J.P. Morgan PSA §§ 11.05; 11.06 | "The Master Servicer shall deliver or otherwise make available (and the Master Servicer shall cause any Servicing Function Participant |

73

engaged by it to deliver or otherwise make available) to the Depositor and the Securities Administrator on or before March 15 of each year, commencing in March 2007, an Officer's Certificate (an "Item 1123 Certification") stating, as to the signer thereof, that (A) a review of such party's activities during the preceding calendar year or portion thereof and of such party's performance under this Agreement, or such other applicable agreement in the case of a Servicing Function Participant, has been made under such officer's supervision and (B) to the best of such officer's knowledge, based on such review, such party has fulfilled all its obligations under this Agreement, or such other applicable agreement in the case of a Servicing Function Participant, in all material respects throughout such year or portion thereof, or, if there has been a failure to fulfill any such obligation in any material respect, specifying each such failure known to such officer and the nature and status thereof. Promptly after receipt of each such Item 1123 Certification, the Depositor shall review such Item 1123 Certification and, if applicable, consult with each such party, as applicable, as to the nature of any failures by such party, in the fulfillment of any of such party's obligations hereunder or, in the case of a Servicing Function Participant, under such other applicable agreement. The Master Servicer shall include all Item 1123 Certifications received by it from each Servicing Function Participant with its own Item 1123 Certification to be submitted to the Securities Administrator pursuant to this section.

In the event the Master Servicer is terminated or resigns pursuant to the terms of this Agreement or any Servicing Function Participant engaged by such parties is terminated or resigns pursuant to the terms of any other applicable agreement, such party shall provide an Item 1123 Certification pursuant to this Section 11.05 with respect to the period of time it was subject to this Agreement or such other applicable agreement, as the case may be."
J.P. Morgan PSA § 11.05

"By March 15 of each year, commencing in March 2007, the Master Servicer, the Securities Administrator and each Custodian, each at its own expense, shall furnish or otherwise make available, and each such party shall cause any Servicing Function Participant engaged by it to furnish or otherwise make available, each at its own expense, to the Securities Administrator and the Depositor, a report on an assessment of compliance with the Relevant Servicing Criteria (an 'Assessment of Compliance') that contains (A) a statement by such party of its responsibility for assessing compliance with the applicable Relevant Servicing Criteria, (B) a statement that such party used the applicable Relevant Servicing Criteria to assess compliance with the applicable Relevant Servicing Criteria, (C) such party's assessment of compliance

| | |
|---|---|
| | with the applicable Relevant Servicing Criteria as of and for the fiscal year covered by the Form 10K required to be filed pursuant to Section 11.02, including, if there has been any material instance of noncompliance with the applicable Relevant Servicing Criteria, a discussion of each such failure and the nature and status thereof, and (D) a statement that a registered public accounting firm has issued an Accountant's Attestation on such party's Assessment of Compliance with the applicable Relevant Servicing Criteria as of and for such period; provided, however, each Custodian and any Servicing Function Participant engaged by it shall only be required to provide an Assessment of Compliance for each calendar year for which a Form 10K is required to be filed with respect to the Trust Fund."<br>J.P. Morgan PSA § 11.06 |
| MHC SA § 5.4 | "The Servicer shall deliver to the Master Servicer, the Depositor and the Securities Administrator, on or before March 15th of each year, commencing in March 2006, an Officer's Certificate, stating that (a) a review of the activities of the Servicer during the preceding fiscal year and of performance under this Agreement has been made under such officer' supervision, and (b) to the best of such officer's knowledge, based on such review, the Servicer has fulfilled all of its obligations under this Agreement throughout such fiscal year, or, if there has been a default in the fulfillment of any such obligation, specifying each such default known to such officer and the nature and status thereof and the action being taken by the Servicer to cure such default.<br><br>(b) The Master Servicer shall deliver to the Depositor, on or before March 20th of each year, commencing in March 2006, an Officer's Certificate, stating that (a) a review of the activities of the Master Servicer during the preceding fiscal year and of performance under this Agreement has been made under such officer's supervision, and (b) to the best of such officer's knowledge, based on such review, the Master Servicer has fulfilled all of its obligations under this Agreement throughout such fiscal year, or, if there has been a default in the fulfillment of any such obligation, specifying each such default known to such officer and the nature and status thereof and the action being taken by the Master Servicer to cure such default." |
| Nomura PSA § 4.14 | "The Master Servicer shall deliver to the Trustee and the Rating Agencies on or before March 15 of each year, commencing on March 15, 2006, an Officer's Certificate signed by a Servicing Officer, certifying that with respect to the period ending December 31 of the prior year: (i) such Servicing Officer has reviewed the activities of such Master Servicer during the preceding calendar year or portion thereof and its performance under this Agreement, (ii) to the best of such Servicing Officer's knowledge, based on such review, such Master Servicer has performed and fulfilled its duties, responsibilities and obligations under this Agreement in all material respects throughout |

| | such year, or, if there has been a default in the fulfillment of any such duties, responsibilities or obligations, specifying each such default known to such Servicing Officer and the nature and status thereof, (iii) nothing has come to the attention of such Servicing Officer to lead such Servicing Officer to believe that the Servicer has failed to perform any of its duties, responsibilities and obligations under this Agreement in all material respects throughout such year, or, if there has been a material default in the performance or fulfillment of any such duties, responsibilities or obligations, specifying each such default known to such Servicing Officer and the nature and status thereof." |
|---|---|

**SECTION XIII**

| | |
|---|---|
| DB PSA § 2.02 | "The Trustee acknowledges receipt, subject to the provisions of Section 2.01 hereof and Section 2 of the related Custodial Agreement, of the Mortgage Loan Documents and all other assets included in the definition of "REMIC I" under clauses (i), (iii), (iv) and (v) (to the extent of amounts deposited into the Distribution Account) and declares that it holds (or the applicable Custodian on its behalf holds) and will hold such documents and the other documents delivered to it constituting a Mortgage Loan Document, and that it holds (or the applicable Custodian on its behalf holds) or will hold all such assets and such other assets included in the definition of "REMIC I" in trust for the exclusive use and benefit of all present and future Certificateholders and the Insurer." |
| Goldman Sachs SA §§ 2.01(b); 8.02(e) | "In connection with the transfer and assignment of each Mortgage Loan, the Depositor has delivered or caused to be delivered to each Custodian on behalf of the Trustee for the benefit of the Certificateholders the following documents or instruments . . . ." Goldman Sachs Servicing Agreement §2.01(b)<br><br>"The Trustee may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through agents, accountants or attorneys and the Trustee shall not be responsible for any misconduct or negligence on the part of any agents, accountants or attorneys appointed with due care by it hereunder." Goldman Sachs Servicing Agreement § 8.02(e) |
| J.P. Morgan PSA §2.02(a) | "[T]he Trustee, by execution and delivery hereof, acknowledges receipt by it or by the Custodian on its behalf of the Trustee Mortgage Files pertaining to the Mortgage Loans listed on the Mortgage Loan Schedule." |
| MHC SA § 2.4(b) | "All original documents relating to the Mortgage Loans that are not delivered to the Custodian are and shall be held by the Servicer in trust for the benefit of the Indenture Trustee on behalf of the Noteholders and the Certificateholder. In the event that any such original document is required pursuant to the terms of this Section to be a part of a Mortgage File, such document shall be delivered promptly to the Custodian on behalf of the Indenture Trustee." |
| Nomura PSA § 2.02(a) | "Based on the initial trust receipt received by it from the Custodian pursuant to the Custodial Agreement, the Trustee acknowledges receipt, subject to the provisions of Section 2.01 hereof and Section 2 of the Custodial Agreement, of the Mortgage Loan Documents and all other assets included in the definition of 'REMIC I' under clauses (i), (ii) (iii), (v) and (vi) (to the extent of amounts deposited into the Distribution Account) and declares that it holds (or the Custodian on its behalf holds) and will hold such documents and the other documents delivered to it constituting a Mortgage Loan Document, and that it |

77

|  | holds (or the Custodian on its behalf holds) or will hold all such assets and such other assets included in the definition of REMIC I' in trust for the exclusive use and benefit of all present and future Certificateholders." |
| --- | --- |