# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROYAL PARK INVESTMENTS SA/NV,<br><br>   Plaintiff,<br><br>  v.<br><br>HSBC BANK USA, N.A., Defendant. | No. 1:14-cv-08175-LGS-SN |
| BLACKROCK BALANCED CAPITAL<br>PORTFOLIO (FI), *et al.*,<br><br>   Plaintiffs,<br><br>  v.<br><br>HSBC BANK USA, N.A., Defendant. | No. 1:14-cv-09366-LGS-SN |
| PHOENIX LIGHT SF LIMITED, *et al.*,<br><br>   Plaintiffs,<br><br>  v.<br><br>HSBC BANK USA, N.A., Defendant. | No. 1:14-cv-10101-LGS-SN |
| NATIONAL CREDIT UNION<br>ADMINISTRATION BOARD, *et al.*,<br><br>   Plaintiffs,<br><br>  v.<br><br>HSBC BANK USA, N.A., Defendant. | No. 1:15-cv-02144-LGS-SN |
| COMMERZBANK AG,<br><br>   Plaintiff,<br><br>  v.<br><br>HSBC BANK USA, N.A., Defendant. | No. 1:15-cv-10032-LGS-SN |
| TRIAXX PRIME CDO 2006-1, *et al.*,<br><br>   Plaintiffs,<br><br>  v.<br><br>HSBC BANK USA, N.A., Defendant. | No. 1:15-cv-10096-LGS-SN |

## MEMORANDUM OF LAW IN SUPPORT OF COORDINATED PLAINTIFFS' RULE 72 OBJECTIONS AND MOTION TO VACATE THE MAGISTRATE JUDGE'S <u>OPINION AND ORDER CONCERNING SAMPLING</u>

# TABLE OF CONTENTS

BACKGROUND ................................................................................................................ 2

A.  Plaintiffs' Claims .................................................................................................... 2

B.  Procedural Background ........................................................................................... 3

C.  The Opinion and Order ........................................................................................... 4

ARGUMENT .................................................................................................................... 5

I.   The Opinion Should be Vacated as Exceeding the Scope of the Magistrate Judge's
     Authority or Upon De Novo Review. ..................................................................... 5

II.  Sampling Is Permissible as Part of Plaintiffs' Liability and Damages Presentations.............. 6

     A.  Courts have long recognized the admissibility of sampling in RMBS
         litigation. ......................................................................................................... 6

     B.  The Opinion improperly prohibits plaintiffs from sampling. ....................................... 9

         1.  *Policemen's Annuity* does not preclude sampling. ........................................... 9

         2.  The Opinion improperly rejects numerous RMBS cases permitting sampling..9

             a.  New York courts allow pervasive breach claims based on sampling.....10

             b.  "Sole remedies" clauses do not bar sampling…………………………15

III. "Discovery" As Used in the PSAs Means "Knows or Should Have Known." .................... 15

     A.  The Second Circuit has confirmed that "discovery" means constructive
         knowledge. ...................................................................................................... 15

     B.  Traditional principles of contract interpretation, ignored by the Opinion,
         confirm that "discovery" means constructive knowledge — not actual
         knowledge. ...................................................................................................... 16

     C.  The Opinion's own application of contract interpretation principles is
         erroneous. ........................................................................................................ 19

     D.  Illustrative evidence demonstrates HSBC's "discovery" of breaching loans. ............ 21

IV.  Sampling Will Efficiently and Reliably Support Plaintiffs' EoD Claims ............................. 22

CONCLUSION.................................................................................................................. 25

# TABLE OF AUTHORITIES

## CASES

*ACE Sec. Corp. Home Equity Loan Trust, Series 2006-HE4 v. DB Structured Prods., Inc.*, No. 653394/2012, 2014 WL 1384490 (N.Y. Sup. Ct. Apr. 4, 2014)................. 10, 11

*ACE Secs. Corp. Home Equity Loan Trust, Series 2006-SL2 v. DB Structured Prods., Inc.*, 25 N.Y. 3d 581 (N.Y. 2015) ................................................................................. 17

*Assured Guar. Mun. Corp. v. DB Structured Prods., Inc.*, No. 650705/2010, 2014 WL 3282310 (N.Y. Sup. Ct. July 3, 2014) ................................................................. 8, 11, 14

*Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*, 920 F. Supp. 2d 475 (S.D.N.Y. 2013) ......................................................................................................................... *passim*

*Bank of N.Y. Mellon Trust Co., N.A. v. Morgan Stanley Mortg. Capital, Inc.*, No. 11 Civ. 0505 (CM) (GWG), 2013 WL 3146824 (S.D.N.Y. June 19, 2013), *aff'd in relevant part*, 821 F.3d 297 (2d Cir. 2016).................................................... 15, 22

*Bank of N.Y. Mellon Trust Co., N.A. v. Morgan Stanley Mortg. Capital, Inc.*, 821 F.3d 297 (2d Cir. 2016) ...................................................................................................... 15, 22

*BCS Servs., Inc. v. Heartwood 88, LLC*, 637 F.3d 750 (7th Cir. 2011)..................................... 7, 10

*Beck v. Manufacturers Hanover Trust Co.*, 218 A.D. 2d 1 (1st Dep't 1995).............................. 23

*Blackrock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, Nat'l Assoc.*, 14 Civ. 9371 (KPF) (SN) *et al.*, 2017 WL 1194683 (S.D.N.Y. Mar. 30, 2017) ............................................................................................................ 2, 15, 16, 20, 22

*Blackrock Core Bond Portfolio v. U.S. Bank N.A.*, 165 F. Supp. 3d 80 (S.D.N.Y. 2016) .................................................................................................................................... 23

*Carvel Corp. v. Diversified Mgmt. Group, Inc.*, 930 F.2d 228 (2d Cir. 1991) ............................ 18

*Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 206 F.R.D. 78 (S.D.N.Y. 2002) ..................... 5

*Columbus Park Corp. v. Department of Housing Preservation & Dev.*, 598 N.E.2d 702 (N.Y. 1992) ........................................................................................................... 19

*Commerce Bank v. Bank of N.Y. Mellon,* No. 6519672014, 2014 WL 10503786 (N.Y. Sup. Ct. Nov. 2014) ......................................................................................... 20

*Commerce Bank v. Bank of N.Y. Mellon*, 141 A.D.3d 413 (1st Dep't 2016) .............................. 20

*Deutsche Alt-A Sec. Mortg. Loan Trust, Series 2006-OA1 v. DB Structured Prods., Inc.*, 958 F. Supp. 2d 488 (S.D.N.Y. 2013) ............................................................. 11, 16

*Deutsche Bank Nat'l Trust Co. v. WMC Mortg., LLC*, Nos. 3:12-cv-933 (CHS), *et al.*,
2014 WL 3824333 (D. Conn. Aug. 4, 2014) ....................................................... 8

*E.E.O.C. v. Keco Indus., Inc.*, 748 F.2d 1097 (6th Cir. 1984) ....................................... 5

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162
(S.D.N.Y. 2011) ................................................................................................ 20

*Elliott Assocs. v. J. Henry Schroder Bank & Trust Co.*, 838 F.2d 66 (2d Cir. 1988) ................ 20

*Enercomp, Inc. v. McCorhill Publ'g, Inc.*, 873 F.2d 536 (2d Cir. 1989) ........................... 6

*FHFA v. JPMorgan Chase & Co.*, Nos. 11 Civ. 6188 (DLC), *et al.*, 2012 WL
6000885 (S.D.N.Y. Dec. 3, 2012) ........................................................................ 8

*FHFA v. Nomura Holding Am., Inc.*, 104 F. Supp. 3d 441 (S.D.N.Y. 2015) .................... 7, 15

*FMS Bonds, Inc. v. Bank of N.Y. Mellon*, No. 15 Civ. 9375 (ER), 2016 WL 4059155
(S.D.N.Y. July 28, 2016) ................................................................................... 22

*Frank B. Hall & Co. v. Orient Overseas Assocs.*, 401 N.E.2d 189 (N.Y. 1979) ................ 17

*Haines v. Liggett Group Inc.*, 975 F.2d 81 (3d Cir. 1992) ........................................... 5

*Home Equity Mortg. Trust Series 2006-5 v. DLJ Mortg. Capital, Inc.*, No. 653787/12,
2014 WL 317838 (N.Y. Sup. Ct. Jan. 27, 2014) ................................................... 10

*Katz v. American Mayflower Life Ins.*, 14 A.D. 3d 195 (1st Dep't 2004) ......................... 17

*LaSalle Bank N.A. v. Citicorp Real Estate, Inc.*, No. 02 Civ. 7867 (BH), 2003 WL
22047891 (S.D.N.Y. Aug. 29, 2003) .............................................................. 16, 17

*LaSalle Bank N.A. v. Nomura Asset Capital Corp.*, 424 F.3d 195 (2d Cir. 2005) .............. 20

*Law Debenture Trust v. WMC Mortg., LLC*, No. 3:12-cv-1538 (CSH), 2015 WL
9581729 (D. Conn. Dec. 30, 2015) ...................................................................... 8

*LNC Inv., Inc. v. First Fidelity Bank, N.A.*, 935 F. Supp. 1333 (S.D.N.Y. 1996) ............. 23

*MASTR Adjustable Rate Mortg. Trust 2006-OA2 v. UBS Real Estate Secs. Inc.*,
No. 12-cv-7322 (PKC), 2015 WL 764665 (S.D.N.Y. Jan. 9, 2015) ..................... 11, 12

*MASTR Asset Backed Sec. Trust 2006-HE3 v. WMC Mortg. Corp.*, No. 0:11-cv-
02542-JRT-TNL, 2012 WL 4511065 (D. Minn. Oct. 1, 2012) ...................... 16, 17, 18

*MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, No. 602825/08, 2010 WL
5186702 (N.Y. Sup. Ct. Dec. 22, 2010) ................................................................ 8

*Merck & Co. v. Reynolds*, 559 U.S. 633 (2010) ....................................................... 17

*Morgan Guar. Trust Co. v. Bay View Franchise Mortg.*, No. 00 Civ. 8613 (SAS),
2002 WL 818082 (S.D.N.Y. Apr. 30, 2002)................................................ 16, 17

*Morgan Stanley Mortg. Loan Trust 2006-14SL v. Morgan Stanley Mortg. Capital Holdings LLC*, No. 652763/2012, 2013 WL 4488367 (N.Y. Sup. Ct. Aug. 16, 2013) .................................................................................................................. 10

*Muzak Corp. v. Hotel Taft Corp.*, 1 N.Y.2d 42 (1956)................................................ 20

*Nomura Asset Acceptance Corp. Alt. Loan Trust, Series 2006-S4 v. Nomura Credit & Capital, Inc.*, No. 653390/2012, 2014 WL 2890341 (N.Y. Sup. Ct. June 26, 2014) .................................................................................................... 10, 11, 13

*Nomura Home Equity Loan, Inc., Series 2006-FM2 v. Nomura Credit & Capital, Inc.*, 133 A.D.3d 96 (1st Dep't 2015) ........................................................... 13

*Osborn v. Bankers Trust Co.*, 5 N.Y.S.2d 211 (N.Y. Sup. Ct. 1938) ........................... 19

*Policemen's Annuity & Benefit Fund of City of Chi. v. Bank of N.Y. Mellon*, 775 F.3d 154 (2d Cir. 2014)......................................................................... 9

*Policemen's Annuity & Benefit Fund of City of Chi. v. Bank of Am., N.A.*, 907 F. Supp. 2d 536 (S.D.N.Y. 2012)...................................................................... 16

*Policemen's Annuity & Benefit Fund of City of Chi. v. Bank of Am., N.A.*, 943 F. Supp. 2d 428 (S.D.N.Y. 2013), *abrogated on other grounds by Policemen's Annuity & Benefit Fund of City of Chi. v. Bank of Am., N.A.*, 775 F.3d 154 (2d Cir. 2014) ........................................................................................................ 17

*PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10 (1st Cir. 2010) .................................. 5, 6

*Process Am., Inc. v. Cynergy Holdings, LLC*, 839 F.3d 125 (2d Cir. 2016) ........................... 7, 13

*RCN Telecom Servs. v. 202 Centre Street Realty*, 156 F. App'x 349 (2d Cir. 2005) .................... 6

*Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59 (2d Cir. 2000)................................................ 17

*Royal Park Invs. SA/NV v. HSBC Bank USA, N.A.*, 109 F. Supp. 3d 587 (S.D.N.Y. 2015)........................................................................... 3, 22, 23

*Sentinel Mgmt. Group, In re*, 809 F.3d 958 (7th Cir. 2016) ......................................... 22

*Syncora Guarantee Inc. v. EMC Mortg. Corp.*, No. 09 Civ. 3106 (PAC), 2011 WL 1135007 (S.D.N.Y. Mar. 25, 2011) ................................................................ 8, 14

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016) ........................................... 7

*U.S. Bank, N.A. v. UBS Real Estate Sec. Inc.*, No. 12-cv-7322 (PKC) (JCF),
    -- F. Supp. 3d --, 2016 WL 4690410 (S.D.N.Y. Sept. 6, 2016)................................. 11, 12

*U.S. Naval Inst. v. Charter Commc'ns, Inc.*, 875 F.2d 1044 (2d Cir. 1989) ............................... 19

*VNB Realty, Inc. v. U.S. Bank, N.A.,* Civ. No. 2:13-04743 (WJM), 2014 WL 1628441
    (D.N.J. Apr. 23, 2014) ...................................................................................... 20

*Williams v. Beemiller, Inc.*, 527 F.3d 259 (2d Cir. 2008) ............................................................. 6

## STATUTES AND RULES

28 U.S.C. § 636(b)(1)(A) ............................................................................................................... 6

Fed. R. Civ. P. 72   .................................................................................................................. 6

Fed. R. Civ. P. 72(a)   ................................................................................................................ 5

Fed. R. Civ. P 72(b)   ................................................................................................................. 5

## OTHER AUTHORITIES

Bogert's Trusts and Trustees, § 182 (Sept. 2016 update) ............................................................. 19

Federal Judicial Center, *Manual for Complex Litigation*, § 11.493 (4th ed. 2004)....................... 7

*Securitization of Financial Assets* § 9.03 (3d ed.) ...................................................................... 23

Defendant HSBC Bank USA, N.A. ("HSBC") failed to carry out its duties as trustee for residential mortgage-backed securitization ("RMBS") trusts by ignoring evidence of pervasive mortgage loan defects and failing to require sellers to repurchase breaching loans they sold to those trusts. As in numerous RMBS cases, plaintiffs intend to use statistically reliable expert sampling and extrapolation methods as part of their proof of liability and damages across many thousands of loans backing the trusts. The Magistrate Judge's Opinion exceeded the scope of this Court's referral to manage discovery by issuing erroneous conclusions of law that would preclude plaintiffs from sampling, and it misconstrued HSBC's contractual duties and plaintiffs' burdens of proof. This Court should vacate the Opinion, and any review must be de novo.

HSBC's trust agreements are subject to New York law, where many decisions have allowed trustees and others to enforce seller repurchase duties using sampling to show pervasive breach rates. As a plaintiff trustee, HSBC successfully has advocated that same approach. In precluding sampling, the Opinion relies on a single inapposite case and ignores the principle that a plaintiff need not prove facts with granular exactitude for numerous transactions but may use reliable methods of sampling and extrapolation as part of its case to prove liability and damages by a preponderance of the evidence (probability), not loan-specific certainty.

The Opinion's preclusion of sampling is based largely on its erroneous interpretation of HSBC's contractual duty to enforce seller obligations to repurchase loans upon the trustee's "discovery" of breaches of seller representations and warranties made to the trusts. Controlling precedent from the Second Circuit, along with numerous district court decisions have construed "discovery" in this context to mean constructive knowledge or inquiry notice, which plaintiffs will show using factual (non-sampling) evidence at summary judgment, after which the trustee must investigate. The Opinion's finding that "discovery" means "actual knowledge," a term

used elsewhere in the trust agreements, further violates the cardinal rule that different terms in the same contract must be construed to have different meanings.  In similar cases against Wells Fargo in which the Magistrate Judge issued a nearly identical opinion, that construction of "discovery" has now been abrogated by Judge Failla's recent holding that, "while learning of facts merely suggestive of a breach would not require the Trustee to immediately raise a claim, upon receipt of such notice, it becomes incumbent upon the Trustee to pick up the scent and nose to the source."  *BlackRock v. Wells Fargo*, 2017 WL 1194683, at *10 (S.D.N.Y. Mar. 30, 2017). Sampling will show the scope of breaches HSBC would have found upon proper investigation.

Finally, HSBC gained "actual knowledge" of master servicer events of default, triggering its contractual duty to act as a "prudent person" in the management of its own property, *i.e.*, as a fiduciary.  The factual and expert evidence at summary judgment will show that a prudent trustee would have investigated based on evidence of pervasive breaches of seller warranties, but the Opinion precludes plaintiffs from sampling to show the magnitude and scope of the material breaches that a prudent trustee would have found.  In all events, the Opinion must be vacated.

## BACKGROUND

### A. Plaintiffs' Claims

Residential mortgage-backed securities ("RMBS") are issued by trusts holding numerous mortgage loans.  The six plaintiff groups are certificateholders (and thus investors) in various RMBS trusts at issue across these cases.  Defendant HSBC is the RMBS trustee for all trusts, with duties set out in Pooling and Servicing Agreements or Indentures (collectively, "PSAs"). At Judge Scheindlin's suggestion, the parties selected 24 bellwether trusts to litigate initially.

Plaintiffs generally allege HSBC breached its contractual (and other) duties by failing to act as a proper trustee to protect RMBS trust assets as required by the PSAs, in three primary ways:  *First*, HSBC "discover[ed]" that the "Mortgage File[s]" necessary to secure the

2

underlying collateral contained material deficiencies, yet HSBC failed to enforce the loan sellers'

obligations to cure or repurchase those loans.  Opinion at 4 (quoting PSA § 2.03, requiring that

the trustee "shall enforce" seller repurchase remedies).  *Second*, HSBC "discover[ed]" breaches

of sellers representations and warranties ("R&Ws") that materially affected certificateholders'

interests but again failed to enforce seller repurchase obligations.  *Id.  Third*, HSBC gained

"actual knowledge" of Events of Default ("EoDs"), but ignored its post-EoD duty to act "as a

prudent person … in the conduct of such person's own affairs" by, among other things, failing to

examine the loans for breaches that would have led to repurchase.  *Id.* at 6 (quoting PSA § 9.1).

Judge Scheindlin denied HSBC's motion to dismiss plaintiffs' breach-of-contract claims, among

others.  *Royal Park v. HSBC*, 109 F. Supp. 3d 587 (S.D.N.Y. 2015) ("*HSBC*").  The "PSAs …

provide that they are construed in accordance with New York law."  *Id.* at 595.

### B.  Procedural Background

These cases were referred to the Honorable Sarah Netburn, United States Magistrate

Judge, solely for "Non-Dispositive … discovery."  ECF No. 79 (Dec. 22, 2015).[1]  Plaintiffs

requested entry of a loan file reunderwriting protocol similar to those entered by Judge Cote and

Judge Peck in other RMBS cases, and Judge Netburn ordered the parties "to meet and confer in

order to reach agreement on a protocol for sampling loans in the defendant trusts and for re-

underwriting those loans."  ECF No. 114, at 3 (Jun. 30, 2016).  HSBC asserted that "expert

discovery regarding sampling and re-underwriting should proceed only after critical threshold

legal issues as to plaintiffs' claims are resolved."  ECF No. 128, at 3; ECF No. 130, at 2 (Aug.

25, 2016).  Plaintiffs objected that sampling is a well-established, efficient way to prove their

claims, and that any merits issues should be decided at trial.  ECF No. 134, at 2 (Aug. 30, 2016).

---

[1] ECF cites herein are to Case No. 1:15-cv-02144; the same documents were filed in each case.

Judge Netburn explained that she would not be deciding "what defendants call threshold merits issues" because "Judge Schofield will [be] handling that," Ex. 1, 8/29/16 Hr'g Tr. 5-6 (excerpt), noting that "the district judge who will address the summary judgment issue may just feel like she needs that expert discovery to make a decision," Ex. 2, 9/21/16 Hr'g Tr. 5 (excerpt). Subsequently, five of the six plaintiffs (excluding Triaxx, which does not intend to sample), were ordered to brief whether sampling should be permitted, along with a number of "burden of proof issues," and plaintiffs were precluded from filing any reply. ECF No. 240, 10/27/16 Hr'g Tr. 12-13; Order, ECF No. 180 (Nov. 15, 2016).[2]  Fact depositions were just beginning when plaintiffs filed their sampling brief on November 18, 2016.  *See* ECF No. 196 (docketed Jan. 5, 2017).

### C.  The Opinion and Order

Magistrate Judge Netburn's Opinion and Order ("Opinion") concluded that "plaintiffs' motion[3] to re-underwrite a sampling of loans for the purpose of proving HSBC's liability or damages beyond the loans in the sample is DENIED," reasoning that sampling "will not satisfy the plaintiffs' burden of proof."  ECF No. 225, at 13, 20 (Mar. 10, 2017).

The Opinion concludes (at 8-12) that plaintiffs must proceed loan-by-loan in a way that precludes sampling, based on its reading of the PSAs and case law.  It next concludes (at 13-16) that "discovery" in PSA § 2.03 must be construed as a matter of law to mean the same as "actual knowledge" in § 8.01.[4]  *Id.* at 13 ("The Court … reads 'discovery' as used in Section 2.03 to mean actual knowledge.").  The Opinion further concludes (at 16-20) with respect to plaintiffs' EoD claims that sampling is insufficient to meet the Opinion's required "loan-by-loan" proof.

---

[2] Plaintiffs also were required to serve an expert report on sampling methodology.  Order, ECF No. 172 (Nov. 2, 2016).  HSBC was permitted to submit a *Daubert* challenge but declined to do so.

[3] Plaintiffs did not move for relief but rather were ordered to brief the sampling issues.

[4] For convenience, the Opinion cites PSA § 2.03 ("discovery") and § 8.01 ("actual knowledge"), as do plaintiffs.  *See* ECF No. 196-2 (plaintiffs' chart of PSA provisions for the 24 bellwether trusts).

Prefacing those conclusions, the Opinion provides that although it "reaches a conclusion on the burden of proof for the parties' claims and defense, such conclusion is intended to guide the Court's proportionality analysis.  Accordingly, at summary judgment or trial, conclusions of law set forth in this opinion should not be deemed to have law-of-the-case effect."  *Id.* at 8.[5]

## ARGUMENT

### I.   The Opinion Should be Vacated as Exceeding the Scope of the Magistrate Judge's Authority or Upon De Novo Review.

Because the Opinion is rooted in "conclusions of law" (*id.*) about whether sampling can be used in part to meet plaintiffs' burden of proof, construction of PSA provisions, and case law, this Court's review is de novo regardless whether Federal Rule of Civil Procedure 72(a) or 72(b) applies.  Because the Opinion exceeds the reference to the Magistrate Judge for "discovery," ECF No. 79, the Opinion should be vacated.  Regardless, any review must be de novo.  *See E.E.O.C. v. Keco Indus.*, 748 F.2d 1097, 1102 (6th Cir. 1984) (where "magistrate … exceeded his statutory authority," district court's failure to review de novo "constitutes reversible error").

Rule 72(b) addresses "[d]ispositive [m]otions" and provides that the "district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."  Rule 72(a) addresses "[n]ondispositive [m]atters" and provides that the "district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."  Under either subsection, the Opinion merits de novo review because, "for questions of law, there is no practical difference between review under Rule 72(a)'s 'contrary to law' standard and review under Rule 72(b)'s de novo standard."[6]

---

[5] Although Triaxx will not be sampling, it joins this challenge to the Opinion's merits rulings.  In the Wells Fargo cases, plaintiffs today will submit objections to a nearly identical opinion by Judge Netburn.

[6] *PowerShare v. Syntel*, 597 F.3d 10, 15 (1st Cir. 2010) ("review of a non-dispositive motion by a district judge turn[ing] on a pure question of law … is plenary under the 'contrary to law' branch of …

Although the Opinion provides (at 8) that its "conclusions of law … should not be deemed to have law-of-the-case effect … at summary judgment or trial," that caveat is without effect if plaintiffs are barred from developing the expert testimony and evidence necessary to support corrected legal rulings.  For that reason, Magistrate Judge Peck declined a trustee defendant's request to decide "whether sampling should occur" or "whether plaintiff's sampling method is good or not" as going "beyond discovery to the merits."  Ex. 3, Tr. 32-33 (excerpt).

Article III likewise requires de novo review.  Rule 72's dispositive/nondispositive dichotomy is derived from the Federal Magistrates Act, which permits magistrate judges to decide "pretrial matters" but not motions "for injunctive relief, for judgment on the pleadings, for summary judgment, …, to dismiss for failure to state a claim …, and to involuntarily dismiss an action."  28 U.S.C. § 636(b)(1)(A).  "[T]he dispositive orders listed explicitly in § 636(b)(1)(A)" are "non-exhaustive," and doubts are resolved in favor of de novo review "[g]iven the possible constitutional implications of delegating Article III judges' duties to magistrate judges."[7]

## II.   Sampling Is Permissible as Part of Plaintiffs' Liability and Damages Presentations.

### A.   Courts have long recognized the admissibility of sampling in RMBS litigation.

Plaintiffs' burden of proof is by a "preponderance of the evidence."  *Enercomp, Inc. v. McCorhill Publ'g*, 873 F.2d 536, 542 (2d Cir. 1989).  "[C]ausation in fact is established if the defendant's breach of duty was a substantial factor in producing the damage."  *RCN Telecom v. 202 Centre Street*, 156 F. App'x 349, 351 (2d Cir. 2005).  "Once a plaintiff presents evidence that he suffered the sort of injury that would be the expected consequence of the defendant's

---

Rule 72(a)"); *Haines v. Liggett Grp.*, 975 F.2d 81, 91 (3d Cir. 1992) ("phrase 'contrary to law' indicates plenary review as to matters of law"); *Catskill Dev. v. Park Place Entm't*, 206 F.R.D. 78, 86 (S.D.N.Y. 2002) ("order may be deemed contrary to law when it fails to apply or misapplies … case law").

[7] *Williams v. Beemiller*, 527 F.3d 259, 264-65 (2d Cir. 2008); *see PowerShare*, 597 F.3d at 13 ("magistrate judges ordinarily may not decide motions that are dispositive either of a case or of a claim").

wrongful conduct, he has done enough to withstand summary judgment on the ground of absence

of causation.…  The causal relation between a defendant's act and a plaintiff's injury … need

only be probable."  *BCS v. Heartwood 88*, 637 F.3d 750, 758-59 (7th Cir. 2011) (Posner, J.).

As the Supreme Court recently explained, "[a] representative or statistical sample, like all

evidence, is a means to establish or defend against liability….  In many cases, a representative

sample is 'the only practicable means to collect and present relevant data' establishing a

defendant's liability."  *Tyson Foods v. Bouaphakeo*, 136 S. Ct. 1036, 1046 (2016) (quoting

Manual for Complex Litigation § 11.493).  Sampling conserves resources by providing reliable

and objective extrapolation to a population without having to examine every single transaction.

In RMBS cases, a sampling expert draws a loan sample capable of yielding statistically

significant conclusions about each trust.  A re-underwriting expert next determines how many

loans in the sample materially breach R&Ws.  The sampling expert extrapolates the breach rate

to the entire loan pool based on statistically accepted methodologies providing a confidence level

of 95% with a margin of error.[8]  Plaintiffs' damages experts then use the extrapolated breach rate

together with loan values and the trust's waterfall structure as components for calculating

damages.  Where a plaintiff "has proven the fact of damages by a preponderance of the evidence,

the burden of uncertainty as to the amount of damage is upon the wrongdoer….  Therefore, a

plaintiff need only show a stable foundation for a reasonable estimate of the damages incurred as

a result of the breach … [, and] the burden of any uncertainty as to the amount of damages is on

the breaching party."  *Process Am. v. Cynergy Holdings*, 839 F.3d 125, 141 (2d Cir. 2016).

Sampling has been widely accepted in New York (and elsewhere) as part of the proof that

---

[8] *See FHFA v. Nomura*, 104 F. Supp. 3d 441, 494 (S.D.N.Y. 2015) (Cote, J., presiding over an RMBS bench trial) ("A sample of 100 loans … permits results to be stated with a 95% confidence level, *i.e.*, with maximum margins of error of +/10 percent.").

7

a defendant was probably liable and caused the asserted quantum of damages in RMBS cases. *E.g.*, *Assured Guar. v. Flagstar Bank*, 920 F. Supp. 2d 475, 512 (S.D.N.Y. 2013) ("Sampling is a widely accepted method of proof in cases brought under New York law, including in cases relating to RMBS and involving repurchase claims.").  Judge Rakoff, presiding over a bench trial in *Flagstar*, "accept[ed] sampling as an appropriate method of proof" and found "that the loans underlying the Trusts here at issue pervasively breached Flagstar's contractual representations and warranties." *Id.*[9]  The court held "the evidence proffered by [plaintiff's sampling and damages experts wa]s clear, credible, and convincing"; the sampling expert's "sample size … provided an adequate basis for assessing whether the Trusts as a whole complied with or breached Flagstar's representations and warranties"; and the damages expert "provided a solid basis for calculating the damages occasioned by any such breaches." *Id.* at 501.  The clear majority of courts is in accord with that approach in RMBS cases.[10]

---

[9] Judge Rakoff interpreted the same "discovery" standard at issue in PSA § 2.03 to impose liability upon the seller, holding that plaintiff "Assured, by informing Flagstar of pervasive breaches affecting the charged off loans with its January 2009 repurchase demand, rendered Flagstar constructively aware — or, at a minimum, put Flagstar on inquiry notice — of the substantial likelihood that these breaches extended beyond the charged off loan population and into the broader loan portfolio." 920 F. Supp. 2d 475, 512-13; *see id.* at 480 (MLPA: "discovers a breach of any of the foregoing [R&Ws]").  *See infra* Part III.

[10] *E.g.*, (all RMBS cases) *Assured Guar. v. DB Structured Prods. ("DBSP")*, 2014 WL 3282310, at *6, *8 (N.Y. Sup. Ct. 2014) ("sampling and expert evidence may be used" at trial; forcing parties "to re-underwrite all of the loans is commercially unreasonable;" "sampling may be used to compute damages"); ECF No. 196-4, at 16-17, *SACO I v. EMC* (N.Y. Sup. Ct. 2015) ("use of statistical sampling to prove liability and damages on their claims is consistent with the terms of the contract governing the transactions, including but not limited to the PSAs"); *MBIA Ins. v. Countrywide*, 2010 WL 5186702, at *4 (N.Y. Sup. Ct. 2010) ("[s]tatistical sampling is a widely used method to present evidence from a large population of data" and "[i]t is undisputed that the use of statistical sampling is generally accepted in the scientific community"); ECF No. 196-5, at 1, *Home Equity 2006-1 v. DLJ* (N.Y. Sup. Ct. 2013) ("ORDERED that plaintiffs may use a statistical sampling to prove liability and damages on all of their claims"); *FHFA v. JPMorgan Chase*, 2012 WL 6000885, at *1 (S.D.N.Y. 2012); ECF No. 196-6, at 1-2, *NCUA v. Morgan Stanley* (S.D.N.Y. 2014); *Syncora v. EMC*, 2011 WL 1135007, at *6 n.4 (S.D.N.Y. 2011) (approving sampling and explaining that defendant "cannot reasonably expect the Court to examine each of the 9,871 transactions to determine whether there has been a breach, with the sole remedy of putting them back one by one"); *Law Debenture v. WMC*, 2015 WL 9581729, at *7 (D. Conn. 2015); *Deutsche Bank Nat'l Trust Co. v. WMC*, 2014 WL 3824333, at *9 (D. Conn. 2014) ("statistical evidence is an accepted and useful way of proving liability (and by extension, damages) in an RMBS case").

### B. The Opinion improperly prohibits plaintiffs from sampling.

#### 1. *Policemen's Annuity* does not preclude sampling.

In *Policemen's Annuity v. Bank of N.Y. Mellon*, 775 F.3d 154 (2d Cir. 2014)), the Second Circuit denied class standing to lead plaintiffs who invested in only one of numerous trusts in the putative class. The court reasoned that even proof the trustee "*always* failed to act when it was required to do so would not prove [plaintiffs'] case, because they would still have to show which trusts actually had deficiencies that required [the trustee] to act in the first place," given that the "alleged misconduct must be proved loan-by-loan and trust-by-trust." *Id.* at 162-63. Importantly, the court did *not* preclude sampling of trusts in which the lead plaintiff invested. *Id.* at 162. Consistent with the numerous authorities cited above, the Second Circuit noted without hint of disapproval that courts have "permitted plaintiffs to use statistical sampling to prove the incidence of defects within individual trusts." *Id.* at 162 & n.6 (citing *Flagstar*, 920 F. Supp. at 486-87). The court merely rejected class plaintiffs' use of "a single sample of loans taken from hundreds of trusts … to prove a defendant's liability with respect to each of those trusts." *Id.*[11]

Here too, plaintiffs may "show which trusts actually had deficiencies that required [the trustee] to act in the first place" by submitting evidence based on sampling and re-underwriting for each trust — that is, on a "loan-by-loan and trust-by-trust" basis — showing that a certain percentage of the loans, more likely than not, violated the representations and warranties made by the sellers to the trusts. *Id.* at 162-63. Contrary to the Opinion (at 8-9), the Second Circuit did not establish a rule that plaintiffs must submit proof showing discrete trails of evidence for each of many thousands of breaching loans, nor did it cast doubt on the numerous RMBS cases

---

[11] The Opinion erroneously states (at 12) that plaintiffs plan to "extrapolat[e] breach rates from a sample of loans to all 295 trusts," contrasting that approach with separate samples taken for each trust in *Flagstar*. In fact, plaintiffs have drawn separate samples for *each* of the 24 bellwether trusts.

(such as *Flagstar*, which it cited) affirmatively rejecting such a rule by allowing sampling.

As Judge Posner explained in *BCS*, 637 F.3d at 758 (citations omitted), the

preponderance-of-the-evidence standard does not require mathematical certainty:

> Otherwise how could a person obtain a judgment for medical malpractice based
> on a failure to diagnose a disease that proved fatal but had it been diagnosed
> earlier might have been cured?  And how could four equally qualified employees
> who were discriminated against when a company made a single promotion obtain
> any relief?  Yet we've held that the plaintiff in such a discrimination case is
> entitled to damages equal to 25 percent of the pay he would have received had he
> gotten the promotion.  That is the nature of the relief — statistical, probabilistic
> — sought by the plaintiffs in this case.

### 2.  The Opinion improperly rejects numerous RMBS cases permitting sampling.

The Opinion concludes (at 8-13) that plaintiffs may not use sampling to show "pervasive

breach," and that sampling is precluded because "the cure and repurchase remedies [are] the sole

remedies under the PSAs."  Neither conclusion is correct.

### a.  New York courts allow pervasive breach claims based on sampling.

A plaintiff trustee's assertion of pervasive breach based on a sample set of loans is

consistent with PSA § 2.03's knows-or-should-know standard for "discovery" of R&W breaches

(*see infra* Part III).  As Justice Marcy Friedman has explained, citing numerous cases:

> In interpreting similar repurchase protocols, the Courts have generally
> held that the contractual notice requirement that triggers the seller's repurchase
> obligation is satisfied by a plaintiff's breach notice that refers to specific allegedly
> defective loans identified by a statistical sampling of the loan pool, or other loan-
> level investigation, at least where the notice also demands repurchase of all other
> defective loans.[12]

---

[12] *Nomura 2006 S4 v. Nomura*, 2014 WL 2890341, at *16 (N.Y. Sup. Ct. 2014) (citing *Flagstar* as
well as:  *Morgan Stanley 2006-14SL v. Morgan Stanley*, 2013 WL 4488367, *3 (N.Y. Sup. Ct. 2013)
(notice sufficient where trustee sent demand letters listing defective sampled loans and requiring that
defendant repurchase "every other Defective Loan"); *ACE 2006-HE4 v. DBSP*, 2014 WL 1384490, at *3-
4 (N.Y. Sup. Ct. 2014) ("[C]ourts have held that notice [by the trustee] to the sponsor that a sample of
loans breach representations and warranties provides sufficient notice for claims against the entire loan
pool."); *Home Equity 2006-5 v DLJ*, 2014 WL 317838, *5-6 (N.Y. Sup. Ct. 2014) (notice sufficient
where trustee's breach notice identified specific loans, alleged pervasive breaches, and demanded

Indeed, as a trustee plaintiff, HSBC has advocated successfully that "New York courts routinely accept 'sampling' to extrapolate breach rates across mortgage loan pools," asserting that "under New York law, there is no requirement that a Plaintiff specifically identify each breaching Mortgage Loan to assert a claim for damages thereon."[13]  This principle applies with equal force, irrespective of whether HSBC is a plaintiff trustee or defendant trustee.

To reach a contrary conclusion, the Opinion (at 8-9) relies on a single inapposite case in which "the breach notices sent by [the trustee] did *not* assert a pervasive breach."  *MASTR 2006-OA2 v. UBS Real Estate*, 2015 WL 764665, at *12 (S.D.N.Y. 2015) (emphasis added); *see U.S. Bank v. UBS Real Estate*, 2016 WL 4690410, at *27 (S.D.N.Y. 2016) (same case, reiterating same holding).  It merely rejected the trustee's assertion that notice *limited* to specific breaches nevertheless required the seller to go further and "cure or repurchase all defective loans in the pool."  *MASTR 2006-OA2,* 2015 WL 764665, at *10.  At the same time, the court recognized that New York courts regularly allow pervasive breach claims based on "'a statistical sampling of the loan pool.'"  *Id.* at *12 n.4 (quoting, *inter alia*, *Nomura 2006-S4*, 2014 WL 2890341, at *16).

Importantly, the court in *MASTR/U.S. Bank* did *not* construe the term "discovery" as used in PSA § 2.03.  As shown below in Part III, the Opinion erroneously construes it to mean "actual knowledge," ignoring the Second Circuit's controlling holding, along with a chorus of district court decisions concluding "discovery" means constructive knowledge and requires the trustee to

---

repurchase of all breaching loans); *Deutsche 2006-OA 1 v. DBSP*, 958 F Supp. 2d 488, 496-497 (S.D.N.Y. 2013) (similar).  *See also Assured Guar.*, 2014 WL 3282310, at *6 ("Assured's notification to Deutsche Bank of 'pervasive breaches' affecting the loans was sufficient to render the defendant constructively aware — or, at minimum put [it] on inquiry notice of the substantial likelihood that these breaches extended beyond the specified loans into the broader loan portfolio").

[13] ECF No. 196-7, HSBC Br. at 10 n.10, *Ace 2006-HE4 (HSBC Trustee) v. DBSP* (N.Y. Sup. Ct. June 4, 2013) (citing *Flagstar*); ECF No. 196-8, at 9, *Ace 2006-HE4 (HSBC Trustee) v. DBSP* (N.Y. Sup. Ct. 2014) (agreeing HSBC could use sampling and denying "motion to dismiss all loans beyond the 912 loans identified in the Trustee's Summons").  *See* ECF No. 196-9, HSBC Br. at 10-11, *Ace HELT 2007-HE1 (HSBC Trustee) v. DBSP* (N.Y. Sup. Ct. June 6, 2013) (citing *Flagstar*).

investigate based on facts constituting inquiry notice.  Had *MASTR/U.S. Bank* addressed that

issue and properly construed "discovery," and had the plaintiff trustee in that case provided the

proper notice of pervasive breaches, then the court would have been logically compelled to allow

sampling to prove such pervasive breaches consistent with the New York case law that it cited.

### b.  "Sole remedies" clauses do not bar sampling.

The Opinion (at 11) precluded sampling in part based on its view that "the cure and

repurchase remedies, the sole remedies under the PSAs, are themselves loan-specific," relying

solely on the *MASTR/U.S. Bank* case, which as noted did not construe "discovery" and did not

concern a claim for pervasive breach.  The PSAs typically provide that "the obligation of the

Seller to cure or repurchase … shall constitute the sole remedy," DBALT 2006-AR5 PSA § 2.3

(cited in Opinion at 5), and  that provision must be construed consistent with the proper meaning

of "discovery" and New York case law allowing pervasive breach claims based on sampling.

As an initial matter, Plaintiffs do not seek specific performance of the repurchase of

loans, so practical concerns associated with rigid adherence to a sole remedy provision do not

apply.  HSBC relinquished that remedy in breach of its contractual duties.  Rather, plaintiffs seek

damages for the trustee's failure to effectuate repurchase upon "discovery" of R&W breaches

and "actual knowledge" of EoDs.  Therefore, even if HSBC were required to prove its case

against sellers loan-by-loan without sampling — despite the numerous New York cases

discussed herein holding otherwise — plaintiffs nevertheless may use sampling in these cases to

estimate the damages that such a process should have produced for the bellwether trusts.

In any event, nothing about sampling or extrapolation upsets that remedy.  Sampling is

well-established to prove liability and damages on voluminous transactions by a preponderance

of the evidence.  "The very purpose of creating a representative sample of sufficient size is so

that, despite the unique characteristics of the individual members populating the underlying pool,

12

the sample is nonetheless reflective of the proportion of the individual members in the entire pool exhibiting any given characteristic." *Flagstar*, 920 F. Supp. 2d at 512.

As shown above, New York courts have repeatedly allowed trustee and other plaintiffs to support their case against loan sellers by using sampling to establish pervasive breach rates.  In *Nomura 2006-S4*, the court held that the extent of breaching loans may be identified through "a statistical sampling of the loan pool" notwithstanding a "sole remedies" clause.  2014 WL 2890341, at *16, *2.  Examining that clause, the court concluded that "in setting forth a protocol for repurchase of defective loans (after a specified period) at a defined Purchase Price, the sole remedy provision effectively establishes a contractual damages amount in the form of the Purchase Price." *Id.* at *8.  Here, damages may be calculated by experts using extrapolation principles based on the contractual repurchase amounts for materially breaching loans in the sample.  The Opinion faults such an approach (at 11) for lacking "loan-specific" precision, but preponderance of the evidence requires probability, not exactitude, and the "burden of any uncertainty as to the amount of damages is on the breaching party." *Cynergy*, 839 F.3d at 141.

Moreover, as New York's Appellate Division has explained, "specific performance is an equitable remedy.  In the RMBS context, most courts have repeatedly held that while a provision providing for equitable relief as the 'sole remedy' will generally foreclose alternative relief, where the granting of equitable relief appears to be impossible or impracticable, equity may award damages in lieu of the desired equitable remedy." *Nomura 2006-FM2 v. Nomura Credit*, 133 A.D. 3d 96, 106 (1st Dep't 2015) (citing and quoting cases).  If plaintiffs are correct that the factual (non-sampling) evidence will be sufficient to show HSBC "discovered" pervasive R&W breaches or gained "actual knowledge" of EoDs requiring it to act as a "prudent person" fiduciary, then it would be highly inequitable to preclude plaintiffs from using sampling to show

the breach rates HSBC would have discovered in a proper investigation (liability) and to estimate the harms to the trusts and plaintiff investors (damages).

There is no basis to adopt what amounts to a special rule precluding sampling against a trustee defendant when in every other type of RMBS case — including those brought by trustee plaintiffs such as HSBC — courts repeatedly have allowed plaintiffs to prove their case on voluminous facts and transactions with sampling.  Thus, in cases of pervasive breaches, "forcing [plaintiff] to re-underwrite all of the loans is commercially unreasonable and [] sampling may be used to compute damages."  *Assured Guar.*, 2014 WL 3282310, at *6.[14]

The Opinion (at 12-13) rejects *Flagstar* on the ground it concerned "a monoline plaintiff, which is not limited to a repurchase remedy," but that is incorrect.  The court in *Flagstar* explained that "the cure-or-repurchase process [w]as the 'sole remedy' against Flagstar 'for the breach of a representation or warranty with respect to a Mortgage Loan.'"  920 F. Supp 2d. at 509.  Nevertheless, Judge Rakoff properly allowed the insurer to use sampling to prove the extent of pervasive breaches — the same type of case HSBC could have brought against sellers.

Finally, the Opinion errs in concluding that sampling cannot identify loans with a breach that "'materially and adversely affects the value of *such Loan* or the interest therein of the Certificateholders.'"  Opinion at 10 (quoting PSA § 2.03(a)).  Plaintiffs' reunderwriting expert will determine how many loans in the sample had *material* defects, and plaintiffs' sampling expert will extrapolate that material defect rate statistically to the entire pool.  In *Flagstar*, Judge Rakoff permitted a similar approach and found "credible and corroborated in numerous ways" Assured's expert's conclusion that numerous loans in the trusts at issue were "materially

---

[14] As Judge Crotty explained, repurchase is a "remedy ('onesies and twosies') that is appropriate for individualized breaches," not "widespread misrepresentations."  *Syncora*, 2011 WL 1135007, at *6 n.4 (defendant "cannot reasonably expect the Court to examine each of the 9,871 transactions to determine whether there has been a breach, with the sole remedy of putting them back one by one").

14

defective."  920 F. Supp. 2d at 510.  So did Judge Cote.  *See FHFA*, 104 F. Supp. at 571 (bench-trial findings that "at least 45% of the loans per [trust] had underwriting defects that materially increased credit risk").

### III. "Discovery" As Used in the PSAs Means "Knows or Should Have Known."

The Opinion does not preclude sampling based on reliability pursuant to *Daubert* (HSBC did not raise such a challenge), but rather largely on a construction of "discovery" in PSA § 2.03 that is at odds with controlling Second Circuit precedent and is now abrogated in *Wells Fargo*.

#### A.  The Second Circuit has confirmed that "discovery" means constructive knowledge.

In proving their R&W breach claims, plaintiffs will establish HSBC's "discovery" of breaching loans pursuant to PSA § 2.03 by showing (though non-sampling evidence) that it was aware of facts raising a suspicion as to numerous loans but failed to investigate consistent with the established meaning of "discovery."  Sampling and extrapolation will then show what HSBC would have found upon proper investigation, to prove liability and estimate damages.

"As several courts have observed in cases involving securitized mortgage loans, [a] party 'discovers' a breach when it knows or should know that the breach has occurred."  *Bank of N.Y. Mellon Trust Co. v. Morgan Stanley Mortg. Capital*, 2013 WL 3146824, at *19 (S.D.N.Y. 2013), *aff'd in relevant part*, 821 F.3d 297 (2d Cir. 2016) ("*BNYM*").  Therefore, "discovery" means that, "once a party becomes aware of the relevant facts, a duty arises … to pick up the scent and nose to the source.  If the quest confirms this suspicion, then [it] must" act on its rights "with reasonable dispatch."  *Id.*  In affirming *BNYM*, the Second Circuit held that "the district court correctly observed [that] the law charges a party with discovery of [an R&W] breach … after it has had a reasonable opportunity to investigate and confirm its suspicions [of the breach]."  821 F.3d at 310.  *BNYM* is controlling Second Circuit authority but the Opinion fails to address it.

The Second Circuit's affirmance further applies to numerous other decisions concerning

the meaning of "discovery" of R&W breaches by an RMBS trustee.  *See Deutsche 2006-OA1 v. DBSP*, 958 F. Supp. 2d at 494 (§ 2.03 "discovery" means "knew, or should have been aware"); *Flagstar*, 920 F. Supp. 2d at 512-13 ("discovery" means "constructively aware" or "inquiry notice"); *Policemen's Annuity v. Bank of Am.*, 907 F. Supp. 2d 536, 553-54 (S.D.N.Y. 2012) (a trustee aware of "facts 'suggestive of a breach ... was required to 'pick up the scent and nose to the source' — *i.e.*, to investigate any suspicions about the loans ... in the Trusts," and "had no right to" proceed as though "living under a rock ... given its role and responsibilities").[15]

The Opinion does not cite a single case in accord with its contrary result.  In the similar cases against Wells Fargo, the Opinion's identical holding that "discovery" means "actual knowledge" has now been abrogated by Judge Failla's recent ruling that "Courts in this circuit ... have held that while learning of facts merely suggestive of a breach would not require the Trustee to immediately raise a claim, upon receipt of such notice, it becomes incumbent upon the Trustee to pick up the scent and nose to the source."  *Wells Fargo*, 2017 WL 1194683, at *10.

**B. Traditional principles of contract interpretation, ignored by the Opinion, confirm that "discovery" means constructive knowledge — not actual knowledge.**

In concluding (at 13) that "'discovery' as used in Section 2.03 . . . means[s] actual knowledge," the Opinion disregards *BNYM* and traditional contract interpretation principles.

*First*, by construing "discovery" in § 2.03 to mean the same thing as "actual knowledge" in § 8.01, the Opinion violates the rule that "parties must be deemed to have intended different

---

[15] *See also MASTR 2006-HE3 v. WMC Mortg.*, 2012 WL 4511065, at *6-7 (D. Minn. 2012) (upon "[l]earning of facts ... suggestive of a breach ... it becomes incumbent [on the trustee] to pick up the scent and nose to the source"; holding the trustee "was duty-bound to investigate its suspicions" and was "constructively aware of the breaches"); *LaSalle Bank v. Citicorp Real Estate*, 2003 WL 22047891, at *6 (S.D.N.Y. 2003) ("[a] party 'discovers' a breach when it knows or should know [based on awareness of 'red flags'] that the breach has occurred"); *Morgan Guar. v. Bay View*, 2002 WL 818082, at *5 (S.D.N.Y. 2002) ("[a] party 'discovers' a breach when it knows or should know that the breach has occurred").

meanings" by using different "language [in] two provisions." *Hall v. Orient Overseas*, 401
N.E.2d 189, 189 (N.Y. 1979). The Opinion provides no rationale for why those two distinct
terms, one with a lengthy judicial history in this context, must be given the same meaning. This
Court should hold that "discovery" means constructive knowledge.[16]

    *Second*, HSBC entered into the PSAs *after* courts had already construed "discovery" of
R&W breaches to mean "knows or should know." *Supra* n.15 (citing *LaSalle* and *Morgan
Guaranty*). That judicially construed meaning is ordinarily "preferred" and controls here. *Katz
v. American Mayflower Life Ins.*, 14 A.D. 3d 195, 206 (1st Dep't 2004).[17] The PSA drafters
knew how to require "actual knowledge" in § 8.01 but they chose *not* to do so in § 2.03.[18]

    *Third*, as the Opinion notes, after "discovery" of an R&W breach the trustee "must then
'enforce the obligations of the Seller under the Mortgage Loan Purchase Agreement to
repurchase such loan.'" Opinion at 5 (quoting PSA § 2.03). A Mortgage Loan Purchase
Agreement ("MLPA") is a contract between the loan seller and the depositor, in which the seller
makes the representations and warranties that are conveyed to the trusts via the PSAs and which
the trustee must enforce. MLPAs contain the same type of "discovery" language as the PSAs
that reference them and have been construed to require only constructive notice. *See Morgan
Guaranty*, 2002 WL 818082, at *5; *MASTR 2006-HE3*, 2012 WL 4511065, at *6-7. The MLPA
and PSA are "executed on the same day," *Ace Secs. v. DBSP*, 25 N.Y. 3d 581, 590 (N.Y. 2015),

---

[16] Even if deemed ambiguous, that term's interpretation "is a question of fact for the factfinder" at
trial. *Revson v. Cinque & Cinque*, 221 F.3d 59, 66 (2d Cir. 2000). The Second Circuit "review[s] *de
novo* a district court's determination of whether a contract is ambiguous." *Revson*, 221 F.3d at 66.
Review of the Opinion's construction here must also be de novo.

[17] Statutes of limitations frequently include a "discovery" provision. *See Merck & Co. v. Reynolds*,
559 U.S. 633, 648 (2010) (holding "discovery" as used in federal securities limitations period
"encompasses not only those facts [the party] actually knew, but also those facts a reasonably diligent
[party] would have known"). The sophisticated drafters of the PSAs certainly were aware of that fact.

[18] *See Policemen's Annuity v. Bank of Am.*, 943 F. Supp. 2d 428, 433 (S.D.N.Y. 2013) (in which PSA
§ 2 provided "'in the case of the Trustee, having actual knowledge thereof'" for R&W breaches).

and "[u]nder New York law, instruments executed at the same time, by the same parties, for the same purpose in the course of the same transaction will be read and interpreted together," *Carvel Corp. v. Diversified Mgmt.*, 930 F.2d 228, 233 (2d Cir. 1991). "Discovery" in PSAs must therefore be construed in the same way courts have construed that term as used in MLPAs.

*Fourth*, MLPAs typically require trustees to provide "prompt notice" upon "discovery" of R&W breaches, and repurchase claims have been dismissed for the trustee's failure to do so after being placed on inquiry notice. *See, e.g.*, *MASTR 2006-HE3*, 2012 WL 4511065, at *7 (holding trustee "constructively aware of," and thus "duty-bound to investigate" breaches more promptly); *accord* PSA § 2.03 ("Trustee shall *promptly notify* the Seller of such defect") (quoted in Opinion at 4) (emphasis added). When HSBC acted as a loan seller and was sued for repurchases by an RMBS trustee, HSBC — represented by the same counsel as before this Court — argued that the MLPA's prompt notice requirement triggered by "discovery" began to run when the plaintiff trustee "knew or should have known of [the] alleged breaches." ECF No. 196-19, HSBC Br. at 22, *Deutsche Bank Nat'l Trust Co. v. HSBC* (N.Y. Sup. Ct. 2014).[19] To accept that HSBC as trustee had *no* obligation to act with respect to R&W breaches until it receives actual knowledge, when any repurchase action against the seller pursuant to the *same* language could be barred if HSBC failed to act upon constructive knowledge, would nullify the repurchase remedy and leave investors unprotected based on inconsistent and irreconcilable interpretations of the *same* term "discovery" as used in the interlocked PSAs and MLPAs.

---

[19] *See also* (all HSBC briefs) ECF No. 196-14, at 11 n.18, *Ace 2007-ASAP2 (HSBC Trustee) v. DBSP* (N.Y. Sup. Ct. Jan. 17, 2014) (quoting *Morgan Guaranty* for proposition that "'[a] party 'discovers' a breach when it knows or *should know* that the breach has occurred'"); ECF No. 196-15, at 14 n.19, *Ace 2007-WM1 (HSBC Trustee) v. DBSP* (NY Sup. Ct. Sept. 27, 2013) ("knows or should know"); ECF No. 196-16, at 11 n.11, *Ace 2007-HE3 (HSBC Trustee) v. DBSP* (S.D.N.Y. June 14, 2013) (same); ECF No. 196-17, at 18 n.15, *Ace 2007-WM2 (HSBC Trustee) v. DBSP* (S.D.N.Y. Oct. 25, 2013) (same); ECF No. 196-18, at 10 n.5, *Deutsche 2006-OA1 (HSBC Trustee) v. DBSP* (S.D.N.Y. Apr. 15, 2013) (same).

*Fifth*, "due consideration must be given to the purpose of the parties" in establishing the trust to protect and manage trust assets for beneficiaries. *Columbus Park v. Dep't of Housing*, 598 N.E.2d 702, 706 (N.Y. 1992). The Opinion's construction would leave trust beneficiary investors unprotected. Further, any "uncertainty or ambiguity of meaning must be construed in favor of the beneficiary [investors] ... and against the [trustee] who prepared the instrument."[20]

## C. The Opinion's own application of contract interpretation principles is erroneous.

*First*, the Opinion errs in concluding (at 14) that "[e]quating 'discovery' with constructive knowledge is also inconsistent with the bargained-for terms of the PSAs, which limit HSBC's pre-EoD duties as trustee to the four corners of the governing agreements." Within the "four corners" (*id.*) of the PSAs, however, is the *express* requirement that "'the Trustee *shall enforce* the obligations of the Seller under the [MLPA]'" upon "'*discovery* or receipt of notice of'" of R&W breaches or defective mortgage files. Opinion at 4 (quoting § 2.03) (emphases added). "Discovery" in § 2.03 cannot mean "actual knowledge," which is a distinct term used in § 8.01. The two provisions contain different terms addressing different subjects: § 2.03 addresses R&W breaches and mortgage-file deficiencies made or caused by *sellers* of the loans to the trusts, whereas § 8.01 addresses EoDs by *servicers* of the loans.

*Second*, the Opinion (at 15) quotes DBALT 2005-AR6 PSA § 9.02(a)(v), which provides that, "[p]rior to the occurrence of a Master Servicer Event of Default …, the Trustee… shall [not] be bound to make any investigation into the facts or matters stated in any [document], unless requested in writing to do so by the Holders of Certificates evidencing, in aggregate, not

---

[20] *Osborn v. Bankers Trust Co.*, 5 N.Y.S.2d 211, 215 (N.Y. Sup. Ct. 1938); *see* Bogert's Trusts and Trustees, § 182 n.7 (same); *U.S. Naval Inst. v. Charter Commc'ns*, 875 F.2d 1044, 1050 (2d Cir. 1989) (construing ambiguous terms in favor of non-drafter in dispute involving sophisticated parties). An HSBC manager recently confirmed at his deposition the obvious point that HSBC participated in drafting the PSAs to which it is a party. Investors, however, were not part of that drafting process.

less than 25% of the Trust Fund."  ECF No. 191-5 at 1 (HSBC chart of contract terms).  That provision is limited to the context of a servicer EoD and does not address the trustee's repurchase enforcement duties upon "discovery" of R&W breaches more than 75 pages away, in § 2.03, nor does it negate the established meaning of "discovery" as used in PSAs and MLPAs.  *See Muzak Corp. v. Hotel Taft*, 1 N.Y.2d 42, 46 (1956) ("the specific provision controls").[21]

*Third*, the Opinion (at 15) cites *Commerce Bank v. Bank of N.Y. Mellon*, 141 A.D. 3d 413, 415-16 (1st Dep't 2016), as support for its no-duty-to-investigate conclusion.  But the claim at issue sounded in tort, not breach of the PSA,[22] and the single case cited by *Commerce Bank* held only that a trustee had no "extra-contractual duty to investigate (*i.e.*, to 'nose to the source') problems with the Trust assets."  *VNB Realty, Inc. v. U.S. Bank*, 2014 WL 1628441, *6 n.3 (D.N.J. 2014)).  Judge Failla recently agreed with plaintiffs' reading — thus abrogating the *Wells Fargo* sampling opinion's contrary conclusion — explaining that "[i]n *Commerce Bank*, there was no notice, no discovery, and therefore no duty to 'nose to the source.'  This is consistent with the law in this Circuit; it does not undermine it."  *Wells Fargo*, 2017 WL 1194683, at *10.

*Fourth*, the Opinion concludes (at 15) that "[i]mporting a 'should have known' standard is also inconsistent with cases that have emphasized the limited role of an indenture RMBS trustee."  But those cases concerned attempts to graft *extra*-contractual duties onto the PSAs.[23]

---

[21] If § 9.02 applies to § 2 at all, any arguable tension should be harmonized to avoid "rendering" § 2 "superfluous or meaningless."  *LaSalle Bank v. Nomura Asset*, 424 F.3d 195, 206 (2d Cir. 2005).  Section 9.2 thus could apply *until* the trustee is on inquiry notice.  But since undue delay in investigating beyond that point could render trustee repurchase demands against sellers untimely under "discovery" as used in MLPAs, "discovery" as used in the PSAs must be read to require the same measure of trustee diligence.

[22] *See* Pls' Br. in *Commerce Bank*, 2014 WL 10503786 (Nov. 5, 2014) (discussing Complaint ¶ 188(h) count for "Negligence/Gross Negligence/ Recklessness" in a section entitled "The Complaint Sets Forth *Extra-Contractual* Duties Owed by the Trustee.") (emphasis added; unpaginated on WL).

[23] *See Elliott Assocs. v. J. Henry Schroeder Bank*, 838 F.2d 66, 73 (2d Cir. 1988) (no "implied fiduciary duty is imposed on a trustee"); *Ellington Credit v. Select Portfolio*, 837 F. Supp. 2d 162, 190 (S.D.N.Y. 2011) (same); *Commerce Bank*, 141 A.D. 413, 415 (no extra-contractual "duty to notify").

20

Here, any ambiguity *within* a PSA must be read to favor trust beneficiaries.  *Supra* p.19 & n.20.

**D. Illustrative evidence demonstrates HSBC's "discovery" of breaching loans.**[24]

On March 7, 2007, Goldman Sachs, as securities underwriter, sent HSBC the following

"Notice of Breaches of Representations":

> This will serve as notice that our review has indicated that there may exist
> breaches of the originators' representations and warranties with respect to the
> mortgage loans in the transactions listed on the attached page, for which you are
> the trustee or securities administrator.  We ask that you undertake a review of the
> loans … to identify instances of breach that may be known to you.  In this regard,
> we would be happy to work with you to identify specific loans that may be
> affected and to discuss an appropriate course of action.  We believe that action by
> you may be necessary to avoid potential losses.  (ECF No. 196-10.)

Goldman's Notice listed 14 trusts (including bellwether trust FHLT 2006-C) backed by

loans from Fremont.  On March 15, 2007, HSBC's trust manager Thomas Musarra[25] emailed

Wells Fargo, the custodian for all 14 trusts, explaining that, "[b]efore we respond to Goldman,

we would like to see current exception reports for the deals in question."  ECF No. 196-11.

Exception reports were created to identify deficiencies in the Mortgage Files, such as a

deficient or missing note, deed, assignments, etc.  The exception report for FHLT 2006-C

showed Musarra that the trust had 4,763 uncured exceptions across 3,274 loans — nearly *half* of

the 7,806 loans in the trust.  ECF No. 196-12.  By asking for the exception report, Musarra

indicated his understanding that loans with such exceptions more likely breached R&Ws as well.

Nevertheless, Musarra responded to Goldman saying HSBC had no duty to act:

[HSBC as Trustee], has limited and expressly detailed responsibilities in
connection with an originator's breach of its [R&Ws].  These responsibilities do
not include reviewing the mortgage loan files in connection with a prospective
breach.  Furthermore, the responsibilities of the Trustee are not triggered until the
Trustee receives written notice of a specific instance of [a R&W] breach.

Therefore, as there is no express requirement under the terms of the [PSAs], the

---

[24] At summary judgment, plaintiffs will make a full factual presentation showing such "discovery."

[25] Mr. Musarra's deposition is currently scheduled during the last week of April 2017.

> Trustee can not perform the review requested in the March 7 Notice.  In addition, because the March 7 Notice fails to reference any specific breach by an originator of its [R&Ws], the Trustee is unable to perform any of its relevant responsibilities under the [PSAs] at this time.[26]

Further, HSBC did not even provide Goldman's notice to investors in the affected trusts.

The Opinion's conclusion (at 14) that no reasonable juror could find HSBC "discovered" breaches as a result of the Goldman Sachs letter is plainly contrary to that PSA term's meaning. Indeed, "the law charges a party with discovery of [a] breach … after it has had a reasonable opportunity to investigate and confirm its suspicions," *BNYM*, 821 F.3d at 310, and "upon receipt of such notice, it becomes incumbent upon the Trustee to pick up the scent and nose to the source," *Wells Fargo*, 2017 WL 1194683, at *10.  "Notice that because of the recipient's obtuseness fails to trigger suspicion is nevertheless sufficient to create inquiry notice because all that is required to trigger it is information that would cause a *reasonable* person to be suspicious enough to investigate."  *In re Sentinel*, 809 F.3d 958, 962 (7th Cir. 2016).  Sampling and extrapolation will show what HSBC would have found had it nosed to the source as required.

## IV. Sampling Will Efficiently and Reliably Support Plaintiffs' EoD Claims.

HSBC has heightened, fiduciary duties when it gains "'actual knowledge'" or "'written notice'" of a "Master Servicer Event of Default."  Opinion at 6 (quoting § 8.01).  HSBC then must "'use the same degree of care and skill in its exercise as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs.'"  *Id.* (quoting § 9.1). Such "obligations come more closely to resemble those of an ordinary fiduciary, regardless of any limitations or exculpatory provisions contained in the indenture."  *HSBC*, 109 F. Supp. 3d at 597; *see FMS Bonds v. Bank of N.Y. Mellon*, 2016 WL 4059155, at *14 (S.D.N.Y. 2016).

---

[26] ECF No. 196-13.  A multitude of evidence to be presented at summary judgment similarly indicates that HSBC discovered both specific breaches and pervasive breaches of R&Ws in the bellwether trusts.

Following an EoD, a trustee "must, as prudence dictates, exercise [its rights and powers] in order to secure the basic purpose of any indenture, the repayment of the underlying obligation."[27]

The Opinion states (at 17) that HSBC is not required to act beyond its "contractually conferred rights and powers" but fails to appreciate that HSBC has the "rights and powers" to investigate R&W breaches and enforce repurchase, and post-EoD, it "must, as prudence dictates, exercise" them.  *HSBC*, 109 F. Supp. 3d at 597.  To show that those heightened duties apply, plaintiffs will first prove the existence of EoDs, which include, *inter alia*, any failure to (i) act in accordance with "Accepted Master Servicing Practices," PSA §§ 3.01, 8.01; (ii) ensure loans are serviced legally; and (iii) promptly notify HSBC and other parties upon discovery of mortgage loan representation and warranty breaches.  ECF No. 196-2 (typically § 7.01 or § 8.01).

Plaintiffs will next prove HSBC's "actual knowledge" of such EoDs, triggering the prudent-person fiduciary duties described above.  Illustrative documentary evidence submitted with plaintiffs' sampling brief (and before fact depositions) confirms HSBC's knowledge of widespread EoDs in the bellwether trusts.  For example, in September 2012, investors sent HSBC notice of an "ongoing Event of Default" for six of the bellwether trusts "caused by Wells Fargo Bank, N.A.'s … failure to observe and perform, in material respects, the covenants and agreements imposed on it as Master Servicer by the PSAs."  ECF No. 196-20, at 1940459.  The letter notified HSBC of multiple EoDs caused by Master Servicer breaches, including (i) failure

---

[27] *HSBC*, 109 F. Supp. 3d at 597; *see Beck v. Manufacturers Hanover*, 218 A.D. 2d 1, 11, 13 (1st Dep't 1995) ("postdefault obligation of prudence in the exercise of the rights and powers accorded by the indenture").  New York law thus "requires an indenture trustee to perform prudently even the more general obligations in the indenture, and applies to any conduct not specifically prohibited by the indenture which would enable the investors to secure repayment of the trust certificates."  *LNC Inv. v. First Fidelity*, 935 F. Supp. 1333, 1348 (S.D.N.Y. 1996).  Failing to enforce "the putback obligation [i]s an example of a breach leading to damages" following an EoD.  *Blackrock v. U.S. Bank*, 165 F. Supp. 3d 80, 102-03 (S.D.N.Y. 2016); *see Securitization of Financial Assets* § 9.03 (3d ed.) ("Should there be a default under the securitization agreements, the trustee will become a frontline player and the stakeholder in enforcing agreements and the rights of investors.").

to report R&W breaches, (ii) engagement in mortgage servicing and foreclosure activities that constituted unsafe or unsound banking practices as shown by Wells Fargo's Consent Order with the OCC, and (iii) engagement in other servicing and foreclosure abuses for the purposes of maximizing fees. *Id.* at 1940459-63. A year earlier, HSBC notified Wells Fargo that servicing at properties securing mortgages in numerous trusts, including five bellwether trusts, did not comply with applicable law and applicable agreements. ECF No. 196-21, at 0129234-43.[28]

Such evidence shows HSBC knew master servicer Wells Fargo was acting contrary to "Accepted Master Servicing Practices." PSA §§ 3.01, 8.01. Plaintiffs will further show that a prudent person would have investigated for R&W breaches and enforced repurchase, but HSBC failed to do so. In addition to evidence of high delinquency rates, rating downgrades, and publicly available information Judge Scheindlin found sufficient to support plaintiffs' breach claims, discovery has revealed that HSBC received notices of breaches of mortgage loan R&Ws for numerous loans in the at-issue trusts. For example, Freddie Mac sent HSBC a notice that 1,077 loans in MHL 2007-1 breached R&Ws. ECF No. 196-23, at 0095198-200. Another investor notified HSBC that numerous loans in DBALT 2006-OA1 breached R&Ws, providing a CD-ROM of supporting evidence, and HSBC acknowledged the breaches in correspondence with Deutsche Bank and the Master Servicer. ECF No. 196-24, at 1112990-3039. The Opinion disregards this evidence, which would have led a prudent person to look for additional breaches.

The Opinion further errs in faulting plaintiffs for "cit[ing] no evidence, such as industry standards or customs at the time, showing that performing some kind of sampling review, identifying and investigating loan breaches, and subsequently enforcing repurchase was 'what a

---

[28] *See also* ECF No. 196-20, at 1940461 (evidence HSBC knew master servicer Wells Fargo "[r]egularly used robosigning" to effectuate foreclosures and "[f]ailed to maintain accurate and adequate loan and collateral files in a manner consistent with prudent mortgage servicing standards").

prudent person would have done.'"  Opinion at 19 (quoting Pls' Br. 17).  The Opinion errs in requiring evidence before summary judgment, but in any case plaintiffs submitted such evidence.

*First*, HSBC has performed sampling as a plaintiff trustee, advocating that "New York courts routinely accept 'sampling' to extrapolate breach rates across mortgage loan pools."  ECF No. 196-7, HSBC Br. at 10 n.10; *supra* p.11 & n. 13.  *Second*, HSBC's own securitization underwriting affiliate, HSBC Securities, Inc. ("HSI") had a years-long practice of using sampling methods to detect R&W breaches in loans held "on the balance sheet of defendant HSBC," which is plainly evidence of what a prudent person would have done in the management of its own property.  ECF No. 213, at 4.  HSBC's witnesses testified this review's purpose was "to see if there was something the borrower provided to the servicer of the loan to initiate a put-back" and that "we would look at the servicing comments to see if there was something the borrower provided to the servicer of the loan to initiate a put-back reason."  *Id.* at 2; *see* HSBC Response, ECF No. 214, at 4 (conceding HSI's review of "loans [that] may have been candidates for a put back.").  The use of sampling by HSBC, as well as its HSI securitization affiliate, certainly bears on what a prudent trustee could have done following known EoDs and is evidence for the jury.

As these illustrations confirm, the evidence to be submitted on a full evidentiary record will create triable issues of fact as to the imprudence of HSBC's conduct.  Whereas some evidence is "loan-specific" (Opinion at 17) and other evidence is not, a reasonable juror could conclude from its cumulative effect, as well as expert testimony on trustee standards of care, that a prudent person in the management of its own property would have investigated the loan pools in order to identify R&W breaches and sought repurchases of all materially breaching loans.

## CONCLUSION

The Court should vacate the Opinion, hold that "discovery" as used in PSA § 2.03 means constructive knowledge, and authorize plaintiffs' use of sampling to prove their cases at trial.

Dated: April 7, 2017                          Respectfully submitted,

BERNSTEIN LITOWITZ BERGER                     ROBBINS GELLER RUDMAN
  & GROSSMANN LLP                               & DOWD LLP

/s/ Timothy A. DeLange                        /s/ Christopher M. Wood
BLAIR A. NICHOLAS                             CHRISTOPHER M. WOOD
TIMOTHY A. DeLANGE                              414 Union Street, Suite 900
BENJAMIN GALDSTON                               Nashville, TN 37219
RICHARD D. GLUCK                                Tel:    (615) 244-2203
BRETT M. MIDDLETON                              Fax:    (615) 252-3798
NIKI L. MENDOZA
LUCAS E. GILMORE                              *Counsel for Plaintiff Royal Park Investments*
ROBERT S. TRISOTTO                            *SA/NV*
  12481 High Bluff Drive, Suite 300
  San Diego, CA  92130
  Tel:    (858) 793-0070
  Fax:    (858) 793-0323

*Counsel for Plaintiffs BlackRock Balanced*
*Capital Portfolio (Fl), et al.*


WOLLMUTH MAHER & DEUTSCH LLP                   WOLLMUTH MAHER & DEUTSCH LLP

/s/ Steven S. Fitzgerald                      /s/ Ryan A. Kane
DAVID H. WOLLMUTH                             DAVID H. WOLLMUTH
STEVEN S. FITZGERALD                          RYAN A. KANE
RANDALL R. RAINER                             NIRAJ J. PAREKH
NIRAJ J. PAREKH                                 500 Fifth Avenue
  500 Fifth Avenue                              New York, NY 10110
  New York, NY 10110                            Tel:    (212) 382-3300
  Tel:    (212) 382-3300                        Fax:    (212) 382-0050
  Fax:    (212) 382-0050
                                              *Counsel for Plaintiff Commerzbank AG*
*Counsel for Plaintiffs Phoenix Light SF*
*Limited, et al.*

KOREIN TILLERY LLC

GEORGE A. ZELCS
JOHN A. LIBRA
MATTHEW C. DAVIES
MAX C. GIBBONS
  205 North Michigan Plaza, Suite 1950
  Chicago, IL 60601
  Tel:  (312) 641-9750
  Fax:  (312) 641-9760
-and-
STEPHEN M. TILLERY
  505 North Seventh Street, Suite 3600
  St. Louis, MO 63101-1625
  Tel:     (314) 241-4844
  Fax:     (314) 241-3525
-and-

KELLOGG, HANSEN, TODD, FIGEL &
FREDERICK, P.L.L.C.

*/s/ Scott K. Attaway*
DAVID C. FREDERICK
SCOTT K. ATTAWAY
MATTHEW M. DUFFY
FREDERICK GASTON HALL
KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, P.L.L.C.
  Sumner Square
  1615 M Street, N.W.
  Suite 400
  Washington, DC 20036
  Tel:     (202) 326-7900
  Fax:     (202) 326-7999

*Counsel for Plaintiff NCUA Board, as
Liquidating Agent*

Pursuant to this Court's ECF Rule 8.5(b),
counsel for NCUA represents that counsel
for these Coordinated Plaintiffs have
consented to the placement of their
electronic signatures on this document.

MILLER & WRUBEL P.C.
*/s/ John G. Moon*
JOHN G. MOON
CHARLES R. JACOB III
KERRIN T. KLEIN
570 Lexington Avenue
New York, New York 10022
Tel:  (212) 336-3500
Fax:  (212) 336-3555

*Counsel for the Triaxx Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 7, 2017, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send a Notice of Electronic Filing upon all counsel of record.

/s/ Scott K. Attaway
Scott K. Attaway